IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CELGENE CORPORATION, NOVARTIS      )
PHARMACEUTICALS CORPORATION and    )
NOVARTIS PHARMA AG,                )
                        Plaintiffs, )    Civil Action No. 06-741-SLR
                                   )
v.                                 )
                                   )
ABRIKA PHARMACEUTICALS, INC. and   )
ABRIKA PHARMACEUTICALS, LLLP,      )
                                   )
                        Defendants. )

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIMS**

OF COUNSEL:

Anthony M. Insogna
Lester J. Savit
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130-4096
(858) 314-1200

F. Dominic Cerrito
JONES DAY
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939

*Attorneys for Plaintiff Celgene Corporation*

Robert L. Baechtold
Henry J. Renk
Nicholas N. Kallas
FITZPATRICK, CELLA, HARPER &
SCINTO
30 Rockefeller Plaza
New York, New York 10112
(212) 218-2100

*Attorneys for Plaintiffs Novartis
Pharmaceuticals Corporation and Novartis
Pharma AG*
Dated: May 9, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I.   NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

II.  SUMMARY OF ARGUMENT ....................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 2

IV.  ARGUMENT ................................................................................................................. 5

     A.   Leave To Amend Should Be Denied If The Filing Of The New
          Pleading Is Futile ................................................................................................. 5

     B.   The Defendants' Proposed Inequitable Conduct Allegations
          Continue To Suffer From A Fatal Lack Of Particularity ...................................... 6

          1.   Abrika's Identification Of A Prior Art Patent Does Not
               Allege Inequitable Conduct With Particularity .......................................... 6

          2.   Payment Of The Wrong Fee To The Patent Office Is Not
               Inequitable Conduct .................................................................................. 10

     C.   Abrika's Inequitable Conduct Allegations Are Not Excluded From
          Rule 9(b) Pleading Requirements ...................................................................... 11

V.   CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*In re Alpharma Inc. Sec. Litig,*
    372 F.3d 137 (3d Cir. 2004)............................................................................5, 6

*Baxter Intern., Inc. v. McGaw, Inc.,*
    149 F.3d 1321 (Fed. Cir. 1998)...........................................................................7

*In re Burlington Coat Factory Sec. Litigation,*
    114 F.3d 1410 (3d Cir. 1997)..............................................................................5

*Burlington Industries, Inc. v. Dayco Corp.,*
    849 F.2d 1418 (Fed. Cir. 1988).........................................................................12

*Chiron Corp. v. Abbott Laboratories,*
    156 F.R.D. 219 (N.D. Cal. 1994).......................................................................12

*Dippin' Dots, Inc. v. Mosey,*
    476 F.3d 1337 (Fed. Cir. 2007).........................................................................12

*E. I. duPont de Nemours & Co. v. Berkley & Co., Inc.,*
    620 F.2d 1247 (8th Cir. 1980) ............................................................................9

*Enzo Life Sciences, Inc. v. Digene Corp,*
    270 F. Supp. 2d 484 (D. Del. 2003)...................................................................12

*Federal Deposit Insurance Corp. v. Coble,*
    720 F. Supp. 748 (E.D.Mo.1989).........................................................................5

*Fergusan Beauregard/Logic Controls v. Mega systems,*
    350 F.3d 1327 (Fed. Cir. 2003).........................................................................12

*GFI, Inc. v. Franklin Corp.,*
    265 F.3d 1268 (Fed. Cir. 2001).........................................................................10

*McGinley v. Franklin Sports, Inc.,*
    92 F. Supp. 2d 1216 (D. Kan. 2000), *aff'd in part and rev'd in part,* 262
    F.3d 1339 (Fed. Cir. 2001)................................................................................10

*In re Mlot-Fijalkowski,*
    676 F.2d 666 (Cust. & Pat. App. 1982) ...............................................................8

*NobelPharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998)..........................................................................12

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998)..................................................................................6

