## BOUCHARD MARGULES & FRIEDLANDER

A PROFESSIONAL CORPORATION
SUITE 1400
222 DELAWARE AVENUE
WILMINGTON, DELAWARE 19801
(302) 573-3500
FAX (302) 573-3501

JOHN M. SEAMAN

DIRECT DIAL
(302) 573-3508
JSEAMAN@BMF-LAW.COM

June 5, 2007

## BY CM/ECF AND HAND DELIVERY

The Honorable Sue L. Robinson
Chief Judge
United States District Court for
 The District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801

> RE: *Celgene Corporation, et al. v. Abrika Pharmaceuticals, Inc., et al.*
> D. Del. C.A. No. 06-741-SLR

Dear Chief Judge Robinson:

Enclosed is a courtesy copy of a letter from the Abrika defendants' New Jersey counsel to The Honorable Susan D. Wigenton, with a carbon copy to Your Honor, filed earlier today in *Celgene Corp. et al. v. Abrika Pharmaceuticals, Inc. et al.*, C.A. No. 06-CV-5818 (SDW)(MCA) (D.N.J.), which is a parallel proceeding to the instant action.

Respectfully,

John M. Seaman (#3868)
jseaman@bmf-law.com

cc:     Clerk (by CM/ECF, w/ attachments)
        Philip A. Rovner, Esq. (by CM/ECF and email, w/ attachments)

# SHAPIRO & CROLAND

### COUNSELLORS AT LAW

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

BARRY I. CROLAND, P.C.*
ROBERT P. SHAPIRO, P.C.*
SUSAN W. SHAPIRO (1943-1990)
BARRY L. BAIME
KENNETH S. APFEL, P.C.*
BRUCE J. ACKERMAN, P.C.***
STUART REISER, P.C.**
JOHN P. DI IORIO*
JAY RUBENSTEIN*
MERIDITH J. BRONSON◊
DAVID O. MARCUS*
ROBERT F. GREEN*
LIZABETH CROLAND SARAKIN
DAVID TORCHIN, P.C.**
N. ARI WEISBROT*
VICTORIA R. PEKERMAN**
TARA SCHILLARI RICH
ALEXANDER G. BENISATTO*
SETH M. GOLLIN*
BRIAN C. MARTEL*

CONTINENTAL PLAZA II
411 HACKENSACK AVENUE
HACKENSACK, N.J. 07601
(201) 488-3900
TELECOPIER (201) 488-9481
WEBSITE: WWW.SHAPIRO-CROLAND.COM

OF COUNSEL:
HARVEY R. SORKOW

DONALD R. SORKOW
(1930-1985)
KENNETH S. GOLDRICH
(1951-2004)

+CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
CIVIL TRIAL ATTORNEY
◊CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A
MATRIMONIAL LAW ATTORNEY
*MEMBER OF N.J. & N.Y. BAR
**MEMBER OF N.J. & PA BAR
***MEMBER OF N.J. N.Y. & FL BAR

June 5, 2007

## VIA ELECTRONIC FILING AND HAND DELIVERY

The Honorable Susan D. Wigenton
United States District Judge
United States District Court for
The District of New Jersey
Martin Luther King Jr. Federal Building
50 Walnut Street
Newark, NJ 07101

Re: *Celgene Corp. et al. v. Abrika Pharmaceuticals, Inc. et al.*
Civil Action No. 06-CV-5818 (SDW)(MCA)

Dear Judge Wigenton:

On June 1, 2007, Defendants filed their Answer and Counterclaim to the Complaint in the above-captioned matter. In ordinary course, the parties in this action would receive a notice from the Magistrate Judge for a Rule 16 scheduling conference. Under Local Rule 16.1(a)(1), however, the District "Judge [may] otherwise direct." In the unique circumstances surrounding this action, this case is one where the statutory, equitable, and constitutional dimensions of setting the scheduling order can only be adequately addressed if the scheduling conference is conducted, and the scheduling order issued, directly by Your Honor.

Importantly, Plaintiffs previously stipulated to a Scheduling Order in their identical action, co-pending in Delaware and now unreasonably refuse to agree to a stipulated filing of the same Scheduling Order in this case. The Delaware Scheduling Order was entered on April 4, 2007, and Defendants respectfully request, to the maximum extent possible, adoption of the same deadlines and dates, including the trial date, in this case. Plaintiffs' position, that this Court should adopt a different schedule, runs counter to representations made by Plaintiffs' counsel in Delaware and unfairly prejudices Defendants as well as patients in need of a generic version of

the drug product at the heart of this action. Plaintiffs' position also contravenes 21 U.S.C. §355(j)(5)(B)(iii), which mandates that the parties "cooperate in expediting" this action.

## Background

As the Court is aware, Plaintiffs filed two identical patent infringement actions – first, on December 4, 2006, the above-captioned action pending before Your Honor in New Jersey and second, on December 6, 2006, *Celgene Corp. et al. v. Abrika Pharmaceuticals, Inc. et al.*, Civil Action No. 1:06-CV-741-SLR pending before Judge Robinson in Delaware. The reasons for this double filing were discussed in the parties' papers concerning Defendants' Motion to Dismiss or Transfer.

As Plaintiffs anticipated, their Complaint in New Jersey prompted Defendants to file a motion to dismiss the case or to transfer it to Delaware. Perhaps unanticipated by plaintiffs was how quickly—and how far—the case progressed in Delaware. Defendants answered the Delaware complaint on December 8, 2006 and discovery is well underway there. The parties completed their Rule 26(f) conference, served initial disclosures, and served and answered interrogatories and document production requests. On March 28, 2007, Judge Robinson conducted a scheduling conference and adopted the stipulated Scheduling Order negotiated by the parties, including a September 2, 2008 trial date. (See Ex. 1; Hearing Tr.) During the scheduling conference, Plaintiffs' counsel represented that if the New Jersey Court ruled on Defendants' Motions within a month or two after the conference, Plaintiffs would "not renegotiate any of our proposed dates" in the schedule. (Id. at 7.) A copy of the Delaware Scheduling Order, which was formally entered on April 4, 2007, is attached hereto. (Ex. 2; Delaware Scheduling Order.) Motion practice is also underway in Delaware. Defendants filed a motion for judgment on the pleadings and a motion to amend their Answer and Counterclaims. Those motions are fully briefed and pending before Judge Robinson.

## Defendants' Request for Stipulated Scheduling Order in New Jersey

After receiving this Court's ruling denying their motions to dismiss or transfer (ex. 3; Order), Defendants proposed a stipulated dismissal of the Delaware action on the conditions that (1) Plaintiffs agree to submit the Scheduling Order entered in Delaware to this Court and (2) this Court enter the same. (Ex. 4; L. Savit and J. Ongman emails.) Defendants explained that on the best information available to them, a trial date in the New Jersey action would, without the direct intervention of your Honor, be set in ordinary course a year or more after the September 2, 2008 trial date, which had been set by Judge Robinson in Delaware. (Id.) Defendants pointed out that "[o]ur responsibilities to patients in need of an affordable generic substitute for Ritalin and to our shareholders prohibit us from stipulating to such an extensive delay as to when a generic substitute may be made available to patients." (Id.)

