## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CELGENE CORPORATION, NOVARTIS     )
PHARMACEUTICALS CORPORATION and   )
NOVARTIS PHARMA AG,               )
     Plaintiffs,   )  Civil Action No. 06-741-SLR
v.                                )
          )
ABRIKA PHARMACEUTICALS, INC. and  )
ABRIKA PHARMACEUTICALS, LLLP,     )
          )
     Defendants.   )

## DECLARATION OF PHILIP A. ROVNER

OF COUNSEL:

Anthony M. Insogna
Lester J. Savit
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130-4096
(858) 314-1200

F. Dominic Cerrito
JONES DAY
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939

*Attorneys for Plaintiff Celgene Corporation*

Robert L. Baechtold
Henry J. Renk
Nicholas N. Kallas
FITZPATRICK, CELLA, HARPER &
SCINTO
30 Rockefeller Plaza
New York, New York 10112
(212) 218-2100

*Attorneys for Plaintiffs Novartis*
*Pharmaceuticals Corporation and Novartis*
*Pharma AG*

Dated: June 6, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CELGENE CORPORATION, NOVARTIS
PHARMACEUTICALS CORPORATION and
NOVARTIS PHARMA AG,

                    Plaintiffs,

v.

ABRIKA PHARMACEUTICALS, INC. and
ABRIKA PHARMACEUTICALS, LLLP,

                    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-741-SLR

### DECLARATION OF PHILIP A. ROVNER

I, Philip A. Rovner, declare as follows:

1.     I am a member of the law firm of Potter Anderson & Corroon LLP, counsel of record for Plaintiffs Celgene Corporation, Novartis Pharmaceuticals Corporation and Novartis Pharma AG (collectively, "Plaintiffs").

2.     I submit this declaration in support of Plaintiffs' Motion for a Voluntary Dismissal Without Prejudice.

3.     Attached hereto as Exhibit A is a true and correct copy of the Opinion and Order of Susan D. Wigenton, U.S.D.J., filed May 17, 2007, in the case captioned: *Celgene Corporation, et al., v. Abrika Pharmaceuticals, Inc., et al.*, D.N.J, C.A. No. 06-5818 (SDW).

4.     Attached hereto as Exhibit B is a true and correct copy of the Answer and Counterclaim filed by defendants Abrika Pharmaceuticals, Inc. and Abrika Pharmaceuticals, LLLP in the case captioned: *Celgene Corporation, et al. v. Abrika Pharmaceuticals, Inc., et al.*, D.N.J., C.A. No. 06-5818 (SDW).

5.    Attached hereto as Exhibit C is a true and correct copy of the transcript of the

telephone scheduling conference held on March 28, 2007 in this matter.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  June 6, 2007                            _____

                                                Philip A. Rovner

# EXHIBIT A

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CELGENE CORPORATION, | : | |
| NOVARTIS PHARMACEUTICALS | : | Civil Action No. 06-5818(SDW) |
| CORPORATION and NOVARTIS | : | |
| PHARMA AG, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ABRIKA PHARMACEUTICALS, INC. | : | **OPINION AND ORDER** |
| and | : | |
| ABRIKA PHARMACEUTICALS LLLP, | : | |
| | : | |
| | : | May 15, 2007 |
| Defendants. | : | |
| | : | |

**WIGENTON,** District Judge.

Before the Court are Defendants Abrika Pharmaceuticals, Inc. ("Abrika Inc.") and Abrika

Pharmaceuticals, LLLP's ("Abrika LLLP") (collectively "Defendants") Motion to Dismiss

Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(2) and (3), or in the

alternative, Transfer to the District of Delaware and Motion to Seal Documents and Plaintiff

Celgene Corporation's Motion to Seal Documents. Plaintiffs Novartis Pharmaceuticals

Corporation and Novartis Pharma AG (collectively "Plaintiffs") have joined in Celgene

Corporation's Opposition. The Court, having considered the parties' submissions and having

decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set

forth below, denies Defendants's Motion to Dismiss or Transfer and denies the Motions to Seal

Documents.

1

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I.    BACKGROUND

This is a lawsuit for patent infringement arising out of Abrika Inc.'s filing of an

Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA")

seeking approval to commercially market a generic version of Novartis's RITALIN ® LA

methylphenidate extended-release capsules prior to the expiration of two patents allegedly owned

by Celgene Corporation that cover that product and its use.  Plaintiffs filed this lawsuit in the

Federal District Court, District of New Jersey on December 4, 2006.  Two days later, on

December 6, 2006 Plaintiffs filed a virtually identical action against the same defendants in the

Federal District Court, District of Delaware.  Defendants have not contested venue or personal

jurisdiction in the Delaware case and have filed responsive pleadings in that matter.

## II.    DISCUSSION

*Jurisdiction and Venue*

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion

challenging the court's right to exercise personal jurisdiction over them.  Once this is done,

"plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to

establish personal jurisdiction".  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir.

1992), cert. denied 506 U.S. 817 (1992).  In doing so, the plaintiff must establish "jurisdictional

facts through sworn affidavits or other competent evidence".  Time Share Vacation Club v.

Atlantic Resorts Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)(citation omitted).

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident

defendants to the extent permissible under the law of the state where the district court sits."

2

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)(citation

omitted). Personal jurisdiction over a non-resident defendant is proper where "the defendant's

conduct and connection with the forum State are such that he should reasonably anticipate being

haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)

(citations omitted). Thus, where a "corporation purposefully avails itself of the privilege of

conducting activities within the forum State, . . . it has clear notice that it is subject to suit there .

. ." Id. New Jersey's "long arm jurisdiction permits the assertion of *in personam* jurisdiction as

far as is constitutionally permissible under the Fourteenth Amendment". Eaton Corp. v. Maslym

Holding Co., 929 F.Supp. 792, 796 (D.N.J. 1996) (citations omitted).

To obtain personal jurisdiction, a moving party may assert either general or specific

jurisdiction (or both). General jurisdiction is established by demonstrating that the defendant has

systematic and continuous contacts with the forum state. Helicopteros Nacionales de Colombia,

S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984). Specific jurisdiction exists when a non-resident

defendant purposefully establishes minimum contacts with the forum state and is established

where the litigation arises out of or relates to the defendant's forum contacts, provided that the

defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice." Id. at 414 (citation

omitted). Accordingly, before this Court may adjudicate a patent infringement case such as that

presented here, specific and/or general jurisdiction over Defendants must be found.

The issue of personal jurisdiction in a patent case is governed by Federal Circuit law

regarding due process. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir.

2003). The exercise of personal jurisdiction must satisfy the requirements of due process. To so

3

determine, a three step analysis must be applied:

    1.    Did defendant purposefully direct his activities at the residents in the forum;

    2.    Does the claim arise out of or relate to those activities; and

    3.    Is the assertion of personal jurisdiction reasonable and fair.

Breckenridge Pharmaceuticals Inc. v. Metabolite Labs. Inc., 444 F.3d 1356, 1363 (Fed.

Cir. 2006) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545- 46 (Fed.Cir. 1995)).

With respect to the third step, the burden is on defendant to show a compelling case that

the presence of some other considerations would render jurisdiction unreasonable under the

factors set forth by the Supreme Court of the United States in Burger King. Id. at 1367. These

factors are to be considered in determining the fairness of asserting personal jurisdiction over a

defendant and consist of:

    1.    the burden on the defendant;

    2.    the forum State's interest in adjudicating the dispute;

    3.    the plaintiff's interest in obtaining convenient and effective relief;

    4.    the interstate judicial system's interest in obtaining the most efficient; resolution of controversies; and

    5.    shared interest of the several states in furthering fundamental substantive social policies.

Id. In a patent case the crux of the due process inquiry should focus on whether

defendant has had contact with the parties in the forum state beyond sending cease and desist

letters or mere attempts to license the patent there. Id. at 1366.

With respect to specific jurisdiction, on October 23, 2006 Abrika Inc. notified Celgene,

by way of a notification letter, of the ANDA application – as it is required to do pursuant to 21

U.S.C. §355(j)(2)(B)(i),(iii); 21 C.F.R..314.95(b),(d). The filing of the ANDA triggers a

statutory right to sue for patent infringement. However, this alone does not appear to constitute

4

grounds for finding specific jurisdiction as Defendants have taken no step that would constitute infringement such as manufacturing or selling the drug at issue in this state. See Abbott Labs. v. Mylan Pharmaceuticals Inc., 2006 U.S.Dist. Lexis 13782. Abrika Inc. did not perform the development and formulation work in support of the ANDA in New Jersey; the sample of its ANDA product was not manufactured in New Jersey; the clinical studies were not performed in New Jersey; and Abrika Inc.'s personnel and agents did not prepare the ANDA in New Jersey.[1]

Nevertheless, while Defendants have no physical presence in New Jersey and the ANDA was not filed or prepared in New Jersey, Defendants's activities within New Jersey constitute continuous and systematic contacts sufficient to warrant general jurisdiction.[2]  While the ANDA has not yet been approved, and there has been no technical sale of the product in New Jersey, Defendants have entered into contracts with the State of New Jersey.  They have also sold drugs and purchased ingredients for their products from companies located in New Jersey.  The Defendants' New Jersey related activities include:

1.    In 2006, Abrika Inc. transacted business in approximately 38 states.  New Jersey amounted to approximately 8.4% of their annual sales, totaling $919,106 — which was the third highest source of sales for Abrika Inc. in 2006.  (Exhibits 7 &

---

[1] This Court will not further discuss the issue of specific jurisdiction since general jurisdiction exists in this matter.

[2] Defendants contend Abrika LLLP and Abrika Inc. are two distinct entities and that this case should be dismissed as to Abrika LLLP because it ceased conducting business in New Jersey prior to this action and on April 1, 2006, Abrika LLLP transferred all its assets and liabilities to Abrika Inc.  However, pursuant to New Jersey law, a corporation is imputed with its predecessor's contacts of personal jurisdiction if certain factors are established.  Portfolio Fin. Servicing Co. v. Sharemax.com, Inc., 334 F.Supp.2d 620, 625 (D.N.J. 2004)(citation omitted).  The first three of these factors exist here.  (See Savit Decl. at Ex. 3.)

8 to Savit Decl.)