*Satellite Financial Planning Corp. v. First National Bank,*
    646 F. Supp. 118 (D. Del. 1986)............................................................................5

*Schaghticoke Tribe of Indians v. Kent School Corp.,*
    423 F. Supp. 780 (D. Conn. 1976).........................................................................5

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,*
    742 F.2d 786 (3rd Cir. 1984)................................................................................6

*Ulead Systems, Inc. v. Lex Computer & Management Corp.,*
    351 F.3d 1139 (Fed. Cir. 2003).....................................................................10, 11

*Warner-Lambert Co. v. Teva Pharms., Inc.,*
    289 F. Supp. 2d 515 (D.N.J. 2003), *aff'd in part, rev'd in part*, 418 F.3d
    1326 (Fed. Cir. 2005)...........................................................................................6

## STATUTES AND RULES

36 C.F.R. § 1.27............................................................................................................3

37 C.F.R. § 1.56.........................................................................................................2, 7

13 C.F.R. § 121.802......................................................................................................3

Fed. R. Civ. P. 9(b) ............................................................................................. passim

Fed. R. Civ. P. 10(b) ....................................................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................................................5

Fed. R. Civ. P. 12(f)......................................................................................................5

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiffs Celgene Corporation ("Celgene"), Novartis Pharmaceuticals

Corporation and Novartis Pharma AG (jointly "Novartis") filed a complaint for

infringement of two patents by Defendants Abrika Pharmaceuticals, Inc. and Abrika

Pharmaceuticals, LLLP's (jointly "Abrika").  Abrika answered and counterclaimed

alleging *inter alia* that the patents were unenforceable because of inequitable conduct.

Plaintiffs moved to strike the inequitable conduct allegations in the answer and to dismiss

those appearing in the counterclaims because they were merely conclusory statements

that fail to satisfy the requirements of Rule 9(b).  Abrika conceded the motion, but asks

for leave to amend its Answer and Counterclaims to change the inequitable conduct

allegations.  Plaintiffs oppose the motion for leave to amend because the proposed new

pleading fails to cure the defects of the original allegations. [1]

## II.    SUMMARY OF ARGUMENT

1.    Leave to amend should be denied when the proposed amendment is futile.

Amendments should not be allowed that lack the level of particularity required by Rule

9(b).

2.    Abrika did not oppose the striking of the inequitable conduct allegations

contained in the Answer and the dismissal of the inequitable conduct allegations of the

Counterclaims.  The proposed amendments to those allegations continue to suffer from

the same lack of particularity as the original allegations and violate Rule 9(b).  The Court

---

[1] Abrika's motion papers accuse plaintiffs of unnecessarily increasing the motion practice before this Court.  Plaintiffs addressed that allegation in its Reply Brief in Support of their Motion to Strike and Dismiss Defendants' Inequitable Conduct Allegations as Failing to Meet the Particularity Standards of Rule 9(b) Fed .R. Civ. P., filed May 2, 2007.

should not allow Abrika to file new allegations that are subject to the same motion to strike and to dismiss as the earlier pleading.

## III.    STATEMENT OF FACTS

Abrika's original Answer included a Second Affirmative Defense entitled, "Inequitable Conduct." This allegation included in its entirety five paragraphs. The Counterclaims portion of that pleading contained only one paragraph. These allegations were nothing more than conclusory allegations unsupported by any facts. For instance, Abrika's allegations failed: (i) to identify the prior art allegedly withheld; (ii) the person or persons who allegedly knew of the prior art, and how and when they learned of it and its materiality; and (iii) why the prior art should be considered material to the patentability of the claimed invention. Such allegations failed to meet the particularity requirement of Rule 9(b). Abrika did not oppose plaintiffs' motion to strike and to dismiss those allegations.

Abrika now asks for leave to substitute amendments for the defective allegations in the Answer and Counterclaims. Abrika's proposed amended Second Affirmative Defense adds a reference to a particular patent:

2.    On information and belief, U.S. Patent 5,229,131 (the "'131 patent") is prior art that was material under 37 C.F.R. § 1.56 to the patentability of the claims the Applicants sought.