Defendants crafted their proposal based on Plaintiffs' representation before Judge Robinson in the March 28, 2007 scheduling conference. Plaintiffs had no problem with the Scheduling Order in Delaware and, therefore, should have no problem with entry of the same Scheduling Order in this Court. Since this Court's order regarding Defendants' Motions issued within two months of the scheduling conference, Defendant suggested a joint motion directly to Your Honor for immediate entry of a schedule identical to that entered in Delaware.

On May 22, 2007, Plaintiffs unreasonably rejected Defendants proposal. (Ex. 5; email exchange between L. Savit and J. Ongman.)  As a result, Defendants were compelled to address this matter directly with Your Honor.

### Unique Legal Attributes of this Action

This is not just another patent infringement case.  It instead is a Paragraph IV case under the Hatch-Waxman Act.  The "purpose of the Hatch Waxman Amendments was, after all, 'to increase competition in the drug industry by facilitating the approval of generic copies of drugs.'" *Serono Laboratories, Inc. v. Shalala*, 158 F. 3d 1313, 1326 (D.C. Cir. 1998).  "The public interest [is] in receiving generic competition to brand-name drugs as soon as possible." *Boehringer Ingelheim Corp. v. Shalala*, 993 F. Supp. 1 (D.D.C. 1997).  Through the Hatch-Waxman legislation, "Congress sought to get generic drugs into the hands of patients at reasonable prices – fast." *In re Barr Laboratories*, 930 F. 2d 72, 76 (D.C. Cir. 1991).

Congress implemented this policy directly by compelling parties to expedite Paragraph IV patent infringement actions.  "In such an action, each of the parties shall reasonably cooperate in expediting the action." 21 U.S.C. §355(j)(5)(B)(iii).

As the court in *In re Barr Laboratories*, 930 F. 2d at 75 explained, Paragraph IV patent infringement actions are not just about the branded or generic drug companies revenue streams. At their core, they raise profound issues of human health and welfare:

> "[The generic drug company's] interest, we may assume, is entirely commercial. But it makes money getting useful drugs into the hands of sick people.  Of course the 'bioequivalents' of the drugs covered by these applications [the branded drugs] are, by definition, already available—but at a higher price, which makes the stake appear pecuniary.  But for poorer people—the users for whom access to generic drugs is most important—a pecuniary saving on drugs may have important health benefits.  The difference between sinking, say, 3% and 20% of one's income into pharmaceuticals spells a large difference in the range of economically accessible food and shelter.
>
> The prevalence of health insurance hardly disposes of these complications.  Much of the American population is uncovered by medical insurance—predominantly, in all likelihood, people for whom access to generic drugs is especially important.
> . . .

These interests of patients are of the type which have been accorded protection as "liberty interests" under the Fifth Amendment to the United States Constitution.

### Consequences of these Legal Aspects on the Scheduling Process

If this Court convenes a scheduling conference and enters a scheduling order that leads effectively and efficiently to a firm trial date no later than September 2, 2008, no prejudice will result.  The parties could then jointly move to dismiss the Delaware action and the Paragraph IV litigation would proceed in New Jersey.

If the Court does not do so, matters become more complicated. Even in the context of ordinary patent litigation, the Delaware district court has held that "it is fundamentally unfair to stay litigation that has proceeded further than another previously filed action" even where the result is that the same action proceeds in two separate courts. *Tuff Toro Corp. v. Hydro-Gear Limited Partnership*, 882 F. Supp. 359, 365 (D. Del. 1994, Robinson J.). In the context of Paragraph IV patent infringement litigation, the statutory and equitable factors would bear even more strongly toward continuing the Delaware action. In fact, now that the Delaware court has set a firm trial date of September 2, 2008, it may be constitutionally impermissible for the Delaware action to be dismissed or stayed unless the scheduling order in New Jersey also leads effectively and efficiently to a trial date no later than September 2, 2008. Otherwise, the patients in need of a more affordable generic version of Ritalin may have their liberty interests unconstitutionally impaired.

Conclusion

For the foregoing reasons, Defendants respectfully request that the Court set a date for a scheduling conference as expeditiously as possible. Because of the uniquely important legal issues bound up in the determination of the scheduling order in this case, Defendants also respectfully request that the conference proceed before Your Honor, as permitted by Local Rule 16.1(a)(1).

Very truly yours,

Stuart Reiser
*sreiser@shapiro-croland.com*

cc: Counsel for Plaintiffs in New Jersey and Delaware
    Honorable Sue L. Robinson

# EXHIBIT 1

328tc.txt

1

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4    CELEGENE CORPORATION, NOVARTIS    :    CIVIL ACTION
      PHARMACEUTICALS CORPORATION and   :
 5    NOVARTIS PHARMA AG,               :
                                        :
 6          Plaintiffs                  :
                                        :
 7          vs.                         :
                                        :
 8    ABRIKA PHARMACEUTICALS, INC. and  :
      ABRIKA PHARMACEUTICALS, LLP,      :
 9                                      :
            Defendants                  :    NO. 06-741 (SLR)
10
                           - - -
11
                                Wilmington, Delaware
12                              Wednesday, March 28, 2007
                                8:35 o'clock, a.m.
13                              ***  Telephone Conference

14                          - - -

15    BEFORE:   HONORABLE SUE L. ROBINSON, Chief Judge

16                          - - -

17    APPEARANCES:

18              POTTER, ANDERSON & CORROON
                BY:  PHILIP A. ROVNER, ESQ.
19
20              Counsel for Plaintiffs

21

22

23
                                Valerie J. Gunning
24                              Official Court Reporter

25
```

2

```
 1    APPEARANCES (Continued):
```
                        Page 1

328tc.txt

```
 2          JONES DAY
            BY:  LESTER J. SAVIT, ESQ.
 3               (San Diego, California)

 4                    -and-

 5          JONES DAY
            BY:  F. DOMINIC CERRITO, ESQ.
 6               (New York, New York)

 7
                 Counsel for Plaintiff Celegene Corporation
 8

 9          FITZPATRICK, CELLA, HARPER & SCINTO
            BY:  HENRY J. RENK, ESQ.
10               (New York, New York)

11
                 Counsel for Plaintiffs
12               Novartis Pharmaceuticals Corporation and
                 Novartis Pharma AG
13

14          BOUCHARD MARGULES & FRIEDLANDER, P.A.
            BY:  JOHN M. SEAMAN, ESQ.
15
                      -and-
16
            AXINN, VELTROP & HARKRIDER LLP
17          BY:  JAMES D. VELTROP, ESQ.,
                 JONATHAN A. HARRIS, ESQ. and
18               (Hartford, Connecticut)