2.       Abrika Inc. entered into two contracts with the State of New Jersey: the August

15, 2003 PAAD Drug Rebate Agreement with the Commissioner of the New

Jersey Department of Health and Senior Services whereby Abrika Inc. "a drug

manufacturer" was required to enter into and have in effect a Rebate Agreement

with the State of New Jersey in order for its drugs to be eligible for state funding

when dispersed to NJ PAAD[3] beneficiaries (id. at Ex. 23A) and the May 1, 2004

Senior Gold Prescription Discount Program Rebate Agreement (Ex. 24) .  Both

these agreements are effective until June 30, 2007 (Exs. 23B & 25) and both

provide for resolution of disputes under New Jersey law, specifically N.J.S.A.

52:14B- 1 et seq.  (Id. at Exs. 23A & 24.)

3.       Abrika Inc. also entered into at least three other contracts with the state of New

Jersey: WFNJ/GA Drug Rebate Program, N.J. Medicaid Drug Rebate Program

and NJ AIDS Drug Distribution Program.

4.       Abrika Inc. also purchased goods from companies located in New Jersey.  On

January 2, 2003 Defendant entered into a five-year Supply Agreement with Sage

Chemical Inc. for ingredients to be used in Abrika's products.  (Id. at Ex. 27.)

Abrika Inc. also entered into a June 1, 2003 Supply Agreement with ISP

Technologies.  (Id. at Ex. 30.)

5.       Abrika LLLP entered into a June 25, 2004 Sales and Marketing Agreement with

_____

[3]  The New Jersey program provides drugs and related products to 200,000 low income
aged residents.

6

BiCoastal Pharmaceuticals, a New Jersey corporation (Id. at Ex. 31) and a June

25, 2004 agreement with Well Spring Pharmaceutical Corp. (Id. at Ex. 32).

6.    Abrika LLLP contracted with Lawrence T. Freidhoff, who resides in New Jersey,

to act inter alia, as an advisor to its CEO. Mr. Freidhoff was paid $4,000 daily for

his services. (Id. at Ex. 27)

7.    From 2003 until the present, Abrika has made approximately $9 million in

purchases from New Jersey companies. (Id. at Ex. 41 & 42, Pl.'s Br. at 24.)

The matter presented to this Court does not involve merely one or two examples of

Defendants contacts within New Jersey. The instant case presents systematic and continuous

contacts with New Jersey to an extent that warrants a finding of general jurisdiction from at least

2003 to the present. As instructed by the court in Akro, supra, the assertion of jurisdiction must

be reasonable and fair. Here, both Abrika Inc. and Abrika LLLP have entered into contracts with

the state of New Jersey and companies/individuals in New Jersey. They have also sold and

purchased products to and from New Jersey companies and their continued obligation to do is

noteworthy. They have certainly availed themselves of the benefits of conducting business here

and can not now feign surprise by being sued here by Plaintiffs. Further, Defendants have failed

to provide a compelling case that exercising jurisdiction over it would offend principles of fair

play and substantial justice. Under Burger King, supra, Defendants have not demonstrated an

unreasonable burden from litigating this case in New Jersey. New Jersey has an interest in

protecting its citizens from patent infringement, and Plaintiffs certainly have an interest in

obtaining relief for patent infringement. Neither the interstate judicial system nor the shared

interest of the states will be affected by assertion of jurisdiction in this case, because all states are

7

governed by the same body of patent law.

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint for improper venue. In a patent infringement action, proper venue is defined in 28 U.S.C.§§ 1400(b) and 1391(c). Venue is proper where the defendant resides, or where it has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). When defendant is a corporation, it is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391©. Here, there is personal jurisdiction and venue is therefore proper.

*Transfer*

In the alternative, Defendants contend that the case should be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a). A district court may transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice," provided that the case is transferred to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is not disputed that this case could have been brought in Delaware, as there is a pending action there currently and jurisdiction and venue are uncontested.

"The burden of establishing the need for transfer . . . rests with the movant." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing Shuttle v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)). When deciding motions to transfer, the "plaintiff's choice of venue should not be lightly disturbed," and "the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice." Market Transition Facility of New Jersey v. Twena, 941 F.Supp. 462, 467 (D.N.J. 1996) (citing Hardaway Constructors, Inc. v. Conesco Industries, Ltd., 583 F.Supp. 617 (D.N.J. 1983)).

8

The Third Circuit has held that there are both public and private factors to be considered in deciding motions to transfer. Id. at 879-880. The private factors to be considered weigh against transfer. Plaintiffs choice of forum is to be given considerable weight in deciding a motion to transfer, and Plaintiffs choice will prevail "unless the party moving for the transfer can convince the court that its alternative forum is not only adequate, but *more convenient than the present forum*." Market Transition, 941 F.Supp. at 467 (citing Hudson United Bank v. Chase Manhattan Bank, 832 F.Supp. 881, 888 (D.N.J. 1993)) (emphasis added). Defendants argue that Plaintiffs' choice of forum should be given little, if any, weight in the 1404(a) balancing test due to the fact that Plaintiffs also filed suit in Delaware. However, Plaintiffs had legitimate reasons to file a similar, even identical action in Delaware, in order to ensure that they would not be time-barred from bringing the action at all should this Court find that it did not have personal jurisdiction over Defendants. Defendants' suggestion that Plaintiffs do not actually have a preference is therefore inaccurate. In addition, Plaintiffs filed in New Jersey first, and did not even serve process on Defendants in Delaware, indicating a clear preference that the case move forward in New Jersey.

Other private factors weigh in Plaintiffs' favor also. Given the proximity of this Court and the District of Delaware court,[4] there is no reason to believe that transferring the case would be more convenient for the parties or the witnesses, or that transfer would provide easier access to evidence. Although Defendant's choice of forum is to be given some weight in considering a motion to transfer, here Defendants do not even contend that it is more convenient for the case to

---

[4]It is approximately 110 miles from the District of New Jersey courthouse to the District of Delaware courthouse.

9

be in Delaware. Defendants only claim that the case should be in Delaware because that is where

they are "incorporated and [have] already submitted to the jurisdiction of the Court." (Def. Br.

14.) Neither of these issues are factors to be considered in a 1404(a) motion to transfer.

It is unnecessary for the Court to address in detail the public interest factors because, as

conceded by Defendants, "there is no appreciable difference between this Court and the

Delaware Court regarding many public interest factors." (Def. Br. 14.) And while Defendants

do suggest that there is a public interest in preventing duplicate litigation (Def. Br. 12), and this

Court agrees, the cases cited by Defendants predominantly involve the transfer of second filed

actions. Here, the first filed action was in New Jersey. The determination of whether the case

should go forward in Delaware or New Jersey is to be made in the framework of a 1404(a)

motion to transfer. Because Defendants have not met their burden of showing that transferring

the case to Delaware would be more convenient, the motion to transfer is denied.

*Motion to Seal Documents*

Pursuant to Local Civil Rule 5.3(c)(2), any motion to seal documents filed with the Court

must include: (a) the nature of the materials or proceedings at issue, (b) the legitimate private or

public interests which warrant the relief sought, © the clearly defined and serious injury that

would result if the relief sought is not granted, and (d) why a less restrictive alternative to the

relief sought is not available. The motions to seal filed by both parties have not satisfied the

requirements of Local Civil Rule 5.3(c)(2). Neither motion provides legitimate public or private

reasons for the documents to be kept from the public, and neither motion sufficiently identifies a

clearly defined and serious injury that would result if the motion is not granted, nor do the

10

motions  adequately explain why a less restrictive alternative is unavailable.[5]  Because both

parties have failed to satisfy the requirements of Rule 5.3(c)(2), the motions to seal are denied.

Both parties will have 20 days to renew their motions and comply with the requirements of the

rule.  The documents mentioned in the motions will remain temporarily under seal, and if the

parties do not renew their motions within 20 days, the documents will be unsealed.


**CONCLUSION**

      For the foregoing reasons, Defendants Motion to Dismiss, or in the Alternative Transfer

to the District of Delaware, is Denied and the Motions to Seal Documents are denied, subject to

the right of the parties to re-file in compliance with New Jersey Local Rule 5.3(c)(2) within 20

days.


      **SO ORDERED**.


                        s/Susan D. Wigenton, U.S.D.J.

_____

[5]Both parties only state that there was an agreement to file the documents under seal, and that they are "aware of no less restrictive alternative available."

# EXHIBIT B

Stuart Reiser, Esq. (SR0646)
Victoria R. Pekerman, Esq. (VRP1274)
SHAPIRO & CROLAND
Continental Plaza II
411 Hackensack Avenue
Hackensack, NJ 07601
201-488-3900
Attorneys for Defendants
Abrika Pharmaceuticals, Inc.
and Abrika LLLP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY



| | |
|---|---|
| CELGENE CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION and NOVARTIS PHARMA A.G., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Civil Action No. 2:06-CV-05818 (SDW)(MCA)** |
| ABRIKA PHARMACEUTICALS, INC., and ABRIKA PHARMACEUTICALS, LLLP, | ) **(Filed Electronically)** ) ) |
| Defendants. | ) ) |

## ANSWER AND COUNTERCLAIM

Defendants Abrika Pharmaceuticals, Inc. and Abrika Pharmaceuticals, LLLP

(collectively "defendants") hereby respond to the corresponding paragraphs of the Complaint of

plaintiff Celgene Corporation ("Celgene"), Novartis Pharmaceuticals Corporation and Novartis

Pharma A.G. ("collectively Novartis") (collectively "plaintiffs") as follows:

    1.    Denied, except to admit that the Complaint purports to state a cause of action

under Title 35 of the U.S. Code with respect to Abrika Pharmaceuticals, Inc.'s filing of

Abbreviated New Drug Application ("ANDA") No. 78-458.

2.     Admitted, on information and belief.

3.     Admitted, on information and belief.

4.     Admitted, on information and belief.

5.     Denied. By way of further answer, Defendants state that subject to a conversion pursuant to Section 18-214 of the Limited Liability Company Act on May 11, 2007, Abrika Pharmaceuticals, Inc. was converted from a Delaware corporation to a Delaware limited liability company, changing its name from Abrika Pharmaceuticals, Inc. to Actavis South Atlantic LLC, having a principal place of business at 13800 N.W. 2nd Street, Suite 190, Sunrise, Florida 33325.

6.     Denied, except to state that Abrika LLLP is a Florida limited liability limited partnership, organized and existing under the laws of the State of Florida, having a principal place of business at 13800 N.W. 2nd Street, Suite 190, Sunrise, Florida 33325.

7.     Admitted.

8.     Denied, except to state that Abrika Pharmaceuticals Inc., now known as Actavis South Atlantic LLC, sells prescription drug products throughout the United States through wholesalers and retailers.