3.    The title of the '131 patent is "Pulsatile Drug Delivery Systems." "Pulsatile" delivery of methylphenidate is taught and claimed by the '284 patents.

4.    The PTO organizes all patents into classes and subclasses, based on the subject matter of each patent. The classification system is used for purposes of locating prior art material to the subject matter of pending patent applications.

5.    The '131 patent's class is 424, which is the same class as the '284 patents. The '131 patent also shares two subclasses with the 2003 '284 patent. Two of the patents identified in the References Cited

- 2 -

sections of the '284 patents are in the same class and subclass as the '131 patent.

6.   On information and belief, Applicants were aware of the '131 patent during prosecution of the applications leading to the '284 patents.

7.   Applicants did not provide information to the PTO during prosecution of the '284 patents regarding the '131 patent.

8.   On the information and belief, Applicants withheld information concerning the '131 patent with an intent to mislead the Examiner reviewing the applications leading to the '284 patents as to the patentability of the pending claims.

D.I. #40, Attachment 1, at 4-6.

Abrika also proposes to add an entirely new contention to the Second Affirmative Defense. Plaintiffs are accused of inequitable conduct by purportedly falsely claiming small entity status:

9.   On information and belief, on or before June 17, 1997, Celgene did not qualify as a small entity within the meaning of 36 C.F.R. § 1.27 AND 13 C.F.R. § 121.802.

11.  After licensing the subject matter of the '284 patents to Novartis, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

12.  On or before March 27, 2002, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

13.  In connection with the 1998 '284 patent, Applicants incorrectly claimed small entity status and paid small entity fees. For example, on March 27, 2002, Applications paid small entities fees relating to maintenance of the 1998 '284 patent.

14.  On or before October 15, 2002, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

15.  In connection with the 2003 '284 patent, Applicants incorrectly claimed small entity status and paid small entity fees. For example, on at least October 15, 2002, Applications paid small entities fees relating to a continued prosecution application filed in connection with the 2003 '284 patent.

16.  Applicants' incorrect claims to small entity states are material to the '284 patents because the PTO's acceptance of these claims and the resulting reduced fees are material to survival of the '284 patents.

17.    On information and belief, Applicants falsely declared that they
qualified for small entity stats with an intent to mislead the PTO.

*Id.*

The proposed amended Counterclaims contain only two conclusory paragraphs,
one for each of the two theories[2]:

15.    On information and belief, the '284 patents are unenforceable by
reason of the Applicants' intentionally false declaration of small
entity status and payment of small entity fees to the PTO.

16.    On information and belief, the '284 patents are unenforceable by
reason of the Applicants' intentional failure to cite material prior
art to the PTO in connection with prosecution of the applications
leading to the '284 patents.

D.I. #40, Attachment 1, at 8.

These new allegations continue to suffer from the same deficiencies as the old
ones.  They still fail to identify the purported bad actor – the person or persons who
allegedly committed the inequitable conduct.  They still fail to (i) explain why the
allegedly-witheld prior art was material to patentability; (ii) identify the person(s) who
allegedly knew of the prior art, when and how such person learned of it, and how and
why such person(s) knew it to be material; and (iii) explain the circumstances
surrounding the alleged withholding of the prior art.  Similar deficiencies plague Abrika's
new allegations regarding plaintiffs supposed failure to pay the appropriate fee.  For
instance, plaintiffs do not know: (i) who committed each of the purported acts; (ii) why
plaintiffs were allegedly not eligible for small entity status at any point during
prosecution of the patents; and (iii) the circumstances/events that purportedly show
plaintiffs intentionally paid a wrong fee.

---

[2] Abrika's proposed Counterclaims do not incorporate the allegations set forth in its
affirmative defense or statement of facts.