19                    -and-

20          AXINN, VELTROP & HARKRIDER LLP
            BY:  JOHN WILL ONGMAN, ESQ.
21               (Washington, D.C.)

22
                 Counsel for Defendants
23

24                    -  -  -

25
```

                                                            3

```
 1

 2                    P R O C E E D I N G S

 3
```

Page 2

328tc.txt

4     (REPORTER'S NOTE:  The following telephone

5   conference was held in chambers, beginning at 8:35 a.m.)

6

7          THE COURT:  Good morning, counsel.  This is

8   Judge Robinson, and I do have Valerie here as a Court

9   Reporter.  If you could identify yourselves when you speak,

10   that would be helpful.

11         I've reviewed the documents in the case,

12   including the letters filed along with a proposed discovery

13   order and the motions filed.  I have to say I've never had a

14   case like this before where a plaintiff is basically doesn't

15   want to go forward in a forum that it chose, for whatever

16   reason, but this is my proposal.

17         I believe that, as you all know, we in Delaware

18   believe that a plaintiff's choice of forum is an appropriate

19   priority and that particularly if the forum is its state of

20   incorporation, its home state.  So I would certainly respect

21   the fact that the judge in New Jersey would choose to go

22   forward there, and if she does, I will stay this case.  But

23   in the meantime, I'm going to deny the plaintiff's motions to

24   strike the answer, et cetera.

25         I just find that extremely odd that this

☐

4

1   situation happened in the first place and we are going to go

2   forward.  And if you are going to have to go forward

3   someplace, we might as well put something in place here.  For

4   whatever reason the judge in New Jersey doesn't want your

5   case, then we're all set to go.

6         So that's what I'm going to do.  I'm putting it

Page 3

328tc.txt

7  on the record.  And let me go through the proposed scheduling
8  order in the meantime.

9           With respect to the first paragraph, it seems to
10 me as though the general date of April 4 is the appropriate
11 language, even though I note that defendants have already
12 served their disclosure information.

13          With respect to the discovery that will be needed
14 on the following subjects, it seems to me as though you all
15 just put in what you think is going to be covered because
16 it's not binding on anyone.

17          With respect to discovery disputes, I've taken to
18 only scheduling one discovery dispute conference and then
19 going from there so that I don't have all these conferences
20 on my schedule when, many times, the second one isn't needed
21 or there are multiple ones in between the first and second
22 ones.

23          So we wil start with the July 24, 2007 at 4:30,
24 discovery dispute conference, and then we'll go from
25 there, assuming we are still going forward here in

                                                                5

1  Delaware.

2           With respect to claim construction --

3           MR. SAVIT:  Your Honor, this is Lester Savit,
4  from Jones Day.  We represent the co-plaintiff, Celgene.

5           I would -- we would ask that the order not be
6  entered at this time for the following reasons, and this is a
7  point that really hasn't been brought up yet.

8           The problem is that entering all these dates

                              Page 4

328tc.txt

9    is going to give the New Jersey judge the wrong impression

10    that the road is now paved all the way through to trial

11    in this case.  And it has already been argued as the

12    planary argument by the defendants in New Jersey

13    that that is the case.  And, in fact, this case is --

14    there's no jurisdictional issue, here and certainly

15    it's going to feed the fire if all these dates all the

16    way through until trial are entered.

17            THE COURT:  So I thought I remembered

18    seeing something that there has been some discovery

19    taken in New Jersey.

20            There's not a scheduling order in New Jersey?

21            MR. SAVIT:  Your Honor, there has been personal

22    jurisdiction discovery, and, yes, that has included 66,000

23    pages of documents and one deposition.  But the issue of

24    personal injuries, the personal jurisdiction issue has been

25    briefed as of this week.

6

1            There's also included in that motion a motion to

2    transfer, so that issue has also been served up to the New

3    Jersey judge.  The return date on those motions is Monday.

4            MR. ONGMAN:  Your Honor, this is John Ongman, and

5    I represent -- I'm with Axinn Veltrop, and I represent the

6    Abrika defendants here.

7            To answer your question, no, there is no

8    scheduling order in New Jersey.  This is all -- so far, a

9    contest of whether there's any personal jurisdiction in

10    New Jersey at all.

11            As we said in our letter, the return date

Page 5

328tc.txt

12    is, no longer April 2nd. It will be, at the very
13    earliest, April 23rd, which is the return date on the
14    motion to seal to Celgene's reply. It may be as late
15    as April 30th.
16             Judge Wittington, to whom the case is
17    assigned, is away on vacation, and her clerk advises us
18    that the likelihood this case will be decided any time
19    soon is remote. It's going to be some time, some indefinite
20    time after April 30th because of the timing in her court,
21    and so we have the situation where the clock is ticking on
22    both the public interest and in our revenue stream.
23             We filed our discovery, wanted to get going,
24    and the whole point of the effort, from our perspective of
25    the plaintiff here, is to delay anything really happening,

7

1    and we, for that reason, would very much like to have your
2    order entered so that we can proceed apace, and if for some
3    reason the judge decides in New Jersey, decides that she want
4    to do something else, well, all of this will have been done
5    and we won't have been wasting time waiting for something to
6    start.
7             MR. SAVIT: Judge, this is Lester Savit again.
8             What we're proposing will not prejudice the
9    defendants at all because we can get started with discovery
10    because we've already had our Rule 26(f) conference.
11            You don't need to enter the scheduling order for
12    us to engage in written exchange of written discovery, and,
13    in fact, we've already received interrogatories and document

Page 6

328tc.txt

14    requests from the defendants.

15            And further, I will represent to you now on

16    behalf of the plaintiffs that if, in fact, there is a month

17    or two delay by waiting to enter the pretrial order dates, we

18    will not renegotiate any of our proposed dates.

19            So if we're talking about the timing of resolving

20    this matter, there's absolutely no prejudice to the

21    defendants to just sitting back a matter of weeks, and we

22    can engage in written discovery here in Delaware and get that

23    under way.  All that presumably would be useful in New Jersey

24    if we're proceeding there.  But just avoid entering the

25    pretrial scheduling order, because that's going to be used as

                                                            8

1    grounds -- in fact, it has already been argued as the primary

2    ground to the New Jersey judge as to why we can't proceed

3    in Delaware.

4            THE COURT:  But I find -- again, I find this

5    very odd because this is taking place.  We're putting in,

6    if not formally by my executing an order, we are talking

7    about it's a matter of record that you're going to go

8    forward in a certain way.  And I, frankly, can't believe

9    believe, and, as a matter of record, I've said if the

10    New Jersey judge denies the motions to dismiss and believes,

11    and I assume that she's going to make a decision on the

12    right grounds, believes that the case should stay there

13    and go forward there because there is jurisdiction over

14    the defendant, it was the first-filed case and it is the