9.     Denied.

10.    Denied, except to state on information and belief that the U.S. Patent & Trademark Office ("PTO") issued U.S. Patent No. 5,837,284 ("the 1998 '284 patent") to Celgene on November 17, 1998, and that a copy is attached to the Complaint as Exhibit A.

11.    Denied, except to state on information and belief that the PTO issued U.S. Patent No. 6,635,284 ("the 2003 '284 patent") to Celgene on October 21, 2003, and that a copy is attached to the Complaint as Exhibit B. (The 1998 and 2003 '284 patent are collectively referred to herein as the "'284 patents.")

2

12.    Defendants lack sufficient information to respond to this allegation.

13.    Denied, except to state on information and belief that Novartis Pharmaceuticals
Corporation holds an approved New Drug Application for methylphenidate hydrochloride
extended release capsules 10 mg, 20 mg, 30 mg and 40 mg, which it sells under the trade name
RITALIN® LA.

14.    Admitted, on information and belief.

15.    Denied.

16.    Denied, except to state that Abrika Pharmaceuticals, Inc., now known as Actavis
South Atlantic LLC, intends to manufacture and sell methylphenidate extended-release capsules
20 mg., 30 mg. and 40 mg. ("Actavis South Atlantic LLC's Proposed Products") after receiving
FDA approval to do so.

17.    Defendants admit that ANDA No. 78-458 contains information showing that
Actavis South Atlantic LLC's Proposed Products, (a) are bioequivalent to RITALIN® LA, (b)
have the same active ingredient as RITALIN® LA, (c) have the same route of administration as
RITALIN® LA and (d) have substantially the same dosage form and proposed labeling, and the
same indication and usage as RITALIN® LA, as required by 21 U.S.C. § 355(j). Defendants
deny the remaining allegations.

18.    Admitted, upon information and belief.

19.    Defendants incorporate by reference their responses to paragraphs 1-18.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

3

24.    Defendants incorporate by reference their responses to paragraphs 1-23.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Denied.

## FIRST AFFIRMATIVE DEFENSE

### Invalidity

1.    The 1998 '284 patent is invalid by reason of the failure of the 1998 '284 patent to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103 and 112, including for example, invalidity by U.S. Patent No. 5,229,131 to Amidon et al. (the "'131 patent").

2.    The 2003 '284 patent is invalid by reason of the failure of the 2003 '284 patent to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103 and 112.

## SECOND AFFIRMATIVE DEFENSE

### Inequitable Conduct

1.    On information and belief, the '284 patents are unenforceable by reason of the failure of the plaintiffs and/or the inventors and/or others involved in the prosecution of the applications on which the patents issued (collectively "Applicants") to fulfill their duties of candor under 37 C.F.R. § 1.56.

2.    On information and belief, the '131 patent is prior art that was material under 37 C.F.R. § 1.56 to the patentability of the claims the Applicants sought.

4

3.    The title of the '131 patent is "Pulsatile Drug Delivery Systems." "Pulsatile" delivery of methylphenidate is taught and claimed by the '284 patents.

4.    The PTO organizes all patents into classes and subclasses, based on the subject matter of each patent. The classification system is used for purposes of locating prior art material to the subject matter of pending patent applications.

5.    The '131 patent's class is 424, which is the same class as the '284 patents. The '131 patent also shares two subclasses with the 2003 '284 patent. Two of the patents identified in the References Cited Sections of the '284 patents are in the same class and subclass as the '131 patent.

6.    On information and belief, Applicants were aware of the '131 patent during prosecution of the applications leading to the '284 patents.

7.    Applicants did not provide information to the PTO during prosecution of the '284 patents regarding the '131 patent.

8.    On information and belief, Applicants withheld information concerning the '131 patent with an intent to mislead the Examiner reviewing the applications leading to the '284 patents as to the patentability of the pending claims.

9.    On information and belief, on or before June 17, 1997, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

10.    On or before October 2, 2001, Celgene licensed the subject matter claimed by the '284 patents to Novartis.

11.    After licensing the subject matter of the '284 patents to Novartis, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

5

12.    On or before March 27, 2002, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

13.    In connection with the 1998 '284 patent, Applicants incorrectly claimed small entity status and paid small entity fees. For example, on March 27, 2002, Applicants paid small entity fees relating to the maintenance of the 1998 '284 patent.

14.    On or before October 15, 2002, Celgene did not qualify as a small entity within the meaning of 37 C.F.R. § 1.27 and 13 C.F.R. § 121.802.

15.    In connection with the application leading to the 2003 '284 patent, Applicants incorrectly claimed small entity status and paid small entity fees. For example, on at least October 15, 2002, Applicants paid small entity fees relating to a continued prosecution application filed in connection with the 1998 '284 patent.

16.    Applicant's incorrect claims to small entity status are material to the '284 patents because the PTO's acceptance of these claims and the resulting reduced fees are material to survival of the '284 patents.

17.    On information and belief, Applicants falsely declared that they qualified for small entity status with an intent to mislead the PTO.

18.    As a result, the '284 patents are unenforceable due to inequitable conduct by the Applicants before the PTO.

## THIRD AFFIRMATIVE DEFENSE

### Failure to State a Claim

1.    Plaintiffs fail to allege that Abrika Pharmaceuticals, LLLP, has committed any act of infringement of the '284 patents.

6

## COUNTERCLAIM

### The Parties

1.    Actavis South Atlantic LLC is a limited liability company organized and existing under the laws of the State of Delaware, and having a principal place of business at 13800 N.W. 2nd Street, Suite 190, Sunrise, Florida 33325.

2.    Actavis South Atlantic LLC was formed subject to a conversion pursuant to Section 18-214 of the Limited Liability Company Act on May 11, 2007 from Abrika Pharmaceuticals, Inc., a Delaware corporation having a principal place of business at 13800 N.W. 2nd Street, Suite 190, Sunrise, Florida 33325.

3.    Celgene Corporation ("Celgene") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 86 Morris Avenue, Summit, New Jersey 07901.

4.    Novartis Pharmaceuticals Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 59 Route 10, East Hanover, New Jersey 07936.

5.    Novartis Pharma AG is a corporation organized and existing under the laws of Switzerland, having an office and place of business at Lichtstrasse 35, CH-4056 Basel, Switzerland.

6.    Plaintiffs Celgene Corporation, Novartis Pharmaceuticals Corporation and Novartis Pharma AG are collectively referred to herein as "plaintiffs."

7

## FIRST COUNT

### Declaration of Noninfringement, Invalidity and Unenforceability

7.     Defendants repeat and reallege paragraphs 1-2 of their First Affirmative Defense,

paragraphs 1-18 of their Second Affirmative Defense and paragraphs 1-6 of the Counterclaims.

8.     This claim arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*,

and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This court has subject matter

jurisdiction under 28 U.S.C. §§ 1331 and 1338.

9.     In its Complaint, plaintiffs have asserted that Abrika Pharmaceuticals, Inc., now

known as Actavis South Atlantic LLC, has infringed U.S. Patent Nos. 5,837,284 and 6,635,284

("the '284 patents") by submission of Abbreviated New Drug Application ("ANDA") No. 78-

458 to the Food and Drug Administration ("FDA") under 21 U.S.C. § 355(j).  Through ANDA

No. 78-458, Actavis South Atlantic LLC seeks approval to manufacture and sell methylphenidate

hydrochloride extended-release capsules 20 mg, 30 mg and 40 mg ("Actavis South Atlantic

LLC's Proposed Products"), prior to the expiration of the '284 patents.

10.     Actavis South Atlantic LLC seeks a declaration that the '284 patents are not

infringed and that they are invalid and/or unenforceable.

11.     The '284 patents include claims that purport to cover a dosage form comprising,

among other things, ammonio methacrylate copolymer, which delivers two doses of a

methylphenidate drug,  providing a substantially immediate dose upon ingestion followed by one

or more additional doses at predetermined times.

12.     Plaintiffs maintain, and defendants deny, that Actavis South Atlantic LLC's

Proposed Products infringe the '284 patents and that the '284 patents are valid and enforceable.

8

13.    Unlike the claims of the '284 patents, Actavis South Atlantic LLC's Proposed
Products do not contain an ammonio methacrylate copolymer.

14.    The '284 patents do not claim Actavis South Atlantic LLC's Proposed Products.

15.    The '284 patents are invalid by reason of the failure of the '284 patents to satisfy
one or more conditions of patentability specified in Title 35 of the United States Code, including
but not limited to Sections 101, 102, 103 and 112.

16.    On information and belief, the '284 patents are unenforceable by reason of the
Applicants' intentionally false declaration of small entity status and payment of small entity fees
to the PTO.

17.    On information and belief, the '284 patents are unenforceable by reason of the
Applicants' intentional failure to cite material prior art to the PTO in connection with
prosecution of the applications leading to '284 patents.

18.    Actual and justifiable controversies exist between Actavis South Atlantic LLC
and the defendants regarding the infringement, validity and enforceability of the '284 patents.

19.    Actavis South Atlantic LLC is entitled to declarations that Actavis South Atlantic
LLC's Proposed Products do not infringe the '284 patents and that the '284 patents are invalid
and unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Actavis South Atlantic LLC demands judgment in its favor and against
plaintiffs, as follows:

(a)    Dismiss the Complaint with prejudice and deny each request for relief
made by plaintiffs;

(b)    Adjudge the claims of the '284 patents not infringed;

9

(c)    Adjudge the claims of the '284 patents invalid;

(d)    Adjudge the claims of the '284 patents to be unenforceable;

(e)    Declare that this case is exceptional under 35 U.S.C. § 285;

(f)    Award Actavis South Atlantic LLC and Abrika LLLP its attorneys' fees

pursuant to 35 U.S.C. § 285, other statutes or rules, or the general power of the Court;

(g)    Preliminarily and permanently enjoin plaintiffs, their officers, agents,

servants, employees, attorneys, and any person who acts in concert or participation with

plaintiffs, from utilizing the '284 patents to block, hamper, hinder or obstruct FDA

approval of Actavis South Atlantic LLC's Proposed Products;

(h)    Permanently enjoin plaintiffs, their officers, agents, servants, employees,

attorneys, and any person who acts in concert or participation with plaintiffs, from

asserting or otherwise seeking to enforce the '284 patents against Actavis South Atlantic

LLC or anyone in privity with Actavis South Atlantic LLC;

(i)    Order plaintiffs to request FDA to terminate the 30-month statutory stay

provided by 21 U.S.C. § 355(j)(5)(B)(iii); and

(j)    Award defendants such other and further relief as the Court deems just and

proper.