IV.    **ARGUMENT**

A.    **LEAVE TO AMEND SHOULD BE DENIED IF THE FILING OF THE NEW PLEADING IS FUTILE.**

The futility of a proposed amendment is grounds for a denial of leave to amend. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "If the amended defenses are legally insufficient so as to invite a motion to strike under Rule 12(f)... it would serve no purpose to allow the amendment over the plaintiff's objections." *Schaghticoke Tribe of Indians v. Kent School Corp.*, 423 F. Supp. 780, 783 (D.Conn. 1976); *see also, Federal Deposit Ins. Corp. v. Coble*, 720 F. Supp. 748, 750 (E.D.Mo.1989) (noting that standards for granting motion to strike and motion for leave to amend "collapse into an inquiry as to the legal sufficiency of the proposed amendment"). In assessing the futility of an amendment the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. An amendment is futile if it could not survive a motion to dismiss. *See Satellite Fin. Planning Corp. v. First Nat'l Bank*, 646 F. Supp. 118, 120 (D. Del. 1986).

The standards of Rule 12(b)(6) and Rule 12(f) incorporate Rule 9(b). For example in a recent decision by the U.S. Court of Appeals for the Third Circuit involving alleged violations of federal securities law, the court held that leave to amend should not be granted if the amendment fails to satisfy the pleadings requirements of Rule 9(b) and the Private Securities Litigation Reform Act. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153-54 (3d Cir. 2004). The district court had found that the complaint merely imputed "scienter to the individual defendants as a result of their positions" and failed to establish that they were "involved in the alleged accounting irregularities" that plaintiffs

argue comprise its 10b-5 violations. *Id.* at 149. The appellate court agreed, finding that the allegations in the complaint did not satisfy the pleadings requirement regarding scienter under Section 10(b). *Id.* at 153-54."[3] In sum, a request for leave to amend a pleading should be denied if the proposed amendment does not cure the pre-existing Rule 9(b) deficiency.

**B.    THE DEFENDANTS' PROPOSED INEQUITABLE CONDUCT ALLEGATIONS CONTINUE TO SUFFER FROM A FATAL LACK OF PARTICULARITY.**

As the plaintiffs pointed out in their motion to strike and to dismiss, the heightened pleading requirement of Rule 9(b) requires at a minimum, the who, what, when, and where or at least an alternative measure of injecting precision. *See, e.g., Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3rd Cir. 1984). In other words, Rule 9(b) requires the pleading party to provide notice of the precise misconduct. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). Abrika's repleading of the allegations regarding the failure to disclose prior art continue to fail to clear the Rule 9(b) particularity standard, and the new allegations regarding the payment of Patent Office fees also lack the detail required for inequitable conduct allegations.

**1.    Abrika's Identification Of A Prior Art Patent Does Not Allege Inequitable Conduct With Particularity.**

Abrika claims that its "proposed amendment would add details about the prior art defendants allege that plaintiffs omitted...." D.I. # 43, pg. 3. In fact, the proposed

---

[3] An amendment can also be considered futile if the amendment would be the subject of a successful motion for summary judgment. *See Warner-Lambert Co. v. Teva Pharms., Inc.*, 289 F.Supp.2d 515, 544-45 (D.N.J. 2003), *aff'd in part and rev'd in part*, 418 F.3d 1326 (Fed. Cir. 2005) (court denied defendant's motion for leave to amend its answer to add an additional inequitable conduct defense as futile because plaintiff would be entitled to summary judgment in its favor on the defense.).

amendment adds only a single piece of information – the identity of the allegedly non-disclosed art as the '131 patent. The amended allegations still fail to provide the information necessary to define the fraud aspect of inequitable conduct.