15    plaintiffs' home state, she understands that I am fine with

16    staying my case or even dismissing it, but certainly staying

Page 7

328tc.txt

17   the case until the other goes forward.

18          So I, frankly, don't want to be intellectually

19   dishonest by not going forward with all the cards on the

20   table and letting the judge in New Jersey, who is capable of

21   making an informed decision, make it based on what's actually

22   happening.

23          So I do not think that is the correct way to go,

24   and if there is some mischief to be done in New Jersey, then

25   I would like to know about it.  And I'm certainly happy to,


9

1    if informed, I'm certainly happy to get on the phone with the

2    judge in New Jersey and have a conversation with her.  If she

3    thinks that I'm trying to take this case from her, I'm not.

4    It's just on my docket with pending motions and it's my job

5    to keep my docket going.

6           So when this comes to me, I will enter it, but I

7    will assume that, as officers of the Court, no mischief will

8    come of it, and that my intentions in entering this are not

9    in any way to be construed as influencing the judge's

10   decision in New Jersey in any way.

11          So I think I was on Paragraph 6, and

12   I believe that plaintiffs' proposal, the May 15th date,

13   is a more appropriate one, and so that's the date that

14   should go in.

15          With respect to the pretrial conference and

16   the trial, I usually have pretrial conferences at the

17   end of my trial day, not in the middle of it, so that would

18   be -- and August 15th is a Friday.  So I would propose August

328tc.txt
19    14, 2008, at 4:30 p.m.

20           And with respect to a trial, it is unusual for us

21    to have three-week trials in this court.

22           Why is it that this case would require three

23    weeks when most of our trials are no more than two weeks?

24           MR. SAVIT:  Well, John, it's was your

25    suggestion.  This is Lester Savit again.


                                                    10


1            John, maybe you should speak to that.

2            MR. ONGMAN:  This was in our original discussion

3    draft that we sent over to Jones Day to get the ball

4    rolling.

5            We had thought that, because of the number of

6    people that might have to be put on the stand, that it might

7    take longer.

8            Part of the problem is we don't know exactly

9    how many people in the chain here are going to be -- need

10   to be put on the stand.  There are people that are not

11   currently with Celgene.  They're not currently with Novartis,

12   who we think maybe have material information and that was

13   our best guess going, going in, and I think that never

14   came to be an issue between the parties in our discussion,

15   so I guess implicitly they thought that that was likely as

16   well.

17           So we don't have anything firmer than that to

18   offer other than our general impression of how many people

19   may have to go on to the stand.

20           THE COURT:  All right.  Well, generally, those

21   impressions are always exaggerated.

Page 9

328tc.txt

22          So I will put it down for a two-week bench trial
23   starting on September 2nd, 2008.
24          So I would ask the parties to revise the
25   scheduling order and include the changes.  And, again, when


                                                              11


1    the judge in New Jersey makes her decision, you need to let
2    me know.  If she decides to keep the case, then this case
3    will at least be stayed.  We'll have another telephone
4    conversation about that.  But in the meantime, you all should
5    go forward on the merits so that wherever this case proceeds,
6    you are doing your due diligence.
7          All right, counsel.  Thank you very much for your
8    time today.
9          (Counsel respond, "Thank you your Honor." )
10          (Telephone conference concluded at 9:50 a.m.)
11                          ~ ~ ~
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT 2

Case 1:06-cv-00741-SLR    Document 56-4    Filed 06/05/2007    Page 2 of 7
Case 1:06-cv-00741-SLR    Document 34    Filed 04/05/2007    Page 1 of 6
Case 2:06-cv-05818-SDW-MCA    Document 39-3    Filed 06/05/2007    Page 2 of 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CELGENE CORPORATION, NOVARTIS )
PHARMACEUTICALS CORPORATION and )
NOVARTIS PHARMA AG, )

                              )    Civil Action No. 06-741-SLR

                    Plaintiffs, )

       v. )

ABRIKA PHARMACEUTICALS, INC. and )
ABRIKA PHARMACEUTICAL, LLLP, )

                   Defendants. )

### SCHEDULING ORDER

At Wilmington this _4th_ day of _April_____, 2007, the parties

having satisfied their obligations under Fed. R. Civ. P. 26(f), and the court having conducted a

pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b).

IT IS ORDERED that:

1.    **Pre-Discovery Disclosures.** The parties will exchange the information required

by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2 no later than **April 4, 2007.**

2.    **Discovery.**

    (a)    Discovery will be needed on the following subjects:

    1.    Infringement or non-infringement of U.S. Patents No. 5,837,284 and

        6,635,284 (collectively the "patents in suit");

    2.    Validity of the patents in suit;

    3.    Prosecution of the patents in suit;

    4.    Willful infringement;

Case 1:06-cv-00741-SLR    Document 56-4    Filed 06/05/2007    Page 3 of 7
Case 1:06-cv-00741-SLR    Document 34    Filed 04/05/2007    Page 2 of 6
Case 2:06-cv-05818-SDW-MCA    Document 39-3    Filed 06/05/2007    Page 3 of 7

5.    Defendants' ANDA;

6.    Any other claims, counterclaims, and/or defenses that are subsequently

properly pled in a timely fashion;

7.    The development, proposed marketing and intended uses of defendants'

proposed extended release methylphenidate products;

8.    Enforceability of the patents in suit; and

9.    Laches and equitable estoppel.

(b)    All fact discovery shall be commenced in time to be completed by

**January 22, 2008.**

(1)    Document production shall be completed on or before **October 1,**

**2007**.

(2)    Maximum of 40 interrogatories by each side to the other side.

(3)    In the absence of agreement among the parties, contention

interrogatories, if filed, shall first be addressed by the party with the burden of proof no later than

the date established for the completion of document production, with the responsive answers due

within thirty (30) days thereof.  The adequacy of all such interrogatory answers shall be judged

by the level of detail each party provides; i.e., the more detail a party provides, the more detail a

party shall receive.

(4)    Maximum of 100 requests for admission by each side to the other

side.

(5)    In the absence of agreement among the parties or by order of the

court, no deposition (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled

prior to the completion of document production.

- 2 -

Case 1:06-cv-00741-SLR    Document 56-4    Filed 06/05/2007    Page 4 of 7
Case 1:06-cv-00741-SLR-MCA    Document 34    Filed 04/05/2007    Page 2 of 6
Case 2:06-cv-05818-SDW-MCA    Document 39-3    Filed 06/05/2007    Page 4 of 7

       (6)     Maximum of 95 hours of fact depositions of each side.

    (c)    Expert discovery shall be commenced in time to be completed by **April 30, 2008.**

       (1)     Expert reports on issues for which the parties have the burden of proof due **February 22, 2008.** Rebuttal expert reports due **March 21, 2008.**

       (2)     Expert depositions to be limited to a maximum of 7 hours for each expert unless extended by agreement of the parties.

       (3)     All *Daubert* motions shall be filed on or before **May 21, 2008.**

    (d)    If willfulness has been asserted and absent agreement among the parties, defendants must inform plaintiffs as to whether they intend to rely on advice of counsel by **August 15, 2007.** If the decision is to rely on such advice, the scope of discovery shall include the materials provided by defendants to their counsel and whatever other materials related to the issues in dispute that defendants had in their possession at the time the advice was sought.