Dated:  June 1, 2007                          Respectfully Submitted,

                                              Stuart Reiter (Bar No. SR0646)
                                              Victoria R. Pekerman (Bar No. VRP1274)
                                              Shapiro and Croland
                                              411 Hackensack Avenue
                                              Hackensack, New Jersey 07601

Telephone: (201) 488-3900
Facsimile: (201) 488-9481

OF COUNSEL:

John Will Ongman (pro hac vice)
AXINN, VELTROP & HARKRIDER LLP
1801 K Street, Suite 411
Washington, DC 20006
Telephone: (202) 912-4700
Facsimile: (202) 912-4701

Jonathan A. Harris (pro hac vice)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 275-8100
Facsimile: (860) 275-8101

*Attorneys for Defendants*

11

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, that the matter in controversy herein is the subject of the following civil action pending in the United States District Court for the District of Delaware: <u>Celgene Corp. v. Abrika Pharmaceuticals, Inc.</u>, No. 1:06-CV-00741-SLR (complaint filed December 6, 2006). All parties in this action are also parties in the Delaware action, and no other parties are named in the Delaware action. The matter in controversy is not the subject of any other proceeding pending in any court or of any pending arbitration proceeding.

Dated: June 1, 2007

_____
Stuart Reiser

12

# EXHIBIT C

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2              IN AND FOR THE DISTRICT OF DELAWARE
3                     - - -
4    CELEGENE CORPORATION, NOVARTIS   :   CIVIL ACTION
     PHARMACEUTICALS CORPORATION and  :
5    NOVARTIS PHARMA AG,              :
                                      :
6              Plaintiffs            :
                                      :
7          vs.                       :
                                      :
8    ABRIKA PHARMACEUTICALS, INC. and :
     ABRIKA PHARMACEUTICALS, LLP,     :
9                                     :
               Defendants            :   NO. 06-741 (SLR)
10                    - - -
11                      Wilmington, Delaware
12                      Wednesday, March 28, 2007
                        8:35 o'clock, a.m.
13                   *** Telephone Conference
14                    - - -
15   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
16
17   APPEARANCES:
18        POTTER, ANDERSON & CORROON
          BY:  PHILIP A. ROVNER, ESQ.
19
20             Counsel for Plaintiffs
21
22
23                      Valerie J. Gunning
24                      Official Court Reporter
25
```

Page 2