Inequitable conduct requires that a single person know of the non-disclosed prior art, know of its materiality, be within the circle of persons with a duty to disclose, and purposefully and intentionally conceal it. *See Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998). Moreover, only an individual can commit inequitable conduct, not a corporation. *See* 37 C.F.R. § 1.56 *et seq.*. However, the proposed new allegations do not identify (i) the bad actor who allegedly knew of the '131 patent and did not disclose it, (ii) the circumstances behind the person's knowledge of the '131 patent and its alleged materiality, and alleged concealment of it from the patent examiner, and (iii) the reasons the '131 patent allegedly is more material to the patentability of the patents-in-suit than the prior art that was specifically considered by the patent examiner.

For example, both Abrika's original pleading and its new proposal use the term "Applicants" to identify the person(s) responsible for the inequitable conduct. See D.I. # 40, Attachment, at 4-6. However, the term "Applicants" is defined to include all three corporate plaintiffs, the inventors, and anyone else involved in the prosecution of the applications of the two patents. This definition is meaningless as it fails to distinguish a readily identifiable person or persons among the thousands who worked for Celgene and Novartis during the years the patents were pending. Plaintiffs simply cannot be expected to interview every person who was at the company years ago to determine if any knew of the '131 patent.

In addition, Abrika tries to make its allegations look specific by mentioning a time frame in which the alleged transgression occurred.  This time period is stated as the six-year period "during the prosecution of the applications."  D.I. #40, Attachment 1, pg. 5. Plaintiffs are left to guess which particular years and days within this lengthy period the purported inequitable conduct occurred.  As the duty to disclose starts at the beginning of the patent application process and ends at the conclusion, this allegation provides no additional information than the conclusory allegation that "Plaintiffs committed inequitable conduct."

Similarly, Abrika tries to make its proposed pleading look as if it contains an allegation of materiality of the '131 patent by noting that the '131 reference shares a Patent Office search classification with the 1998 '284 patent and two subclasses with the 2003 '284 patent. *Id.* at 5-6.  The common classification of patents does not come close to a sufficiently specific allegation of materiality for several reasons.  First, the Patent Office's search classification system is not designed to identify the patents that are material to the patentability of the claims of the other patents. *See In re Mlot-Fijalkowski*, 676 F.2d 666, 669 n. 5 (Cust. & Pat. App. 1982) ("such evidence is inherently weak…because considerations in forming a classification system differ from those relating to a person of ordinary skill seeking solution for a particular problem.").

Second, the high number of patents in the class and subclasses cited by Abrika necessarily eliminates the possibility of using the co-classification as a criteria for distinguishing the '131 patent as particularly material to claims in any other patent in the class.  A computer search of the records indicates the following numbers of patents in each of the classifications.

| Query | Result |
|---|---|
| Number of issued Patents that share class 424 | **132,619** |
| Number of issued Patents that share both sub-classes 424/464 and 424/480 | **148** |

With respect to the 1998 '284 patent, the fact that it shares a class with the '131 patent fails to distinguish it from 132,618 other issued patents. Even with respect to the two subclasses allegedly shared by the 2003 '284 patent and the '131 patent, the '131 patent is indistinct from over a hundred other patents. Clearly, there was no obligation to disclose a patent to the examiner just because it shared a Patent Office class or subclass.[4]

Third, the fact that a patent is found within the class or subclass of the patents-in suit make it less likely, not more, to be particularly material to the examination. The patent examiner searched these classes and subclasses during the examination of the applications that became the patents.[5] Therefore, the legal presumption is that the examiner saw the '131 patent during the prior art search and did not consider it to be more material than the other art that was specifically cited. *See E. I. duPont de Nemours & Co. v. Berkley & Co., Inc.*, 620 F.2d 1247, 1266-67 (8th Cir. 1980). Hence, Abrika's logic of imputing materiality to the '131 patent based on common class and subclass can be equally applied to conclude that the patent examiner saw the '131 patent during the Patent Office's prior art search and did not consider it to be material.

---

[4] Abrika also claims that materiality of the '131 patent arises out of the fact that both it and the patents-in-suit use the term "pulsatile." A computer search reveals that 8,228 patents share that characteristic, hardly a distinguishing characteristic establishing materiality.