    (e)    Supplementations under Rule 26(e) due **December 11, 2007,** with a final supplement due 30 days before trial.

    (f)    **Discovery Disputes.**

       (1)     The court shall conduct an in-person discovery status conference on **July 24, 2007 at 4:30 p.m.**, the time to be allocated equally among the parties. No motions to compel or motions for protective order shall be filed absent approval of the court.

       (2)     The court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition and disputes over the terms of a protective order.

(3)     Absent express approval of the court following a discovery

conference, no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

(g)     **Fact Witnesses to be Called at Trial.**  Within one (1) month following

the close of expert discovery, each party shall serve on the other parties a list of each fact witness

(including any expert witness who is also expected to give fact testimony), who has previously

been disclosed during discovery and that it intends to call at trial.  Within one (1) month of

receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness that it

intends to call at trial.  The parties shall have the right to depose any such fact witnesses who

have not previously been deposed in this case.  Such deposition shall be held within one (1)

month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours

per side in the aggregate unless extended by agreement of the parties or upon order of the court

upon good cause shown.

3.     **Joinder of other Parties and Amendment of Pleadings.**  All motions to join

other parties and amend the pleadings shall be filed on or before **July 2, 2007.**

4.     **Settlement Conference.**  Pursuant to 28 U.S.C. § 636, this matter is referred to

Magistrate Judge Thynge for the purposes of exploring ADR.

5.     **Claim Construction Issue Identification.**  If the court does not find that a

limited earlier claim construction would be helpful in resolving the case, on **January 15, 2008,**

the parties shall exchange lists of those claim terms that they believe need construction and their

proposed claim construction of those terms.  This document will not be filed with the court.

Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim

Construction Statement to be submitted pursuant to paragraph 6 below.

Case 1:06-cv-00741-SLR    Document 56-4    Filed 06/05/2007    Page 6 of 7
Case 1:06-cv-00741-SLR    Document 34    Filed 04/05/2007    Page 5 of 6
Case 2:06-cv-05818-SDW-MCA    Document 39-3    Filed 06/05/2007    Page 6 of 7

6.    **Claim Construction**. Lawyers must identify, during the claim construction phase of the case, any claim language that will have a meaning to a person of ordinary skill in the art that differs from the ordinary meaning. Any language not so identified will be construed according to its ordinary dictionary meaning.

The parties shall agree upon and file the Joint Claim Construction Statement on **May 15, 2008**, with the claim chart separately docketed. The parties will file simultaneous opening claim construction briefs on **June 2, 2008**. Simultaneous response briefs should be filed by **June 16, 2008**. The hearing on the claim construction will be held on **June 30, 2008 at 10:00 a.m.**

7.    **Applications by Motion**. Any application to the court shall be by written motion filed with the clerk. **The court will not consider applications and requests submitted by letter or in a form other than a motion**, absent express approval by the court.

(a)    **Any non-dispositive motion should contain the statement required by D. Del. LR 7.1.1.**

(b)    No telephone calls shall be made to chambers.

(c)    Any party with an **emergency** matter requiring the assistance of the court shall e-mail chambers utilizing the "E-mail Request for Emergency Relief" and "Opposing Counsel's Response" forms posted on Chief Judge Robinson's website and e-mail the completed forms to slr_civil@ded.uscourts.gov. The e-mail shall provide a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said e-mails.

Case 1:06-cv-00741-SLR    Document 56-4    Filed 06/05/2007    Page 7 of 7
Case 1:06-cv-00741-SLR    Document 34    Filed 04/05/2007    Page 6 of 6
Case 2:06-cv-05818-SDW-MCA    Document 39-3    Filed 06/05/2007    Page 7 of 7

8. **Motions in Limine**. **No** motions *in limine* shall be filed; instead the parties shall be prepared to address their evidentiary issues at the pretrial conference and during trial (before and after the trial day).

9. **Pretrial Conference**. A pretrial conference will be held on **August 14, 2008 at 4:30 p.m.** in Courtroom No. 6B, Sixth Floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

10. **Trial**. This matter is scheduled for a two-week bench trial commencing on **September 2, 2008** in Courtroom No. 6B, Sixth Floor Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

United States District Judge

786090

# EXHIBIT 3

**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CELGENE CORPORATION,<br>NOVARTIS PHARMACEUTICALS<br>CORPORATION and NOVARTIS<br>PHARMA AG, | : <br> : <br> : <br> : | Civil Action No. 06-5818(SDW) |
| Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | |
| ABRIKA PHARMACEUTICALS, INC.<br>and<br>ABRIKA PHARMACEUTICALS LLLP, | : <br> : <br> : <br> : | **OPINION AND ORDER** |
| Defendants. | : <br> : <br> : <br> : | May 15, 2007 |

**WIGENTON,** District Judge.

Before the Court are Defendants Abrika Pharmaceuticals, Inc. ("Abrika Inc.") and Abrika

Pharmaceuticals, LLLP's ("Abrika LLLP") (collectively "Defendants") Motion to Dismiss

Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(2) and (3), or in the

alternative, Transfer to the District of Delaware and Motion to Seal Documents and Plaintiff

Celgene Corporation's Motion to Seal Documents. Plaintiffs Novartis Pharmaceuticals

Corporation and Novartis Pharma AG (collectively "Plaintiffs") have joined in Celgene

Corporation's Opposition. The Court, having considered the parties' submissions and having

decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set

forth below, denies Defendants's Motion to Dismiss or Transfer and denies the Motions to Seal

Documents.

1

Case 1:06-cv-00741-SLR    Document 56-5    Filed 06/05/2007    Page 3 of 12
Case 2:06-cv-05818-SDW-MCA    Document 39-4    Filed 06/05/2007    Page 3 of 12
Case 2:06-cv-05818-SDW-MCA    Document 34    Filed 05/17/2007    Page 2 of 11

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I.    BACKGROUND

This is a lawsuit for patent infringement arising out of Abrika Inc.'s filing of an

Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA")

seeking approval to commercially market a generic version of Novartis's RITALIN ® LA

methylphenidate extended-release capsules prior to the expiration of two patents allegedly owned

by Celgene Corporation that cover that product and its use.  Plaintiffs filed this lawsuit in the

Federal District Court, District of New Jersey on December 4, 2006.  Two days later, on

December 6, 2006 Plaintiffs filed a virtually identical action against the same defendants in the

Federal District Court, District of Delaware.  Defendants have not contested venue or personal

jurisdiction in the Delaware case and have filed responsive pleadings in that matter.

## II.    DISCUSSION

### *Jurisdiction and Venue*

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion

challenging the court's right to exercise personal jurisdiction over them.  Once this is done,

"plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to

establish personal jurisdiction".  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir.

1992), cert. denied 506 U.S. 817 (1992).  In doing so, the plaintiff must establish "jurisdictional

facts through sworn affidavits or other competent evidence".  Time Share Vacation Club v.

Atlantic Resorts Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)(citation omitted).

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident

defendants to the extent permissible under the law of the state where the district court sits."

2

Case 1:06-cv-00741-SLR    Document 56-5    Filed 06/05/2007    Page 4 of 12
Case 2:06-cv-05818-SDW-MCA    Document 39-4    Filed 06/05/2007    Page 4 of 12
Case 2:06-cv-05818-SDW-MCA    Document 34    Filed 05/17/2007    Page 3 of 11