```
1    APPEARANCES (Continued):
2         JONES DAY
          BY:  LESTER J. SAVIT, ESQ.
3              (San Diego, California)
4              -and-
5         JONES DAY
          BY:  F. DOMINIC CERRITO, ESQ.
6              (New York, New York)
7
8         Counsel for Plaintiff Celgene Corporation
9         FITZPATRICK, CELLA, HARPER & SCINTO
          BY:  HENRY J. RENK, ESQ.
10             (New York, New York)
11        Counsel for Plaintiffs
12        Novartis Pharmaceuticals Corporation and
          Novartis Pharma AG
13
14        BOUCHARD MARGULES & FRIEDLANDER, P.A.
          BY:  JOHN M. SEAMAN, ESQ.
15
               -and-
16
17        AXINN, VELTROP & HARKRIDER LLP
          BY:  JAMES D. VELTROP, ESQ.,
18             JONATHAN A. HARRIS, ESQ. and
               (Hartford, Connecticut)
19
               -and-
20        AXINN, VELTROP & HARKRIDER LLP
          BY:  JOHN WILL ONGMAN, ESQ.
21             (Washington, D.C.)
22
          Counsel for Defendants
23
24             - - -
25
```

Page 3

2                 P R O C E E D I N G S

4         (REPORTER'S NOTE: The following telephone
5    conference was held in chambers, beginning at 8:35 a.m.)

7         THE COURT: Good morning, counsel. This is
8    Judge Robinson, and I do have Valerie here as a Court
9    Reporter. If you could identify yourselves when you speak,
10   that would be helpful.
11        I've reviewed the documents in the case,
12   including the letters filed along with a proposed discovery
13   order and the motions filed. I have to say I've never had a
14   case like this before where a plaintiff is basically doesn't
15   want to go forward in a forum that it chose, for whatever
16   reason, but this is my proposal.
17        I believe that, as you all know, we in Delaware
18   believe that a plaintiff's choice of forum is an appropriate
19   priority and that particularly if the forum is its state of
20   incorporation, its home state. So I would certainly respect
21   the fact that the judge in New Jersey would choose to go
22   forward there, and if she does, I will stay this case. But
23   in the meantime, I'm going to deny the plaintiff's motions to
24   strike the answer, et cetera.
25        I just find that extremely odd that this

Page 4

1    situation happened in the first place and we are going to go
2    forward. And if you are going to have to go forward
3    someplace, we might as well put something in place here. For
4    whatever reason the judge in New Jersey doesn't want your
5    case, then we're all set to go.
6         So that's what I'm going to do. I'm putting it
7    on the record. And let me go through the proposed scheduling
8    order in the meantime.
9         With respect to the first paragraph, it seems to
10   me as though the general date of April 4 is the appropriate
11   language, even though I note that defendants have already
12   served their disclosure information.
13        With respect to the discovery that will be needed
14   on the following subjects, it seems to me as though you all
15   just put in what you think is going to be covered because
16   it's not binding on anyone.
17        With respect to discovery disputes, I've taken to
18   only scheduling one discovery dispute conference and then
19   going from there so that I don't have all these conferences
20   on my schedule when, many times, the second one isn't needed
21   or there are multiple ones in between the first and second
22   ones.
23        So we wil start with the July 24, 2007 at 4:30,
24   discovery dispute conference, and then we'll go from
25   there, assuming we are still going forward here in

Telephone Conference                CondenseIt™                March 28, 2007

|  | Page 5 |
|---|---|

Page 5

1 Delaware.
2       With respect to claim construction --
3       MR. SAVIT: Your Honor, this is Lester Savit,
4 from Jones Day. We represent the co-plaintiff, Celgene.
5       I would -- we would ask that the order not be
6 entered at this time for the following reasons, and this is a
7 point that really hasn't been brought up yet.
8       The problem is that entering all these dates
9 is going to give the New Jersey judge the wrong impression
10 that the road is now paved all the way through to trial
11 in this case. And it has already been argued as the
12 planary argument by the defendants in New Jersey
13 that that is the case. And, in fact, this case is --
14 there's no jurisdictional issue, here and certainly
15 it's going to feed the fire if all these dates all the
16 way through until trial are entered.
17       THE COURT: So I thought I remembered
18 seeing something that there has been some discovery
19 taken in New Jersey.
20       There's not a scheduling order in New Jersey?
21       MR. SAVIT: Your Honor, there has been personal
22 jurisdiction discovery, and, yes, that has included 66,000
23 pages of documents and one deposition. But the issue of
24 personal injuries, the personal jurisdiction issue has been
25 briefed as of this week.

Page 6

1       There's also included in that motion a motion to
2 transfer, so that issue has also been served up to the New
3 Jersey judge. The return date on those motions is Monday.
4       MR. ONGMAN: Your Honor, this is John Ongman, and
5 I represent -- I'm with Axinn Veltrop, and I represent the
6 Abrika defendants here.
7       To answer your question, no, there is no
8 scheduling order in New Jersey. This is all -- so far, a
9 contest of whether there's any personal jurisdiction in
10 New Jersey at all.
11       As we said in our letter, the return date
12 is, no longer April 2nd. It will be, at the very
13 earliest, April 23rd, which is the return date on the
14 motion to seal to Celgene's reply. It may be as late
15 as April 30th.
16       Judge Wittington, to whom the case is
17 assigned, is away on vacation, and her clerk advises us
18 that the likelihood this case will be decided any time
19 soon is remote. It's going to be some time, some indefinite
20 time after April 30th because of the timing in her court,
21 and so we have the situation where the clock is ticking on
22 both the public interest and in our revenue stream.
23       We filed our discovery, wanted to get going,
24 and the whole point of the effort, from our perspective of
25 the plaintiff here, is to delay anything really happening,

Page 7

1 and we, for that reason, would very much like to have your
2 order entered so that we can proceed apace, and if for some
3 reason the judge decides in New Jersey, decides that she want
4 to do something else, well, all of this will have been done
5 and we won't have been wasting time waiting for something to
6 start.
7       MR. SAVIT: Judge, this is Lester Savit again.
8       What we're proposing will not prejudice the
9 defendants at all because we can get started with discovery
10 because we've already had our Rule 26(f) conference.
11       You don't need to enter the scheduling order for
12 us to engage in written exchange of written discovery, and,
13 in fact, we've already received interrogatories and document
14 requests from the defendants.
15       And further, I will represent to you now on
16 behalf of the plaintiffs that if, in fact, there is a month
17 or two delay by waiting to enter the pretrial order dates, we
18 will not renegotiate any of our proposed dates.
19       So if we're talking about the timing of resolving
20 this matter, there's absolutely no prejudice to the
21 defendants to just sitting back a matter of weeks, and we
22 can engage in written discovery here in Delaware and get that
23 under way. All that presumably would be useful in New Jersey
24 if we're proceeding there. But just avoid entering the
25 pretrial scheduling order, because that's going to be used as

Page 8

1 grounds -- in fact, it has already been argued as the primary
2 ground to the New Jersey judge as to why we can't proceed
3 in Delaware.
4       THE COURT: But I find -- again, I find this
5 very odd because this is taking place. We're putting in,
6 if not formally by my executing an order, we are talking
7 about it's a matter of record that you're going to go
8 forward in a certain way. And I, frankly, can't believe
9 believe, and, as a matter of record, I've said if the
10 New Jersey judge denies the motions to dismiss and believes,
11 and I assume that she's going to make a decision on the
12 right grounds, believes that the case should stay there
13 and go forward there because there is jurisdiction over
14 the defendant, it was the first-filed case and it is the
15 plaintiffs' home state, she understands that I am fine with
16 staying my case or even dismissing it, but certainly staying
17 the case until the other goes forward.
18       So I, frankly, don't want to be intellectually
19 dishonest by not going forward with all the cards on the
20 table and letting the judge in New Jersey, who is capable of
21 making an informed decision, make it based on what's actually
22 happening.
23       So I do not think that is the correct way to go,
24 and if there is some mischief to be done in New Jersey, then