[5] The scope of an examiner's search is referred to as the Field of Search. This field is identified on the first page of a patent. *See* D.I.#1, Attachment B at 1.

Finally, even if the similarity of subject matter of the '131 patent to the patents-in-suit was established by common class and subclasses, it does not establish that the '131 patent is more pertinent than the prior art cited by the patent examiner. It is not inequitable conduct to not cite a material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001). An allegation of materiality is not sufficiently particular to establish inequitable conduct unless it explains why it is more material than the cited art. Abrika's proposed pleading simply does not do that.

At best, Abrika's allegations regarding the '131 patent distill down to: Someone at Celgene or Novartis during a six year period knew of the '131 patent, and knew that it had the same class and subclass as the search conducted by the examiner for the pending patent applications, and did not disclose it to the Patent Office. Such an allegation is not sufficient to meet the Rule 9(b) particularity standard.

### 2. Payment Of The Wrong Fee To The Patent Office Is Not Inequitable Conduct.

Abrika's proposed amendments include the entirely new allegation that plaintiffs paid reduced "small entity status" fees at a time when it was not so entitled. D.I. #40, Attachment 1, at 5-6. The mere payment of a wrong fee to the Patent Office does not constitute inequitable conduct. *McGinley v. Franklin Sports, Inc.*, 92 F. Supp. 2d 1216, 1221-22 (D. Kan. 2000), *aff'd in part and rev'd in part*, 262 F.3d 1339 (Fed. Cir. 2001). Rather, the traditional standard for inequitable conduct is applicable, thus the burden is on the moving party to establish by clear and convincing evidence both **materiality and intent**. *See Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1144 (Fed.

Cir. 2003) (*emphasis added*).  To establish this type of inequitable conduct, intent is required - gross negligence is not sufficient to satisfy the intent element of inequitable conduct.  *Id.* at 1145.  Given that the distinguishing aspect of such a claim is the element of intent, Abrika needs to allege details regarding this element to satisfy Rule 9(b).

Also, like Abrika's inequitable allegations regarding withheld material prior art, Abrika accuses only "Applicants."  As explained above, this term is defined so broadly as to be meaningless.  It simply provides no useful information about who it was that claimed small entity status purportedly knowing that Celgene was not so entitled.

Moreover, this new allegation fails to explain why plaintiffs did not qualify as a small entity during prosecution.  For example, defendants allege that on or before June 17, 1997, Celgene did not qualify as a small entity, yet no reason is provided.  *See* D.I. #40, Attachment 1, at 5.  The law requires more particularity for a fraud pleading.

### C.    ABRIKA'S INEQUITABLE CONDUCT ALLEGATIONS ARE NOT EXCLUDED FROM RULE 9(B) PLEADING REQUIREMENTS.

Abrika argues that allegations of intentional concealment of material prior art are not subject to the pleading requirements of Rule 9(b).  D.I. #43, at 4-5.  "Defendants have plead inequitable conduct alleging only an omission of a prior art reference."  *Id.*  Abrika concludes that because it is not alleging "fraud," its allegations are not subject to Rule 9(b).  *Id.*  Apparently, Abrika contends that its allegations are sufficient to plead inequitable conduct, but because they do not use the word "fraud," Rule 9(b) particularity is not required.

Abrika claims that these cases apply Rule 9(b) standards because of the existence in the pleading of the word "fraud." Abrika's conclusion is incorrect. No case attributes any significance to whether or not a pleading contains the word "fraud".[6]

Indeed, Federal Circuit precedent finds no such middle ground between inequitable conduct allegations that use the word "fraud" and those that do not. "[I]nequitable conduct, while a broader concept than fraud, must be plead with particularity." *See Fergusan Beauregard/Logic Controls v. Mega systems*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Moreover, Rule 9(b) applies to all affirmative defenses and types of fraud or mistake: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Thus, Rule 9(b) includes by definition, inequitable conduct which has been called "fraud on the patent office." *See Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). As stated by the court in *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 221 (N.D. Cal. 1994):

> Although the Federal Circuit has acknowledged that inequitable conduct is "broader than 'common law fraud'" and encompasses other inequitable conduct rendering the patent unenforceable [citations omitted], this technical distinction is not relevant to the question of how the affirmative defense must be pled. It is germane only to the issue of what elements must be established and what the legal consequences of the conduct are.