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)(citation omitted). Personal jurisdiction over a non-resident defendant is proper where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). Thus, where a "corporation purposefully avails itself of the privilege of conducting activities within the forum State, . . . it has clear notice that it is subject to suit there . . ." Id. New Jersey's "long arm jurisdiction permits the assertion of *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment". Eaton Corp. v. Maslym Holding Co., 929 F.Supp. 792, 796 (D.N.J. 1996) (citations omitted).

To obtain personal jurisdiction, a moving party may assert either general or specific jurisdiction (or both). General jurisdiction is established by demonstrating that the defendant has systematic and continuous contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984). Specific jurisdiction exists when a non-resident defendant purposefully establishes minimum contacts with the forum state and is established where the litigation arises out of or relates to the defendant's forum contacts, provided that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. at 414 (citation omitted). Accordingly, before this Court may adjudicate a patent infringement case such as that presented here, specific and/or general jurisdiction over Defendants must be found.

The issue of personal jurisdiction in a patent case is governed by Federal Circuit law regarding due process. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003). The exercise of personal jurisdiction must satisfy the requirements of due process. To so

determine, a three step analysis must be applied:

> 1. Did defendant purposefully direct his activities at the residents in the forum;
> 2. Does the claim arise out of or relate to those activities; and
> 3. Is the assertion of personal jurisdiction reasonable and fair.

Breckenridge Pharmaceuticals Inc. v. Metabolite Labs. Inc., 444 F.3d 1356, 1363 (Fed.

Cir. 2006) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545- 46 (Fed.Cir. 1995)).

With respect to the third step, the burden is on defendant to show a compelling case that

the presence of some other considerations would render jurisdiction unreasonable under the

factors set forth by the Supreme Court of the United States in Burger King. Id. at 1367. These

factors are to be considered in determining the fairness of asserting personal jurisdiction over a

defendant and consist of:

> 1. the burden on the defendant;
> 2. the forum State's interest in adjudicating the dispute;
> 3. the plaintiff's interest in obtaining convenient and effective relief;
> 4. the interstate judicial system's interest in obtaining the most efficient; resolution of controversies; and
> 5. shared interest of the several states in furthering fundamental substantive social policies.

Id. In a patent case the crux of the due process inquiry should focus on whether

defendant has had contact with the parties in the forum state beyond sending cease and desist

letters or mere attempts to license the patent there. Id. at 1366.

With respect to specific jurisdiction, on October 23, 2006 Abrika Inc. notified Celgene,

by way of a notification letter, of the ANDA application – as it is required to do pursuant to 21

U.S.C. §355(j)(2)(B)(i),(iii); 21 C.F.R..314.95(b),(d). The filing of the ANDA triggers a

statutory right to sue for patent infringement. However, this alone does not appear to constitute

grounds for finding specific jurisdiction as Defendants have taken no step that would constitute infringement such as manufacturing or selling the drug at issue in this state. See Abbott Labs. v. Mylan Pharmaceuticals Inc., 2006 U.S.Dist. Lexis 13782. Abrika Inc. did not perform the development and formulation work in support of the ANDA in New Jersey; the sample of its ANDA product was not manufactured in New Jersey; the clinical studies were not performed in New Jersey; and Abrika Inc.'s personnel and agents did not prepare the ANDA in New Jersey.[1]

Nevertheless, while Defendants have no physical presence in New Jersey and the ANDA was not filed or prepared in New Jersey, Defendants's activities within New Jersey constitute continuous and systematic contacts sufficient to warrant general jurisdiction.[2] While the ANDA has not yet been approved, and there has been no technical sale of the product in New Jersey, Defendants have entered into contracts with the State of New Jersey. They have also sold drugs and purchased ingredients for their products from companies located in New Jersey. The Defendants' New Jersey related activities include:

    1.    In 2006, Abrika Inc. transacted business in approximately 38 states. New Jersey amounted to approximately 8.4% of their annual sales, totaling $919,106 — which was the third highest source of sales for Abrika Inc. in 2006. (Exhibits 7 &

---

[1] This Court will not further discuss the issue of specific jurisdiction since general jurisdiction exists in this matter.

[2] Defendants contend Abrika LLLP and Abrika Inc. are two distinct entities and that this case should be dismissed as to Abrika LLLP because it ceased conducting business in New Jersey prior to this action and on April 1, 2006, Abrika LLLP transferred all its assets and liabilities to Abrika Inc. However, pursuant to New Jersey law, a corporation is imputed with its predecessor's contacts of personal jurisdiction if certain factors are established. Portfolio Fin. Servicing Co. v. Sharemax.com, Inc., 334 F.Supp.2d 620, 625 (D.N.J. 2004)(citation omitted). The first three of these factors exist here. (See Savit Decl. at Ex. 3.)

8 to Savit Decl.)

2.    Abrika Inc. entered into two contracts with the State of New Jersey: the August

15, 2003 PAAD Drug Rebate Agreement with the Commissioner of the New

Jersey Department of Health and Senior Services whereby Abrika Inc. "a drug

manufacturer" was required to enter into and have in effect a Rebate Agreement

with the State of New Jersey in order for its drugs to be eligible for state funding

when dispersed to NJ PAAD[3] beneficiaries (id. at Ex. 23A) and the May 1, 2004

Senior Gold Prescription Discount Program Rebate Agreement (Ex. 24) . Both

these agreements are effective until June 30, 2007 (Exs. 23B & 25) and both

provide for resolution of disputes under New Jersey law, specifically N.J.S.A.

52:14B- 1 et seq.  (Id. at Exs. 23A & 24.)

3.    Abrika Inc. also entered into at least three other contracts with the state of New

Jersey: WFNJ/GA Drug Rebate Program, N.J. Medicaid Drug Rebate Program

and NJ AIDS Drug Distribution Program.

4.    Abrika Inc. also purchased goods from companies located in New Jersey.  On

January 2, 2003 Defendant entered into a five-year Supply Agreement with Sage

Chemical Inc. for ingredients to be used in Abrika's products.  (Id. at Ex. 27.)

Abrika Inc. also entered into a June 1, 2003 Supply Agreement with ISP

Technologies.  (Id. at Ex. 30.)

5.    Abrika LLLP entered into a June 25, 2004 Sales and Marketing Agreement with

---

[3] The New Jersey program provides drugs and related products to 200,000 low income
aged residents.

BiCoastal Pharmaceuticals, a New Jersey corporation (Id. at Ex. 31) and a June
25, 2004 agreement with Well Spring Pharmaceutical Corp. (Id. at Ex. 32).

6.    Abrika LLLP contracted with Lawrence T. Freidhoff, who resides in New Jersey,
to act inter alia, as an advisor to its CEO. Mr. Freidhoff was paid $4,000 daily for
his services. (Id. at Ex. 27)

7.    From 2003 until the present, Abrika has made approximately $9 million in
purchases from New Jersey companies. (Id. at Ex. 41 & 42, Pl.'s Br. at 24.)

The matter presented to this Court does not involve merely one or two examples of
Defendants contacts within New Jersey. The instant case presents systematic and continuous
contacts with New Jersey to an extent that warrants a finding of general jurisdiction from at least
2003 to the present. As instructed by the court in Akro, supra, the assertion of jurisdiction must
be reasonable and fair. Here, both Abrika Inc. and Abrika LLLP have entered into contracts with
the state of New Jersey and companies/individuals in New Jersey. They have also sold and
purchased products to and from New Jersey companies and their continued obligation to do is