25 I would like to know about it. And I'm certainly happy to,

Page 9

1  if informed, I'm certainly happy to get on the phone with the
2  judge in New Jersey and have a conversation with her. If she
3  thinks that I'm trying to take this case from her, I'm not.
4  It's just on my docket with pending motions and it's my job
5  to keep my docket going.
6       So when this comes to me, I will enter it, but I
7  will assume that, as officers of the Court, no mischief will
8  come of it, and that my intentions in entering this are not
9  in any way to be construed as influencing the judge's
10  decision in New Jersey in any way.
11       So I think I was on Paragraph 6, and
12  I believe that plaintiffs' proposal, the May 15th date,
13  is a more appropriate one, and so that's the date that
14  should go in.
15       With respect to the pretrial conference and
16  the trial, I usually have pretrial conferences at the
17  end of my trial day, not in the middle of it, so that would
18  be -- and August 15th is a Friday. So I would propose August
19  14, 2008, at 4:30 p.m.
20       And with respect to a trial, it is unusual for us
21  to have three-week trials in this court.
22       Why is it that this case would require three
23  weeks when most of our trials are no more than two weeks?
24  MR. SAVIT: Well, John, it's was your
25  suggestion. This is Lester Savit again.

Page 10

1       John, maybe you should speak to that.
2       MR. ONGMAN: This was in our original discussion
3  draft that we sent over to Jones Day to get the ball
4  rolling.
5       We had thought that, because of the number of
6  people that might have to be put on the stand, that it might
7  take longer.
8       Part of the problem is we don't know exactly
9  how many people in the chain here are going to be -- need
10  to be put on the stand. There are people that are not
11  currently with Celgene. They're not currently with Novartis,
12  who we think maybe have material information and that was
13  our best guess going, going in, and I think that never
14  came to be an issue between the parties in our discussion,
15  so I guess implicitly they thought that that was likely as
16  well.
17       So we don't have anything firmer than that to
18  offer other than our general impression of how many people
19  may have to go on to the stand.
20       THE COURT: All right. Well, generally, those
21  impressions are always exaggerated.
22       So I will put it down for a two-week bench trial
23  starting on September 2nd, 2008.
24       So I would ask the parties to revise the
25  scheduling order and include the changes. And, again, when

Page 11

1  the judge in New Jersey makes her decision, you need to let
2  me know. If she decides to keep the case, then this case
3  will at least be stayed. We'll have another telephone
4  conversation about that. But in the meantime, you all should
5  go forward on the merits so that wherever this case proceeds,
6  you are doing your due diligence.
7       All right, counsel. Thank you very much for your
8  time today.
9       (Counsel respond, "Thank you your Honor." )
10       (Telephone conference concluded at 9:50 a.m.)
11       - - -

**Telephone Conference**                    **CondenseIt™**                    **-and - judge**

-and [3]  2:4    2:15
2:19
06-741 [1]    1:9
14 [1]    9:19
15th [2] 9:12    9:18
2007 [2] 1:12    4:23
2008 [2] 9:19    10:23
23rd [1] 6:13
24 [1]    4:23
26 [1]    7:10
28 [1]    1:12
2nd [2]   6:12    10:23
30 [2]    4:23    9:19
30th [2]  6:15    6:20
35 [2]    1:12    3:5
4 [3]    4:10    4:23
9:19
50 [1]    11:10
6 [1]    9:11
66,000 [1]    5:22
8 [2]    1:12    3:5
9 [1]    11:10
a.m [2]   1:12    3:5
11:10
Abrika [3]    1:8
1:8    6:6
absolutely [1]    7:20
ACTION [1]    1:4
advises [1]    6:17
AG [2]    1:5    2:12
again [4]    7:7
8:4    9:25    10:25
along [1]    3:12
always [1]    10:21
ANDERSON [1]
1:18
answer [2]    3:24
6:7
apace [1]    7:2
APPEARANCES [2]
1:17    2:1
appropriate [3] 3:18
4:10    9:13
April [1]    4:10
6:12    6:13    6:15
6:20
argued [2]    5:11
8:1
argument [1]    5:12
assigned [1]    6:17
assume [1]    8:11
9:7
assuming [1]    4:25
August [2]    9:18
9:18
avoid [1]    7:24
away [1] 6:17
Axinn [3]    2:16
2:20    6:5
ball [1]    10:3
based [1]    8:21
beginning [1]    3:5

behalf [1]    7:16
believes [2]    8:10
8:12
bench [1]    10:22
best [1]    10:13
between [2]    4:21
10:14
binding [1]    4:16
BOUCHARD [1]
2:14
briefed [1]    5:25
brought [1]    5:7
C [1]    3:2
California [1]    2:3
capable [1]    8:20
cards [1]    8:19
case [18] 3:11    3:14
3:22    4:5    5:11
5:13    5:13    6:16
6:18    8:12    8:14
8:16    8:17    9:3
9:22    11:2    11:2
11:5
Celegene [2]    1:4
2:7
Celgene [2]    5:4
10:11
Celgene's [1]    6:14
CELLA [1]    2:9
CERRITO [1]    2:5
certain [1]    8:8
certainly [5]    3:20
5:14    8:16    8:25
9:1
cetera [1]    3:24
chain [1]    10:9
chambers [1]    3:5
changes [1]    10:25
Chief [1]    1:15
choice [1]    3:18
choose [1]    3:21
chose [1]    3:15
CIVIL [1]    1:4
claim [1]    5:2
clerk [1] 6:17
clock [1]    6:21
co-plaintiff [1] 5:4
concluded [1]    11:10
conference [7]    1:13
3:5    4:18    4:24
7:10    9:16    11:1
conferences [2] 4:19
9:16
Connecticut [1]2:18
construction [1]
5:2
construed [1]    9:9
contest [1]    6:9
Continued [1] 2:1
conversation [2]
9:2    11:4
Corporation [4] 1:4
1:4    2:7    2:12

correct [1]    8:23
CORROON [1] 1:18
counsel [7]    1:20
2:7    2:11    2:22
3:7    11:7    11:9
court [10]    1:1
1:24    3:7    3:8
5:17    6:20    8:4
9:7    9:21    10:20
covered [1]    4:15
D [2]    2:17    3:2
D.C [1]    2:21
date [6]    4:10    6:3
6:11    6:13    9:12
9:13
dates [4]5:12    5:15
7:17    7:18
decided [1]    6:18
decides [3]    7:3
7:3    11:2
decision [4]    8:11
8:21    9:10    11:1
defendant [1]    8:14
defendants [8]    1:9
2:22    4:11    5:12
6:6    7:9    7:14
7:21
Delaware [6]    1:2
1:11    3:17    5:1
7:22    8:3
delay [2]    6:25
7:17
denies [1]    8:10
deny [1] 3:23
deposition [5]    5:23
Diego [1]    2:3
diligence [1]    11:6
disclosure [1]    4:12
discovery [8]    3:12
4:13    4:17    4:18
4:24    5:18    5:22
6:23    7:9    7:12
7:22
discussion [2]    10:2
10:14
dishonest [1]    8:19
dismiss [1]    8:10
dismissing [1]    8:16
dispute [1]    4:18
4:24
disputes [1]    4:17
DISTRICT [2]    1:1
1:2
docket [2]    9:4
9:5
document [1]    7:13
documents [2]    3:11
5:23
doesn't [2]    3:14
4:4
DOMINIC [1]    2:5
done [2] 7:4    8:24
down [1]    10:22
draft [1] 10:3

due [1]    11:6
E [2]    3:2    3:2
earliest [1]    6:13
effort [1]    6:24
end [1]    9:17
engage [2]    7:12
7:22
enter [3] 7:11    7:17
9:6
entered [3]    5:6
5:16    7:2
entering [3]    5:8
7:24    9:8
ESQ [8] 1:18    2:2
2:5    2:9    2:14
2:17    2:17    2:20
et [1]    3:24
exactly [1]    10:8
exaggerated [1] 10:21
exchange [1]    7:12
executing [1]    8:6
extremely [1]    3:25
f [2]    2:5    7:10
fact [5]    3:21    5:13
7:13    7:16    8:1
far [1]    6:8
feed [1]    5:15
filed [3] 3:12    3:13
6:23
fine [1]    8:15
fire [1]    5:15
firmer [1]    10:17
first [3]    4:1    4:9
4:21
first-filed [1]    8:14
FITZPATRICK [1]
2:9
following [3]    3:4
4:14    5:6
formally [1]    8:6
forum [3]    3:15
3:18    3:19
forward [10]    3:15
3:22    4:2    4:2
4:25    8:8    8:13
8:17    8:19    11:5
frankly [2]    8:8
8:18
Friday [1]    9:18
FRIEDLANDER [1]
2:14
G [1]    3:2
general [2]    4:10
10:18
generally [1]    10:20
goes [1]    8:17
Good [1]    3:7
ground [1]    8:2
grounds [2]    8:1
8:12
guess [2]    10:13
10:15
Gunning [1]    1:23

happening [2]    6:25
8:22
happy [2]    8:25
9:1
HARKRIDER [2]
2:16    2:20
HARPER [1]    2:9
HARRIS [1]    2:17
Hartford [1]    2:18
held [1] 3:5
helpful [1]    3:10
HENRY [1]    2:9
home [2]    3:10
8:15
Honor [1]    5:3
5:21    6:4    11:9
HONORABLE [1]
1:15
identify [1]    3:9
implicitly [1]    10:15
impression [2]    5:9
10:18
impressions [1] 10:21
INC [1]    1:8
include [1]    10:25
included [2]    5:22
6:1
including [1]    3:12
incorporation [1]
3:20
indefinite [1]    6:19
influencing [1]    9:9
information [2] 4:12
10:12
informed [2]    8:21
9:1
injuries [1]    5:24
intellectually [1]
8:18
intentions [1]    9:8
interest [1]    6:22
interrogatories [1]
7:13
issue [5] 5:14    5:23
5:24    6:2    10:14
J [3]    1:23    2:2
2:9
JAMES [1]    2:17
Jersey [18]    3:21
4:4    5:9    5:12
5:19    5:20    6:3
6:8    6:10    7:3
7:23    8:2    8:10
8:20    8:24    9:2
9:10    11:1
job [1]    9:4
John [3] 2:14    2:20
6:4    9:24    10:1
JONATHAN [1]
2:17
Jones [4]    2:2
2:5    5:4    10:3
judge [14]    1:15
3:8    3:21    4:4

| Telephone Conference | CondenseIt™ | judge's - yourselves |

| | | |
|---|---|---|
| 5:9 | 6:3 | 6:16 |
| 7:3 | 7:7 | 8:2 |
| 8:10 | 8:20 | 9:2 |
| 11:1 | | |
| judge's [1] | 9:9 | |
| July [1] 4:23 | | |
| jurisdiction [4] 5:22 | | |
| 5:24 | 6:9 | 8:13 |
| jurisdictional [1] | | |
| 5:14 | | |
| keep [2] 9:5 | | 11:2 |
| L [1] | 1:15 | |
| language [1] | 4:11 | |
| late [1] 4:23 | | |
| least [1] 11:3 | | |
| Lester [4] | | 2:2 |
| 5:3 | 7:7 | 9:25 |
| letter [1] 6:11 | | |
| letters [1] | 3:12 | |
| letting [1] | 8:20 | |
| likelihood [1] | 6:18 | |
| likely [1] | | 10:15 |