*See also, Enzo Life Sciences, Inc. v. Digene Corp*, 270 F. Supp. 2d 484, 487-88 (D. Del. 2003) (citing in excess of 15 cases for the proposition that inequitable conduct

---

[6] The two cases cited by Abrika, *NobelPharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998) and *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) (D.I. #43, at 4-5) distinguish *Walker Process* claims from conventional inequitable conduct. Both require pleading to Rule 9(b) standards. They do not establish the existence of a separate category of inequitable conduct outside of the Rule 9(b) pleading requirement.

must be pled with Rule 9(b) particularity).[7] The law is clear - inequitable conduct allegation based on the purported concealment of a material prior art reference *always* must be pled with particularity pursuant to Rule 9(b). Hence, Abrika's allegations are not excluded from applicability of Rule 9(b) because they do not contain the word "fraud".

## V.    CONCLUSION

Defendants' proposed amendment of its original inequitable conduct allegations, and an entirely new inequitable conduct allegation, still fail to meet the Rule 9(b) pleading standard. Thus, Abrika's motion for leave to amend should be denied as futile.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Anthony M. Insogna                   By:  /s/ Philip A. Rovner
Lester J. Savit                            Philip A. Rovner (#3215)
JONES DAY                                  Hercules Plaza
12265 El Camino Real                       P. O. Box 951
Suite 200                                  Wilmington, Delaware 19899
San Diego, CA 92130-4096                   (302) 984-6000
(858) 314-1200                             provner@potteranderson.com

F. Dominic Cerrito                   *Attorneys for Plaintiffs*
JONES DAY
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939

*Attorneys for Plaintiff Celgene*
*Corporation*
Robert L. Baechtold
Henry J. Renk
Nicholas N. Kallas

---

[7] Because there is no non-fraudulent inequitable conduct, if Abrika's allegations are interpreted as falling outside of the scope of Rule 9(b), then the allegations fail to state a claim and must be dismissed on that ground. *See e.g., Fergusan Beauregard/Logic Controls*, 350 F. 3d at 1344 (Plaintiff alleged district court committed legal error in declining to consider its claim that defendant engaged in inequitable conduct when it successfully revived a patent after it lapsed for failure to pay maintenance fees. The Federal Circuit disagreed, upholding the district court's ruling that plaintiff had failed to state a claim upon which relief may be granted.).

FITZPATRICK, CELLA, HARPER &
SCINTO
30 Rockefeller Plaza
New York, New York 10112
(212) 218-2100

*Attorneys for Plaintiffs Novartis*
*Pharmaceuticals Corporation and*
*Novartis Pharma AG*

Dated:  May 9, 2007
794320

- 14 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 9, 2007, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to

the following; that the document was served on the following counsel as indicated; and that the

document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Andre G. Bouchard, Esq.
John M. Seaman, Esq.
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801
abouchard@bmf-law.com
jseaman@bmf-law.com

I hereby certify that on May 9, 2007 I have sent the foregoing document by E-

mail to the following non-registered participants in the manner indicated:

Jonathan A. Harris, Esq.
Chad A. Landmon, Esq.
Jo-Anne M. Kokoski, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103
jah@avhlaw.com;
cal@avhlaw.com; jmk@avhlaw.com

John Will Ongman, Esq.
Axinn, Veltrop & Harkrider LLP
1801 K Street
Suite 411
Washington, DC 20006-1322
jwo@avhlaw.com

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

768868