noteworthy. They have certainly availed themselves of the benefits of conducting business here
and can not now feign surprise by being sued here by Plaintiffs. Further, Defendants have failed
to provide a compelling case that exercising jurisdiction over it would offend principles of fair
play and substantial justice. Under Burger King, supra, Defendants have not demonstrated an
unreasonable burden from litigating this case in New Jersey. New Jersey has an interest in
protecting its citizens from patent infringement, and Plaintiffs certainly have an interest in
obtaining relief for patent infringement. Neither the interstate judicial system nor the shared
interest of the states will be affected by assertion of jurisdiction in this case, because all states are

governed by the same body of patent law.

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint for improper venue. In a patent infringement action, proper venue is defined in 28 U.S.C.§§ 1400(b) and 1391(c). Venue is proper where the defendant resides, or where it has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). When defendant is a corporation, it is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391©. Here, there is personal jurisdiction and venue is therefore proper.

### Transfer

In the alternative, Defendants contend that the case should be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a). A district court may transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice," provided that the case is transferred to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is not disputed that this case could have been brought in Delaware, as there is a pending action there currently and jurisdiction and venue are uncontested.

"The burden of establishing the need for transfer . . . rests with the movant." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing Shuttle v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)). When deciding motions to transfer, the "plaintiff's choice of venue should not be lightly disturbed," and "the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice." Market Transition Facility of New Jersey v. Twena, 941 F.Supp. 462, 467 (D.N.J. 1996) (citing Hardaway Constructors, Inc. v. Conesco Industries, Ltd., 583 F.Supp. 617 (D.N.J. 1983)).

8

Case 1:06-cv-00741-SLR    Document 56-5    Filed 06/05/2007    Page 10 of 12
Case 2:06-cv-05818-SDW-MCA    Document 39-4    Filed 06/05/2007    Page 10 of 12
Case 2:06-cv-05818-SDW-MCA    Document 34    Filed 05/17/2007    Page 9 of 11

The Third Circuit has held that there are both public and private factors to be considered in deciding motions to transfer. Id. at 879-880. The private factors to be considered weigh against transfer. Plaintiffs choice of forum is to be given considerable weight in deciding a motion to transfer, and Plaintiffs choice will prevail "unless the party moving for the transfer can convince the court that its alternative forum is not only adequate, but *more convenient than the present forum*." Market Transition, 941 F.Supp. at 467 (citing Hudson United Bank v. Chase Manhattan Bank, 832 F.Supp. 881, 888 (D.N.J. 1993)) (emphasis added). Defendants argue that Plaintiffs' choice of forum should be given little, if any, weight in the 1404(a) balancing test due to the fact that Plaintiffs also filed suit in Delaware. However, Plaintiffs had legitimate reasons to file a similar, even identical action in Delaware, in order to ensure that they would not be time-barred from bringing the action at all should this Court find that it did not have personal jurisdiction over Defendants. Defendants' suggestion that Plaintiffs do not actually have a preference is therefore inaccurate. In addition, Plaintiffs filed in New Jersey first, and did not even serve process on Defendants in Delaware, indicating a clear preference that the case move forward in New Jersey.

Other private factors weigh in Plaintiffs' favor also. Given the proximity of this Court and the District of Delaware court,[4] there is no reason to believe that transferring the case would be more convenient for the parties or the witnesses, or that transfer would provide easier access to evidence. Although Defendant's choice of forum is to be given some weight in considering a motion to transfer, here Defendants do not even contend that it is more convenient for the case to

_____

[4]It is approximately 110 miles from the District of New Jersey courthouse to the District of Delaware courthouse.

9

Case 1:06-cv-00741-SLR   Document 56-5   Filed 06/05/2007   Page 11 of 12
Case 2:06-cv-05818-SDW-MCA   Document 39-4   Filed 06/05/2007   Page 11 of 12
Case 2:06-cv-05818-SDW-MCA   Document 34   Filed 05/17/2007   Page 10 of 11

be in Delaware. Defendants only claim that the case should be in Delaware because that is where they are "incorporated and [have] already submitted to the jurisdiction of the Court." (Def. Br. 14.) Neither of these issues are factors to be considered in a 1404(a) motion to transfer.

It is unnecessary for the Court to address in detail the public interest factors because, as conceded by Defendants, "there is no appreciable difference between this Court and the Delaware Court regarding many public interest factors." (Def. Br. 14.) And while Defendants do suggest that there is a public interest in preventing duplicate litigation (Def. Br. 12), and this Court agrees, the cases cited by Defendants predominantly involve the transfer of second filed actions. Here, the first filed action was in New Jersey. The determination of whether the case should go forward in Delaware or New Jersey is to be made in the framework of a 1404(a) motion to transfer. Because Defendants have not met their burden of showing that transferring the case to Delaware would be more convenient, the motion to transfer is denied.

*Motion to Seal Documents*

Pursuant to Local Civil Rule 5.3(c)(2), any motion to seal documents filed with the Court must include: (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, © the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available. The motions to seal filed by both parties have not satisfied the requirements of Local Civil Rule 5.3(c)(2). Neither motion provides legitimate public or private reasons for the documents to be kept from the public, and neither motion sufficiently identifies a clearly defined and serious injury that would result if the motion is not granted, nor do the

10

Case 1:06-cv-00741-SLR    Document 56-5    Filed 06/05/2007    Page 12 of 12
Case 2:06-cv-05818-SDW-MCA    Document 39-4    Filed 06/05/2007    Page 12 of 12
Case 2:06-cv-05818-SDW-MCA    Document 34    Filed 05/17/2007    Page 11 of 11

motions adequately explain why a less restrictive alternative is unavailable.[5] Because both parties have failed to satisfy the requirements of Rule 5.3(c)(2), the motions to seal are denied. Both parties will have 20 days to renew their motions and comply with the requirements of the rule. The documents mentioned in the motions will remain temporarily under seal, and if the parties do not renew their motions within 20 days, the documents will be unsealed.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss, or in the Alternative Transfer to the District of Delaware, is Denied and the Motions to Seal Documents are denied, subject to the right of the parties to re-file in compliance with New Jersey Local Rule 5.3(c)(2) within 20 days.

**SO ORDERED**.

s/Susan D. Wigenton, U.S.D.J.

---

[5]Both parties only state that there was an agreement to file the documents under seal, and that they are "aware of no less restrictive alternative available."

11

# EXHIBIT 4

## Harris, Jonathan A.

| | |
|---|---|
| **From:** | Ongman, John W. |
| **Sent:** | Tuesday, May 22, 2007 9:10 AM |
| **To:** | Lester J. Savit |
| **Cc:** | Harris, Jonathan A.; hrenk@fchs.com; Philip Rovner; ainsogna@jonesday.com; rdwhitlow@jonesday.com |

**Subject:** RE: Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1)

Dear Lester:

On the best information available to us, it is likely that a trial date in the New Jersey court in ordinary course would be set a year or more after the September 2, 2008 trial date already established in Delaware. Our responsibilities to patients in need of an affordable generic substitute for Ritalin and to our shareholders prohibit us from stipulating to such an extensive delay as to when a generic substitute may be made available to patients.