| LLP [3] 1:8 | 2:16 | |
| 2:20 | | |
| longer [2] | 6:12 | |
| 10:7 | | |
| M [1] 2:14 | | |
| makes [1] | | 11:1 |
| March [1] | 1:12 | |
| MARGULES [1] | | |
| 2:14 | | |
| material [1] | 10:12 | |
| matter [4] | 7:20 | |
| 7:21 | 8:7 | 8:9 |
| may [3] 6:14 | 9:12 | |
| 10:19 | | |
| meantime [3] | 3:23 | |
| 4:8 | 11:4 | |
| merits [1] | 11:5 | |
| middle [1] | 9:17 | |
| might [3] | | 4:3 |
| 10:6 | 10:6 | |
| mischief [2] | 8:24 | |
| 9:7 | | |
| Monday [1] | 6:3 | |
| month [1] | 7:16 | |
| morning [1] | 3:7 | |
| most [1] 9:23 | | |
| motion [3] | 6:1 | |
| 6:1 | 6:14 | |
| motions [5] | 3:13 | |
| 3:23 | 6:3 | 8:10 |
| 9:4 | | |
| multiple [1] | 4:21 | |
| N [1] 3:2 | | |
| need [3] 7:11 | 10:9 | |
| 11:1 | | |
| needed [2] | 4:13 | |
| 4:20 | | |
| never [2] | 3:13 | |
| 10:13 | | |
| New [22] | | 2:6 |
| 2:6 | 2:10 | 2:10 |
| 3:21 | 4:4 | 5:9 |

| | | |
|---|---|---|
| 5:12 | 5:19 | 5:20 |
| 6:2 | 6:8 | 6:10 |
| 7:3 | 7:23 | 8:2 |
| 8:10 | 8:20 | 8:24 |
| 9:2 | 9:10 | 11:1 |
| note [2] 3:4 | 4:11 | |
| Novartis [5] | 1:4 | |
| 1:5 | 2:12 | 2:12 |
| 10:11 | | |
| now [2] 5:10 | 7:15 | |
| number [1] | 10:5 | |
| O [1] 3:2 | | |
| o'clock [1] | 1:12 | |
| odd [2] 3:25 | 8:5 | |
| offer [1] 10:18 | | |
| officers [1] | 9:7 | |
| Official [1] | 1:24 | |
| one [4] 4:18 | 4:20 | |
| 5:23 | 9:13 | |
| ones [2] 4:21 | 4:22 | |
| Ongman [4] | 2:20 | |
| 6:4 | 6:4 | 10:2 |
| order [11] | 3:13 | |
| 4:8 | 5:5 | 5:20 |
| 6:8 | 7:2 | 7:11 |
| 7:17 | 7:25 | 8:6 |
| 10:25 | | |
| original [1] | 10:2 | |
| P [1] 3:2 | | |
| P.A [1] 2:14 | | |
| p.m [1] 9:19 | | |
| pages [1] | 5:23 | |
| paragraph [2] | 4:9 | |
| 9:11 | | |
| Part [1] 10:8 | | |
| particularly [1] 3:19 | | |
| parties [2] | 10:14 | |
| 10:24 | | |
| paved [1] | 5:10 | |
| pending [1] | 9:4 | |
| people [4] | 10:6 | |
| 10:9 | 10:10 | 10:18 |
| personal [1] | 5:21 | |
| 5:24 | 5:24 | 6:9 |
| perspective [1] 6:24 | | |
| Pharma [2] | 1:5 | |
| 2:12 | | |
| Pharmaceuticals [4] | | |
| 1:4 | 1:8 | 1:8 |
| 2:12 | | |
| PHILIP [1] | 1:18 | |
| phone [1] | 9:1 | |
| place [3] 4:1 | 4:3 | |
| 8:5 | | |
| plaintiff [3] | 2:7 | |
| 3:14 | 6:25 | |
| plaintiff's [2] | 3:18 | |
| 3:23 | | |
| plaintiffs [1] | 1:6 | |
| 1:20 | 2:11 | 7:16 |
| plaintiffs' [2] | 8:15 | |
| 9:12 | | |
| planary [1] | 5:12 | |
| point [2] 5:7 | 6:24 | |

| | | |
|---|---|---|
| POTTER [1] | 1:18 | |
| prejudice [2] | 7:8 | |
| 7:20 | | |
| presumably [1] 7:23 | | |
| pretrial [4] | 7:17 | |
| 7:25 | 9:15 | 9:16 |
| primary [1] | 8:1 | |
| priority [1] | 3:19 | |
| problem [2] | 5:8 | |
| 10:8 | | |
| proceed [2] | 7:2 | |
| 8:2 | | |
| proceeding [1] | 7:24 | |
| proceeds [1] | 11:5 | |
| proposal [1] | 3:16 | |
| 9:12 | | |
| propose [1] | 9:18 | |
| proposed [3] | 3:12 | |
| 4:7 | 7:18 | |
| proposing [1] | 7:8 | |
| public [1] | 6:22 | |
| put [5] 4:3 | 4:15 | |
| 10:6 | 10:10 | 10:22 |
| putting [2] | 4:6 | |
| 8:5 | | |
| R [1] 3:2 | | |
| really [1] | 5:7 | |
| 6:25 | | |
| reason [4] | 3:16 | |
| 4:4 | 7:1 | 7:3 |
| reasons [1] | 5:6 | |
| received [1] | 7:13 | |
| record [3] | 4:7 | |
| 8:7 | 8:9 | |
| remembered [1] | | |
| 5:17 | | |
| remote [1] | 6:19 | |
| renegotiate [1] 7:18 | | |
| RENK [1] | 2:9 | |
| reply [1] 6:14 | | |
| Reporter [1] | 1:24 | |
| 3:9 | | |
| REPORTER'S [1] | | |
| 3:4 | | |
| represent [4] | 5:4 | |
| 6:5 | 6:5 | 7:15 |
| requests [1] | 7:14 | |
| require [1] | 9:22 | |
| resolving [1] | 7:19 | |
| respect [7] | 3:20 | |
| 4:9 | 4:17 | |
| 5:2 | 9:15 | 9:20 |
| respond [1] | 11:9 | |
| return [3] | 6:3 | |
| 6:11 | 6:13 | |
| revenue [1] | 6:22 | |
| reviewed [1] | 3:11 | |
| revise [1] | 10:24 | |
| right [8] 8:12 | 10:20 | |
| 11:7 | | |
| road [1] 5:10 | | |
| Robinson [2] | 1:15 | |
| 3:8 | | |

| | | |
|---|---|---|
| rolling [1] | 10:4 | |
| ROVNER [1] | 1:18 | |
| Rule [1] 7:10 | | |
| S [1] 3:2 | | |
| San [1] 2:3 | | |
| Savit [8] 2:2 | 5:3 | |
| 5:3 | 5:21 | 7:7 |
| 7:7 | 9:24 | 9:25 |
| schedule [1] | 4:20 | |
| scheduling [7] | 4:7 | |
| 4:18 | 5:20 | 6:8 |
| 7:11 | 7:25 | 10:25 |
| SCINTO [1] | 2:9 | |
| seal [1] 6:14 | | |
| SEAMAN [1] | 2:14 | |
| second [2] | 4:20 | |
| 4:21 | | |
| seeing [1] | 5:18 | |
| sent [1] 10:3 | | |
| September [1] | 10:23 | |
| served [2] | 4:12 | |
| 6:2 | | |
| set [1] 4:5 | | |
| sitting [1] | 7:21 | |
| situation [2] | 4:1 | |
| 6:21 | | |
| SLR [1] 1:9 | | |
| someplace [1] | 4:3 | |
| soon [1] 6:19 | | |
| speak [2] | 3:9 | |
| 10:1 | | |
| stand [2] | 10:6 | |
| 10:10 | 10:19 | |
| start [2] 4:23 | 7:6 | |
| started [1] | 7:9 | |
| starting [1] | 10:23 | |
| state [3] 3:19 | 3:20 | |
| 8:15 | | |
| STATES [1] | 1:1 | |
| stay [2] 3:22 | 8:12 | |
| stayed [1] | 11:3 | |
| staying [2] | 8:16 | |
| 8:16 | | |
| still [1] 4:25 | | |
| stream [1] | 6:22 | |
| strike [1] | 3:24 | |
| subjects [1] | 4:14 | |
| SUE [1] 1:15 | | |
| suggestion [1] | 9:25 | |
| table [1] 8:20 | | |
| taking [1] | 8:5 | |
| telephone [4] | 1:13 | |
| 3:4 | 11:3 | 11:10 |
| Thank [2] | 11:7 | |
| 11:9 | | |
| thinks [1] | 9:3 | |
| thought [2] | 5:17 | |
| 10:5 | 10:15 | |
| three [1] 9:22 | | |
| three-week [1] 9:21 | | |
| through [3] | 4:7 | |
| 5:10 | 5:16 | |

| | | |
|---|---|---|
| ticking [1] | 6:21 | |
| times [1] | 4:20 | |
| timing [2] | 6:20 | |
| 7:19 | | |
| today [1] | 11:8 | |
| transfer [1] | 6:2 | |
| trial [6] 5:10 | 5:16 | |
| 9:16 | 9:17 | 9:20 |
| 10:22 | | |
| trials [2] 9:21 | 9:23 | |
| trying [1] | 9:3 | |
| two [2] 7:17 | 9:23 | |
| two-week [1] | 10:22 | |
| under [1] | 7:23 | |
| understands [1] 8:15 | | |
| UNITED [1] | 1:1 | |
| unusual [1] | 9:20 | |
| up [2] 5:7 | 6:2 | |
| used [1] 7:25 | | |
| useful [1] | 7:23 | |
| usually [1] | 9:16 | |
| vacation [1] | 6:17 | |
| Valerie [1] | 1:23 | |
| 3:8 | | |
| Veltrop [4] | 2:16 | |
| 2:17 | 2:20 | 6:5 |
| vs [1] 1:7 | | |
| waiting [2] | 7:5 | |
| 7:17 | | |
| Washington [1] 2:21 | | |
| wasting [1] | 7:5 | |
| Wednesday [1] 1:12 | | |
| week [1] 5:25 | | |
| weeks [3] | 7:21 | |
| 9:23 | 9:23 | |
| wherever [1] | 11:5 | |
| whole [1] | 6:24 | |
| wil [1] 4:23 | | |
| Wilmington [1] 1:11 | | |
| Wittington [1] | 6:16 | |
| written [3] | 7:12 | |
| 7:12 | 7:22 | |
| wrong [1] | 5:9 | |
| yet [1] 5:7 | | |
| York [4] 2:6 | 2:6 | |
| 2:10 | 2:10 | |
| yourselves [1] | 3:9 | |

-and [3] 2:4 2:15 2:19
06-741 [1] 1:9
14 [1] 9:19
15th [2] 9:12 9:18
2007 [2] 1:12 4:23
2008 [2] 9:19 10:23
23rd [1] 6:13
24 [1] 4:23
26 [1] 7:10
28 [1] 1:12
2nd [2] 6:12 10:23
30 [2] 4:23 9:19
30th [2] 6:15 6:20
35 [2] 1:12 3:5
4 [3] 4:10 4:23 9:19
50 [1] 11:10
6 [1] 9:11
66,000 [1] 5:22
8 [2] 1:12 3:5
9 [1] 11:10
a.m [3] 1:12 3:5 11:10
Abrika [3] 1:8 1:8 6:6
absolutely [1] 7:20
ACTION [1] 1:4
advises [1] 6:17
AG [2] 1:5 2:12
again [4] 7:7 8:4 9:25 10:25
along [1] 3:12
always [1] 10:21
ANDERSON [1] 1:18
answer [2] 3:24 6:7
apace [1] 7:2
APPEARANCES [2] 1:17 2:1
appropriate [3] 3:18 4:10 9:13
April [1] 4:10 6:12 6:13 6:15 6:20
argued [2] 5:11 8:1
argument [1] 5:12
assigned [1] 6:17
assume [1] 8:11 9:7
assuming [1] 4:25
August [2] 9:18 9:18
avoid [1] 7:24
away [1] 6:17
Axinn [3] 2:20 6:5 2:16
ball [1] 10:3
based [1] 8:21
beginning [1] 3:5

behalf [1] 7:16
believes [2] 8:10 8:12
bench [1] 10:22
best [1] 10:13
between [2] 4:21 10:14
binding [1] 4:16
BOUCHARD [1] 2:14
briefed [1] 5:25
brought [1] 5:7
C [1] 3:2
California [1] 2:3
capable [1] 8:20
cards [1] 8:19
case [18] 3:11 3:14 3:22 4:5 5:11 5:13 5:13 6:16 6:18 8:12 8:14 8:16 8:17 9:3 9:22 11:2 11:2 11:5
Celegene [2] 1:4 2:7
Celgene [2] 5:4 10:11
Celgene's [1] 6:14
CELLA [1] 2:9
CERRITO [1] 2:5
certain [1] 8:8
certainly [3] 3:20 5:14 8:16 8:25 9:1
cetera [1] 3:24
chain [1] 10:9
chambers [1] 3:5
changes [1] 10:25
Chief [1] 1:15
choice [1] 3:18
choose [1] 3:21
chose [1] 3:15
CIVIL [1] 1:4
claim [1] 5:2
clerk [1] 6:17
clock [1] 6:21
co-plaintiff [1] 5:4
concluded [1] 11:10
conference [7] 1:13 3:5 4:18 4:24 7:10 9:16
conferences [2] 4:19 9:16
Connecticut [1] 2:18
construction [1] 5:2
construed [1] 9:9
contest [1] 6:9
Continued [1] 2:1
conversation [1] 9:2 11:4
Corporation [4] 1:4 1:4 2:7 2:12

correct [1] 8:23
CORROON [1] 1:18
counsel [7] 1:20 2:7 2:11 2:22 3:7 11:7 11:9
court [10] 1:1 1:24 3:7 3:8 5:17 6:20 8:4 9:7 9:21 10:20
covered [1] 4:15
D [2] 2:17 3:2
D.C [1] 2:21
date [6] 4:10 6:3 6:11 6:13 9:12 9:13
dates [4] 5:8 5:15 7:17 7:18
decided [1] 6:18
decides [3] 7:3 7:3 11:2
decision [4] 8:11 8:21 9:10 11:1
defendant [1] 8:14
defendants [8] 1:8 2:22 4:11 5:12 6:6 7:9 7:14 7:21
Delaware [6] 1:1 1:11 3:17 5:1 7:22 8:3
delay [2] 6:25 7:17
denies [1] 8:10
deny [1] 3:23
deposition [1] 5:23
Diego [1] 2:3
diligence [1] 11:6
disclosure [1] 4:12
discovery [11] 3:12 4:13 4:17 4:18 4:24 5:18 5:22 6:23 7:9 7:12 7:22
discussion [2] 10:2 10:14
dishonest [1] 8:19
dismiss [1] 8:19
dismissing [1] 8:16
dispute [1] 4:18 4:24
disputes [1] 4:17
DISTRICT [2] 1:1 1:2
docket [2] 9:4 9:5
document [1] 7:13
documents [2] 3:11 5:23
doesn't [2] 3:14 4:4
DOMINIC [1] 2:5
done [2] 7:4 8:24
down [1] 10:22
draft [1] 10:3

due [1] 11:6
E [2] 3:2 3:2
earliest [1] 6:13
effort [1] 6:24
end [1] 9:17
engage [1] 7:12 7:22
enter [3] 7:11 7:17 9:6
entered [3] 5:6 5:16 7:2
entering [1] 5:8 7:24 9:8
ESQ [8] 1:18 2:2 2:5 2:9 2:14 2:17 2:17 2:20
et [1] 3:24