We do not, however, have any objection to proceeding in New Jersey if this element of delay is removed. To this end, we make the following suggestion. Plaintiffs and Defendants would promptly make a joint motion directly to Judge Wigenton for immediate entry of a schedule identical to that laid out in Judge Robinson's April 4, 2007 scheduling order, including a trial date no later than September 2, 2008. Upon entry by Judge Wigenton of such a schedule, Defendants would then join Plaintiffs in a stipulated dismissal of the Delaware action. Let me know whether you would like to discuss this suggestion.

Regards,

John

---

**From:** Lester J. Savit [mailto:ljsavit@JonesDay.com]
**Sent:** Sunday, May 20, 2007 7:08 PM
**To:** Ongman, John W.
**Cc:** Harris, Jonathan A.; hrenk@fchs.com; Philip Rovner; ainsogna@jonesday.com; rdwhitlow@jonesday.com
**Subject:** Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1)

Dear John:
I am writing this email on Sunday afternoon (Pacific Coast time) with the expectation that you will read it on your Blackberry Sunday (if convenient to you) or when you arrive in your office on Monday morning, East Coast time.
As you are undoubtedly aware by now, Judge Wigenton denied Abrika's motion to dismiss or transfer the New Jersey case to Delaware. Judge Robinson previously ruled that Delaware recognized the first-filed rule and would dismiss the Delaware action under these circumstances.
Rule 41(a)(1), F.R.Civ.P. allows the parties to stipulate to dismissal without the need for another motion to the Court. Please let me know by noon (East Coast time), Tuesday, May 22, or sooner if possible, whether Abrika will so stipulate.
Regards,
Lester

---

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply

e-mail, so that our records can be corrected.
==========

# EXHIBIT 5

## Harris, Jonathan A.

| | |
|---|---|
| **From:** | Ongman, John W. |
| **Sent:** | Tuesday, May 22, 2007 5:56 PM |
| **To:** | Lester J. Savit |
| **Cc:** | ainsogna@jonesday.com; hrenk@fchs.com; Harris, Jonathan A.; Philip Rovner; rdwhitlow@jonesday.com |
| **Subject:** | RE: Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1) |

Dear Lester:

We understand that there are no local patent rules in New Jersey. We also understand that Judge Wigenton has not issued a standing order on patent matters. We further understand that Judge Wigenton has not yet proceeded over a patent case that has progressed to the scheduling order stage after she had assumed responsibility as the presiding district judge for the case. Thus, as an initial matter, it appears that nothing would proclude proposing the essential elements of Judge Robinson's scheduling order. Certainly, to the extent negotiations among Plaintiffs and Defendants identify schedule elements better suited to New Jersey, nothing would prohibit the parties from agreeing to jointly submit a schedule with these elements. The essential principle from our perspective is that the schedule lead efficiently and effectively to a trial date no later than September 2, 2008.

Discovery currently is being conducted in Delaware under the protective conditions of Delaware Local Rule 26.2. As you know, Rule 26.2 imposes an outside attorneys eyes only standard of confidentiality in discovery until a protective order is in effect. We do not have a protective order in effect. Our history of negotiations concerning a protective order in New Jersey to cover the personal jurisdictional discovery suggests that it may take some period of time before we can agree on protective order terms and have that order entered in the New Jersey court. During this indefinitely long interregnum, discovery could not continue unless it were to do so under the auspices of the Delaware court.

Thus we cannot stipulate to a Rule 41(a)(1) dismissal now in Delaware. But if the parties take steps to promptly negotiate and jointly submit a schedule to Judge Wigenton and press for an early entry of the agreed schedule, the time which must elapse before Defendants are in a position to so stipulate can be kept to a minimum.

Regards,

John

---

**From:** Lester J. Savit [mailto:ljsavit@JonesDay.com]
**Sent:** Tuesday, May 22, 2007 4:08 PM
**To:** Ongman, John W.
**Cc:** ainsogna@jonesday.com; hrenk@fchs.com; Harris, Jonathan A.; Philip Rovner; rdwhitlow@jonesday.com
**Subject:** Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1)

Dear John:
Thank you for your email of earlier today. We do not see your proposal as productive because the New Jersey district court has its own rules, practices and preferences for scheduling, and we need to take that into account. However, if Abrika is willing to stipulate to dismissal pursuant to Rule 41(a)(1), plaintiffs will agree to continue to engage in discovery while Abrika answers the New Jersey complaint and negotiates a proposed scheduling order specifically for Judge Wigenton. If discovery continues during this period, any delay resulting from Abrika's baseless motion to dismiss the New Jersey action will be minimized.
Regards,
Lester

"Ongman, John W." <jwo@avhlaw.com>

05/22/2007 06:10 AM

To "Lester J. Savit" <ljsavit@JonesDay.com>

cc "Harris, Jonathan A." <jah@avhlaw.com>, hrenk@fchs.com, "Philip Rovner" <provner@potteranderson.com>, ainsogna@jonesday.com, rdwhitlow@jonesday.com

Subject RE: Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1)

Dear Lester:

On the best information available to us, it is likely that a trial date in the New Jersey court in ordinary course would be set a year or more after the September 2, 2008 trial date already established in Delaware. Our responsibilities to patients in need of an affordable generic substitute for Ritalin and to our shareholders prohibit us from stipulating to such an extensive delay as to when a generic substitute may be made available to patients.

We do not, however, have any objection to proceeding in New Jersey if this element of delay is removed. To this end, we make the following suggestion. Plaintiffs and Defendants would promptly make a joint motion directly to Judge Wigenton for immediate entry of a schedule identical to that laid out in Judge Robinson's April 4, 2007 scheduling order, including a trial date no later than September 2, 2008. Upon entry by Judge Wigenton of such a schedule, Defendants would then join Plaintiffs in a stipulated dismissal of the Delaware action. Let me know whether you would like to discuss this suggestion.

Regards,

John

---

**From:** Lester J. Savit [mailto:ljsavit@JonesDay.com]
**Sent:** Sunday, May 20, 2007 7:08 PM
**To:** Ongman, John W.
**Cc:** Harris, Jonathan A.; hrenk@fchs.com; Philip Rovner; ainsogna@jonesday.com; rdwhitlow@jonesday.com
**Subject:** Celgene/Novartis v. Abrika - Delaware Action - Request for Stipulation Pursuant to Rule 41(a)(1)

Dear John:
I am writing this email on Sunday afternoon (Pacific Coast time) with the expectation that you will read it on your Blackberry Sunday (if convenient to you) or when you arrive in your office on Monday morning, East Coast time.
As you are undoubtedly aware by now, Judge Wigenton denied Abrika's motion to dismiss or transfer the New Jersey case to Delaware. Judge Robinson previously ruled that Delaware recognized the first-filed rule and would dismiss the Delaware action under these circumstances.
Rule 41(a)(1), F.R.Civ.P. allows the parties to stipulate to dismissal without the need for another motion to the Court. Please let me know by noon (East Coast time), Tuesday, May 22, or sooner if possible, whether Abrika will so stipulate.
Regards,
Lester

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or

other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

*********************************************************************** Notice The information contained in this electronic mail and any attached documents from Axinn, Veltrop & Harkrider LLP is confidential. This email may be an attorney-client communication, and as such is privileged and confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this electronic mail in error, please notify us immediately by telephone (212) 728-2200/(860) 275-8100 or by reply electronic mail to the sender.
**************************************************************


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

6/5/2007