exactly [1] 10:8
exaggerated [1] 10:21
exchange [1] 7:12
executing [1] 8:6
extremely [1] 3:25
f [2] 2:5 7:10
fact [5] 3:21 5:13 7:13 7:16 8:1
far [1] 6:8
feed [1] 5:15
filed [3] 3:12 3:13 6:23
fine [1] 8:15
fire [1] 5:15
firmer [1] 10:17
first [3] 4:1 4:9 4:21
first-filed [1] 8:14
FITZPATRICK [1] 2:9
following [3] 3:4 4:14 5:6
formally [1] 8:6
forum [3] 3:18 3:19
forward [10] 3:15 3:22 4:2 4:2 4:25 8:8 8:13 8:17 8:19 11:5
frankly [2] 8:8 8:18
Friday [1] 9:18
FRIEDLANDER [1] 2:14
G [1] 3:2
general [2] 4:10 10:18
generally [1] 10:20
goes [1] 8:17
Good [1] 3:7
ground [1] 8:2
grounds [2] 8:1 8:12
guess [2] 10:13 10:15
Gunning [1] 1:23

happening [2] 6:25 8:22
happy [1] 8:25 9:1
HARKRIDER [2] 2:16 2:20
HARPER [1] 2:9
HARRIS [1] 2:17
Hartford [1] 2:18
held [1] 3:5
helpful [1] 3:10
HENRY [1] 2:9
home [2] 3:20 8:15
Honor [4] 5:3 5:21 6:4 11:9
HONORABLE [1] 1:15
identify [1] 3:9
implicitly [1] 10:15
impression [1] 5:9 10:18
impressions [1] 10:21
INC [1] 1:8
include [1] 10:25
included [2] 5:22 6:1
including [1] 3:12
incorporation [1] 3:20
indefinite [1] 6:19
influencing [1] 9:9
information [2] 4:12 10:12
informed [2] 8:21 9:1
injuries [1] 5:24
intellectually [1] 8:18
intentions [1] 9:8
interest [1] 6:22
interrogatories [1] 7:13
issue [5] 5:14 5:23 5:24 6:2 10:14
J [3] 1:23 2:2 2:9
JAMES [1] 2:17
Jersey [18] 3:21 4:4 5:9 5:12 5:19 5:20 6:3 6:8 6:10 7:3 7:23 8:2 8:10 8:20 8:24 9:2 9:10 11:1
job [1] 9:4
John [5] 2:14 2:20 6:4 9:24 10:1
JONATHAN [1] 2:17
Jones [4] 2:2 2:5 5:4 10:3
judge [14] 1:15 3:8 3:21 4:4

**Telephone Conference**      **CondenseIt™**      **judge's - yourselves**

| | | |
|---|---|---|
| 5:9 | 6:3 | 6:16 |
| 7:3 | 7:7 | 8:2 |
| 8:10 | 8:20 | 9:2 |
| 11:1 | | |
| judge's [1] | | 9:9 |
| July [1] | 4:23 | |
| jurisdiction [4] | 5:22 | |
| 5:24 | 6:9 | 8:13 |
| jurisdictional [1] | | |
| 5:14 | | |
| keep [2] | 9:5 | 11:2 |
| L [1] | 1:15 | |
| language [1] | | 4:11 |
| late [1] | 6:1 | |
| least [1] | 11:3 | |
| Lester [4] | | 2:2 |
| 5:3 | 7:7 | 9:25 |
| letter [1] | 6:11 | |
| letters [1] | | 3:12 |
| letting [1] | | 8:20 |
| likelihood [1] | | 6:18 |
| likely [1] | | 10:15 |
| LLP [3] | 1:8 | 2:16 |
| 2:20 | | |
| longer [2] | | 6:12 |
| 10:7 | | |
| M [1] | 2:14 | |
| makes [1] | | 11:1 |
| March [1] | | 1:12 |
| MARGULES [1] | | |
| 2:14 | | |
| material [1] | | 10:12 |
| matter [4] | | 7:20 |
| 7:21 | 8:7 | 8:9 |
| may [3] | 6:14 | 9:12 |
| 10:19 | | |
| meantime [3] | | 3:23 |
| 4:8 | 11:4 | |
| merits [1] | | 11:5 |
| middle [1] | | 9:17 |
| might [3] | | 4:3 |
| 10:6 | 10:6 | |
| mischief [2] | | 8:24 |
| 9:7 | | |
| Monday [1] | | 6:3 |
| month [1] | | 7:16 |
| morning [1] | | 3:7 |
| most [1] | 9:23 | |
| motion [2] | | 6:1 |
| 6:1 | 6:14 | |
| motions [5] | | 6:3 |
| 3:23 | 6:3 | 8:10 |
| 9:4 | | |
| multiple [1] | | 4:21 |
| N [1] | 3:2 | |
| need [3] | 7:11 | 10:9 |
| 11:1 | | |
| needed [2] | | 4:13 |
| 4:20 | | |
| never [2] | | 3:13 |
| 10:13 | | |
| New [22] | | 2:6 |
| 2:6 | 2:10 | 2:10 |
| 3:21 | 4:4 | 5:9 |

| | | |
|---|---|---|
| 5:12 | 5:19 | 5:20 |
| 6:2 | 6:8 | 6:10 |
| 7:3 | 7:23 | 8:2 |
| 8:10 | 8:20 | 8:24 |
| 9:2 | 9:10 | 11:1 |
| note [2] | 3:4 | 4:11 |
| Novartis [5] | | 1:4 |
| 1:5 | 2:12 | 2:12 |
| 10:11 | | |
| now [2] | 5:10 | 7:15 |
| number [1] | | 10:5 |
| O [1] | 3:2 | |
| o'clock [1] | | 1:12 |
| odd [2] | 3:25 | 8:5 |
| offer [1] | 10:18 | |
| officers [1] | | 9:7 |
| Official [1] | | 1:24 |
| one [4] | 4:18 | 4:20 |
| 5:23 | 9:13 | |
| ones [2] | 4:21 | 4:22 |
| Ongman [4] | | 2:20 |
| 6:4 | 6:4 | 10:2 |
| order [11] | | 3:13 |
| 4:8 | 5:5 | 5:20 |
| 6:8 | 7:2 | 7:11 |
| 7:17 | 7:25 | 8:6 |
| 10:25 | | |
| original [1] | | 10:2 |
| P [1] | 3:2 | |
| P.A [1] | 2:14 | |
| p.m [1] | 9:19 | |
| pages [1] | | 5:23 |
| paragraph [2] | | 4:9 |
| 9:11 | | |
| Part [1] | 10:8 | |
| particularly [1] | 3:19 | |
| parties [2] | | 10:14 |
| 10:24 | | |
| paved [1] | | 5:10 |
| pending [1] | | 9:4 |
| people [4] | | 10:6 |
| 10:9 | 10:10 | 10:18 |
| personal [1] | | 5:21 |
| 5:24 | 5:24 | 6:9 |
| perspective [1] | 6:24 | |
| Pharma [2] | | 1:5 |
| 2:12 | | |
| Pharmaceuticals [1] | | |
| 1:4 | 1:8 | 1:8 |
| 2:12 | | |
| PHILIP [1] | | 1:18 |
| phone [1] | 4:13 | 4:17 |
| place [3] | 4:1 | 4:3 |
| 8:5 | | |
| plaintiff [3] | | 2:7 |
| 3:14 | 6:25 | |
| plaintiff's [2] | | 3:18 |
| 3:23 | | |
| plaintiffs [1] | | 1:6 |
| 1:20 | 2:11 | 7:16 |
| plaintiffs' [1] | | 8:15 |
| 9:12 | | |
| planary [1] | | 5:12 |
| point [2] | 5:7 | 6:24 |

| | | |
|---|---|---|
| POTTER [1] | | 1:18 |
| prejudice [2] | | 7:8 |
| 7:20 | | |
| presumably [1] | 7:23 | |
| pretrial [4] | | 7:17 |
| 7:25 | 9:15 | 9:16 |
| primary [1] | | 8:1 |
| priority [1] | | 3:19 |
| problem [2] | | 5:8 |
| 10:8 | | |
| proceed [2] | | 7:2 |
| 8:2 | | |
| proceeding [1] | 7:24 | |
| proceeds [1] | | 11:5 |
| proposal [2] | | 3:16 |
| 9:12 | | |
| propose [1] | | 9:18 |
| proposed [3] | | 3:12 |
| 4:7 | 7:18 | |
| proposing [1] | | 7:8 |
| public [1] | | 6:22 |
| put [5] | 4:3 | 4:15 |
| 10:6 | 10:10 | 10:22 |
| putting [1] | | 4:6 |
| 8:5 | | |
| R [1] | 3:2 | |
| really [2] | | 5:7 |
| 6:25 | | |
| reason [4] | | 3:16 |
| 4:4 | 7:1 | 7:3 |
| reasons [1] | | 5:6 |
| received [1] | | 7:13 |
| record [3] | | 4:7 |
| 8:7 | 8:9 | |
| remembered [1] | | |
| 5:17 | | |
| remote [1] | | 6:19 |
| renegotiate [1] | 7:18 | |
| RENK [1] | | 2:9 |
| reply [1] | 6:14 | |
| Reporter [2] | | 1:24 |
| 3:9 | | |
| REPORTER'S [1] | | |
| 3:4 | | |
| represent [4] | | 5:4 |
| 6:5 | 6:5 | 7:15 |
| requests [1] | | 7:14 |
| require [1] | | 9:22 |
| resolving [1] | | 7:19 |
| respect [7] | | 3:20 |
| 4:9 | 4:15 | 4:17 |
| 5:2 | 9:15 | 9:20 |
| respond [1] | | 11:9 |
| return [3] | | 6:3 |
| 6:11 | 6:13 | |
| revenue [1] | | 6:22 |
| reviewed [1] | | 3:11 |
| revise [1] | | 10:24 |
| right [3] | 8:12 | 10:20 |
| 11:7 | | |
| road [1] | 5:10 | |
| Robinson [1] | | 1:15 |
| 3:8 | | |

| | | |
|---|---|---|
| rolling [1] | | 10:4 |
| ROVNER [1] | | 1:18 |
| Rule [1] | 7:10 | |
| S [1] | 3:2 | |
| San [1] | 2:3 | |
| Savit [8] | 2:2 | 5:3 |
| 5:3 | 5:21 | 7:7 |
| 7:7 | 9:24 | 9:25 |
| schedule [1] | | 4:20 |
| scheduling [7] | | 4:7 |
| 4:18 | 5:20 | 6:8 |
| 7:11 | 7:25 | 10:25 |
| SCINTO [1] | | 2:9 |
| seal [1] | 6:14 | |
| SEAMAN [1] | | 2:14 |
| second [2] | | 4:20 |
| 4:21 | | |
| seeing [1] | | 5:18 |
| sent [1] | 10:3 | |
| September [1] | | 10:23 |
| served [2] | | 4:12 |
| 6:2 | | |
| set [1] | 4:5 | |
| sitting [1] | | 7:21 |
| situation [2] | | 4:1 |
| 6:21 | | |
| SLR [1] | 1:9 | |
| someplace [1] | | 4:3 |
| soon [1] | 6:19 | |
| speak [2] | | 3:9 |
| 10:1 | | |
| stand [2] | | 10:6 |
| 10:10 | 10:19 | |
| start [2] | 4:23 | 7:6 |
| started [1] | | 7:9 |
| starting [1] | | 10:23 |
| state [2] | 3:19 | 3:20 |
| 8:15 | | |
| STATES [1] | | 1:1 |
| stay [2] | 3:22 | 8:12 |
| stayed [1] | | 11:3 |
| staying [1] | | 8:16 |
| 8:16 | | |
| still [1] | 4:25 | |
| stream [1] | | 6:22 |
| strike [1] | | 3:24 |
| subjects [1] | | 4:14 |
| SUE [1] | 1:15 | |
| suggestion [1] | | 9:25 |
| table [1] | 8:20 | |
| taking [1] | | 8:5 |
| telephone [4] | | 1:13 |
| 3:4 | 11:3 | 11:10 |
| Thank [2] | | 11:7 |
| 11:9 | | |
| thinks [1] | | 9:3 |
| thought [3] | | 5:17 |
| 10:5 | 10:15 | |
| three [1] | 9:22 | |
| three-week [1] | | 9:21 |
| through [3] | | 4:7 |
| 5:10 | 5:16 | |

| | | |
|---|---|---|
| ticking [1] | | 6:21 |
| times [1] | | 4:20 |
| timing [2] | | 6:20 |
| 7:19 | | |
| today [1] | | 11:8 |
| transfer [1] | | 6:2 |
| trial [6] | 5:10 | 5:16 |
| 9:16 | 9:17 | 9:20 |
| 10:22 | | |
| trials [2] | 9:21 | 9:23 |
| trying [1] | | 9:3 |
| two [2] | 7:17 | 9:23 |
| two-week [1] | | 10:22 |
| under [1] | 7:23 | |
| understands [1] | 8:15 | |
| UNITED [1] | | 1:1 |
| unusual [1] | | 9:20 |
| up [2] | 5:7 | 6:2 |
| used [1] | 7:25 | |
| useful [1] | | 7:23 |
| usually [1] | | 9:16 |
| vacation [1] | | 6:17 |
| Valerie [2] | | 1:23 |
| 3:8 | | |
| Veltrop [4] | | 2:16 |
| 2:17 | 2:20 | 6:5 |
| vs [1] | 1:7 | |
| waiting [2] | | 7:5 |
| 7:17 | | |
| Washington [1] | 2:21 | |
| wasting [1] | | 7:5 |
| Wednesday [1] | 1:12 | |
| week [1] | 5:25 | |
| weeks [3] | | 7:21 |
| 9:23 | 9:23 | |
| wherever [1] | | 11:5 |
| whole [1] | 6:24 | |
| wil [1] | 4:23 | |
| Wilmington [1] | 1:11 | |
| Wittington [1] | 6:16 | |
| written [3] | | 7:12 |
| 7:12 | 7:22 | |
| wrong [1] | | 5:9 |
| yet [1] | 5:7 | |
| York [4] | 2:6 | 2:6 |
| 2:10 | 2:10 | |
| yourselves [1] | | 3:9 |

**Celgene v. Abrika**     

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on June 6, 2007, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Andre G. Bouchard, Esq.
John M. Seaman, Esq.
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
abouchard@bmf-law.com
jseaman@bmf-law.com

I hereby certify that on June 6, 2007 I have sent the foregoing document by E-mail to the following non-registered participants in the manner indicated:

Jonathan A. Harris, Esq.
Chad A. Landmon, Esq.
Jo-Anne M. Kokoski, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103
jah@avhlaw.com;
cal@avhlaw.com; jmk@avhlaw.com

John Will Ongman, Esq.
Axinn, Veltrop & Harkrider LLP
1801 K Street
Suite 411
Washington, DC 20006-1322
jwo@avhlaw.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

768868