## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

CELGENE CORPORATION, NOVARTIS )
PHARMACEUTICALS CORPORATION and )
NOVARTIS PHARMA A.G., )
)
    Plaintiffs )
)
          v. )      Civil Action No. 06-741 (SLR)
)
ABRIKA PHARMACEUTICALS, INC., and )
ABRIKA PHARMACEUTICAL, LLLP, )
)
    Defendants. )
_____)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR A VOLUNTARY DISMISSAL WITHOUT PREJUDICE

Andre G. Bouchard (Bar No. 2054)
John M. Seaman (Bar No. 3868)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Phone: (302) 573-3508

*Attorneys for Defendants*

OF COUNSEL:

John Will Ongman (*pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: (202) 912-4700

Jonathan A. Harris (*pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Dated: June 20, 2007

{BMF-W0060063.3}

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 2

SUMMARY OF ARGUMENT ....................................................................................... 6

STATEMENT OF FACTS ............................................................................................... 7

ARGUMENT ................................................................................................................... 10

    I.      Because of the Nature of Paragraph IV Actions, the Significant
           Delay that May Result From a Dismissal Constitutes Legal Prejudice
           that Precludes Dismissal Under Rule 41(a) ................................................ 10

    II.     The First-Filed Doctrine Does Not Counsel
           Dismissal of This Action ............................................................................. 13

          A.     A Departure From the First-Filed Doctrine is
                 Warranted Because Plaintiffs Have Engaged in
                 Forum Shopping ............................................................................. 14

          B.     A Departure From the First-Filed Doctrine is
                 Warranted Because This Action Has Progressed Substantially
                 Further Than the New Jersey Action ............................................. 19

    III.    Defendants' Counterclaims Serve a Useful Purpose ................................. 20

CONCLUSION ............................................................................................................... 22

## **TABLE OF AUTHORITIES**

### **Cases**

Adams Respiratory Therapeutics, Inc. v. Pharmaceutical Holdings Corp., et al.,
    No. 06-4418 (E.D. Pa. Nov. 2, 2006) ............................................................ 17

Adams Respiratory Therapeutics, Inc. v. Pharmaceutical Holdings Co., et al,
    No. 06-4700 (D.N.J. Nov. 16, 2006) ............................................................. 17

Alcoa v. Beazer E.,
    124 F.3d 551 (3d Cir. 1997) ....................................................................... 20

Aventis Pharma Deutschland GMBH v. Lupin Ltd.,
    403 F. Supp. 2d 484 (E.D. Va. 2005) .................................................... 15, 16

Aventis Pharma S.A. v. Sandoz Inc.,
    No. 06-3671, 2007 U.S. Dist. LEXIS 26304 (D.N.J. April 10, 2007) ............ 14

Barr Laboratories, Inc.,
    930 F.2d 72 (D.C. Cir. 1991) ..................................................................... 12

Boehringer Ingelheim Corp. v. Shalala,
    993 F. Supp. 1 (D.D.C. 1997) ..................................................................... 12

Capo, Inc. v. Dioptics Med. Prods.,
    387 F.3d 1352 (Fed. Cir. 2004) ................................................................. 20

Collagenex Pharms., Inc. v. IVAX Corp.,
    375 F. Supp. 2d 120 (S.D.N.Y. 2005) ........................................................ 12

Cruzan v. Dir., Mo. Dep't of Health,
    497 U.S. 261 (1990) ................................................................................. 13

E.E.O.C. v. University of Pennsylvania,
    850 F.2d 969 (3d Cir. 1988) .................................................................. 14, 15

Ferguson v. Eakle,
    492 F.2d 26 (3d Cir. 1974) ....................................................................... 10

Fisher v. Puerto Rico Marine Management Inc.,
    940 F.2d 1502, 1502 (11th Cir. 1991) ........................................................ 10

FMC Corp. v. AMVAC Chem. Corp.,
        379 F. Supp. 2d 733 (E.D. Pa. 2005) ................................................... 15

Genentech v. Eli Lilly & Co.,
        998 F.2d 931 (Fed. Cir. 1993) ............................................................ 14

Ibeto Petrochemical Indus. v. M/T Beffen,
        475 F.3d 56, 61 (2d Cir. 2007) ........................................................... 10

In re Air Crash Disaster at Sioux City,
        No. 89-6471, 1990 U.S. Dist. LEXIS 9485 (N.D. Ill. July 12, 1990) ......... 10

Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,
        189 F.2d 31 (3rd cir. 1951) ............................................................... 19

Lines v. Falstaff Brewing Co.,
        233 F.2d 927 (9th Cir. 1956) ............................................................. 11

Mead Johnson Pharmaceutical Group v. Bowen,
        655 F. Supp. 53 (D.D.C. 1986) .......................................................... 12

MedImmune, Inc. v. Genentech,
        127 S.Ct. 764 (2007) ...................................................................... 21

Minnesota Mining & Mfg. Co. v. Norton Co.,
        929 F.2d 670 (Fed. Cir. 1991) ........................................................... 20

Orthmann v. Apple River Campground, Inc.,
        765 F.2d 119 (8th Cir. 1985) ............................................................ 19

Raich v. Gonzales,
        No. 03-15481, 2007 U.S. App. LEXIS 5834 (9th Cir. March 14, 2007) ...... 13

Schering Corp. v. Caraco Pharmaceutical Labs,
        No. 06-14386, 2007 U.S. Dist LEXIS 41020 (E.D. Mich. June 6, 2007) ..... 17

Schiller-Pfeiffer, Inc.,
        No. 04-1444, 2004 U.S. Dist. LEXIS 24180 (E.D. Pa. Dec. 1, 2004) ......... 19

Serco Servs. Co. v. Kelley Co.,
        51 F.3d 1037 (Fed. Cir. 1995) ........................................................... 14

Serono Lab. v. Shalala,
        158 F.3d 1313 (D.C. Cir. 1998) ......................................................... 12

Shaw Group, Inc. v. Picerne Inv. Corp.,
     235 F.R.D. 68, 70 (W.D. Pa. 2005) ................................................................... 10

Smithkline Beecham Corp. v. Excel Pharmaceuticals, Inc.,
     No. 02-51  (E.D. Va. April 12, 2002) ............................................................... 16

Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership,
     882 F. Supp. 359 (D. Del. 1994) (Robinson, J.) .............................................. 19

Watson v Clark,
     716 F. Supp. 1354 (D. Nev. 1989) .................................................................... 11

## Statutes and Regulations

U.S. Const. Amend. V ................................................................................................ 13

21 U.S.C. § 355 .......................................................................................................... 7

21 U.S.C. § 355(j)(2)(A) ......................................................................................... 7, 8

21 U.S.C. § 355(j)(2)(B) ............................................................................................ 8

21 U.S.C. § 355(j)(5)(B) .................................................................................... 8, 12, 22

21 C.F.R. § 314.95 ...................................................................................................... 7

## Other Materials

Fed. R. Civ. P. Rule 41 (a) ............................................................................. 6, 10, 20

H.R. 1032, Section 3 ................................................................................................... 9

S. 623, Section 3 ......................................................................................................... 9

Ajaz S. Hussain, Vice President & Global Head of Biopharmaceutical Development
on behalf of the Novartis Group of Companies, Follow-On Biologics, Testimony before the
Senate Committee on Health, Education, Labor and Pensions (March 8, 2007) ........................ 9

Bruce L. Downey, Assessing the Impact of a Safe and Equitable Biosimilar Policy
in the United States, Testimony before the House Energy and Commerce Subcommittee on
Health (May 2, 2007) ................................................................................................... 8

Kessler R. C., et. al., Prevalence, severity, and comorbidity of twelve-month DSM-IV
disorders in the National Comorbidity Survey Replication (NCS-R), Archives of General
Psychiatry (June, 2005) ............................................................................................... 7

Congressional Budget Office, How Increased Competition from Generic Drugs Has Affected
Prices and Returns in the Pharmaceutical Industry (July 1998) ........................................... 11

## PRELIMINARY STATEMENT

This infringement action and its identical parallel action in New Jersey are not typical patent infringement cases. Instead, they are "Paragraph IV" actions arising under 21 U.S.C. § 355, the Hatch-Waxman Act. Congress enacted Hatch-Waxman to address the important public health and welfare issue of access to reasonably priced medications, a goal accomplished in material part by the statute's explicit command that the parties reasonably cooperate in expediting Paragraph IV actions.

Plaintiffs' motion for a voluntary dismissal of the Delaware action is motivated by their desire to delay adjudication of the merits of their infringement claims and thereby the introduction of a generic competitor to its costly brand-name drug. This is in direct conflict with Hatch-Waxman and the important public interest underlying it. There are thus statutory and equitable dimensions to Plaintiffs' motion that requires it to be viewed specially.

The Delaware action has now progressed substantially further than the New Jersey action. In Delaware, the parties have stipulated to a Scheduling Order which the Court has issued, motion practice and discovery are underway, and a firm trial date is set for September 2, 2008. None of this has occurred in New Jersey. Defendants sought Plaintiffs' agreement to the adoption of this Court's schedule in the New Jersey action but Plaintiffs have flatly and unreasonably refused Defendants' offer. On top of that, Plaintiffs have *opposed* Defendants' request to the New Jersey court that it adopt the dates in the Delaware schedule to the maximum extent possible. Plaintiffs' actions demonstrate that rather than cooperating to expedite this action, they are actively working to delay a decision on the merits.

Despite Plaintiffs' refusal to cooperate, Defendants are diligently seeking a schedule in the New Jersey action that leads to a firm trial date in New Jersey no later than the September 2,

2008 date already set in Delaware.  If this should occur,  Defendants will join with Plaintiffs to

move for a dismissal of all claims and counterclaims in Delaware.  The Court should therefore

deny Plaintiffs' motion without prejudice to Plaintiffs again filing after the New Jersey court has

entered a scheduling order.  This will allow the Delaware action to continue to proceed

expeditiously and to protect the important public interest in the health of patients embodied in

Hatch-Waxman until the Court can determine the extent of any delay which would be caused by

any dismissal of this action.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

In the summer of 2006, defendant Abrika Pharmaceuticals, Inc. filed Abbreviated New

Drug Application  ("ANDA") No. 78-458 with the Food and Drug Administration ("FDA")

seeking approval to manufacture and sell a generic version of Ritalin LA®.  Following FDA's

acceptance of the ANDA for filing, defendant Abrika Pharmaceuticals, Inc. mailed a Notice

dated October 23, 2006 to Plaintiffs of a Paragraph IV certification where it certified that U.S.

Patents No. 5,837,284 and 6,635,284 (the "'284 patents") are invalid and/or not infringed.

On December 4, 2006, Plaintiffs filed suit against Defendants in the District of New

Jersey, alleging that the ANDA infringed the '284 patents.  A mere two days later, Plaintiffs filed

an identical suit in the District of Delaware.  Plaintiffs admittedly recognized that Defendants

would challenge jurisdiction in New Jersey and were sufficiently concerned that jurisdiction was

---

[1]      Discovery is currently being conducted in Delaware under the protective conditions of Delaware Local Rule 26.2.  That Rule imposes an outside attorneys eyes only standard of confidentiality in discovery until a protective order is in effect.  There is no protective order in effect in Delaware or New Jersey.  Of significance, however, New Jersey has no local rule that provides discovery protective conditions pending the entry of a protective order.  Until that indefinite point in the future when a protective order is issued in the New Jersey action, discovery could not continue unless it does so under the auspices of this Court.  Accordingly, discovery should continue apace in this Court.

lacking that they filed the Delaware action as a "protective" alternative.[2]  This way, the Plaintiffs attempted to take advantage of the often long disposition time for patent cases in New Jersey without running the risk of forfeiting the 30-month stay provided by Hatch-Waxman.[3]

On March 28, 2007, the Court conducted a scheduling conference and adopted the stipulated Scheduling Order negotiated by the parties, including a September 2, 2008, trial date. (Declaration of John M. Seaman ("Seaman Decl."), Ex. A.)  At the scheduling conference, Plaintiffs failed to disclose that New Jersey was **not** their "home state" as that term was used by the Delaware Court  - a plaintiff's "state of incorporation [is] its home state."  (Id. at 3.)  And, in its motion here, Plaintiffs seek  to affirmatively mislead the Court by asserting "(as it is in the present matter) ... [New Jersey] the forum state is [Plaintiffs'] state of incorporation, [their] home state." (Plaintiffs' Opening Brief, at 5.)  This is false.  None of the three Plaintiffs is incorporated in New Jersey.[4]  And at least one of the Plaintiffs does not have its principal place

---

[2]    Plaintiffs' disingenuously assert that Defendants "ha[ve] been stalling in New Jersey" because Defendants obtained an extension of time to answer in New Jersey and then filed a Motion to Dismiss or Transfer.  (Plaintiffs' Opening Brief, at 3.)  First, Defendants obtained only a single 15-day extension to respond to the Complaint (which they did not fully utilize), so as to avoid response preparation that would run into the heart of the Holiday Season.  Second, the legitimacy of defendants' motion to dismiss or transfer is confirmed by the fact that plaintiffs themselves so doubted that personal jurisdiction existed over Defendants in New Jersey that they took the extraordinary step of filing this duplicative action.  Defendants' conduct plainly does not constitute "stalling."

[3]    On the best information available to Defendants, in ordinary course, trial in New Jersey would take place a year or more after the September 2, 2008 trial date established in Delaware. Plaintiffs have never disputed the degree to which trial would be delayed in New Jersey beyond September 2, 2008.  In fact, Plaintiffs asserted in a June 12, 2007 letter to the New Jersey court that Defendants have no right in New Jersey "even to have a trial date set at this early stage of the case."  According to Plaintiffs, "[t]here simply is no urgency to enter a trial date, particularly since it is more than one year in the future."  (Seaman Decl., Ex. B, at 3.)

[4]    One plaintiff Novartis Pharma AG – the exclusive licensee of the patents in suit – is not even incorporated in the  United States, it is incorporated in Switzerland.  (Delaware Complaint ¶4.)  The other two plaintiffs – Celgene Corporation (the owner of the patents in suit) and

of business in New Jersey.[5]  In its motion, Plaintiffs also incorrectly state that "New Jersey is

now a home state for the defendants."  (Plaintiffs' Opening Brief, at 8.)  This is also false.  Both

Defendants are Delaware, not New Jersey, legal entities.[6]

      Motion practice and discovery are also underway in this Court.  Defendants' motion for

judgment on the pleadings and motion to amend its Answer and Counterclaim are fully briefed

and pending.  The parties have completed their Rule 26(f) conference, served initial disclosures,

and served and responded to each others' interrogatories and document production requests.

      On May 17, 2007, the New Jersey court denied Defendants' motion to dismiss or

transfer.  In light of this decision, on May 22, 2007, Defendants therefore offered to file a joint

request to dismiss the Delaware action if Plaintiffs would agree to the same schedule in New

---

Novartis Pharmaceuticals Corporation (the holder of the approved the FDA New Drug Application for Ritalin LA®) – are both incorporated in Delaware, not in New Jersey. (Delaware Complaint ¶¶2, 3.)

[5]     Plaintiff Novartis Pharma AG has an office and place of business in Basel, Switzerland. (Id. ¶4.)  Plaintiff Novartis Pharmaceuticals Corporation asserts in the Delaware Complaint that its principal place of business is in New Jersey.  (Id. ¶3.)  However, in testimony before the Senate in March 2007, a senior executive of the Novartis Group testified that the "Novartis Corporate Headquarters are in New York" and that "Novartis has facilities in Arkansas, California, Colorado, Georgia, Massachusetts, Michigan, Nebraska, ... New York, North Carolina, [and ]Wisconsin" as well as in New Jersey.  (Seaman Decl., Ex. C, at 3 n.1.)

[6]     Defendant Abrika LLLP, who Plaintiffs persist in misnaming Abrika Pharmaceuticals LLLP, is a Delaware limited liability limited partnership.  Defendant Abrika Pharmaceuticals, Inc. was a Delaware corporation with its principal place of business in Sunrise, Florida that was converted on May 11, 2007 into a Delaware LLC and renamed Actavis South Atlantic LLC to reflect that it had become controlled by Actavis, an Icelandic corporate group.  Since that conversion, Actavis South Atlantic LLC has maintained its principal place of business in Sunrise, Florida.  All of the  limited liability company interest in Actavis South Atlantic LLC is owned by Actavis' United States holding company Actavis, Inc., a Delaware corporation with a principal place of business in New Jersey.  Abrika LLLP transferred its assets and liabilities to Abrika Pharmaceuticals as of April 1, 2006 and is a non-operating shell. Prior to the time it ceased conducting business, Abrika LLLP also had its principal place of business in Sunrise, Florida.

Jersey as Plaintiffs agreed to in the Delaware action, and if the New Jersey court adopted that schedule. On June 1, 2007, Defendants answered the New Jersey complaint and, on June 5, 2007, Defendants asked the New Jersey Court to set a date for a scheduling conference in New Jersey as expeditiously as possible. (Seaman Decl., Ex. D.)

Plaintiffs flatly rejected Defendants' offer and, by letter of June 12, 2007 to the New Jersey court, have *opposed* Defendants' request that the New Jersey court adopt the dates in the Delaware schedule to the maximum extent possible. (Seaman Decl., Ex. B.) The only justification Plaintiffs have offered for their opposition is that the Delaware schedule has the Markman hearing after expert discovery while the usual practice in New Jersey is to have it before. As Plaintiffs well know, however, any issue regarding the placement of an intermediate Markman hearing within a litigation schedule does not provide a reasonable basis to refuse to agree to the trial date negotiated by the parties in Delaware. Plaintiffs' are engaging in this dilatory behavior despite their representation to the Court during the Delaware scheduling conference that even if the New Jersey court took a month or two to rule on the motion to dismiss or transfer, they would not "renegotiate any of our proposed dates" in the schedule. (Seaman Decl., Ex. A, at. 7.)

On June 15, 2007, the New Jersey court, acting through a Magistrate Judge, set a scheduling conference for July 10, 2007. The corresponding New Jersey Rule 26(f) meet and confer among counsel is to take place by June 26, 2007. (Seaman Decl., Ex. E.)

Plaintiffs repeatedly refer to the Court's indication that it might stay or dismiss this action if the New Jersey court did not dismiss or transfer. Since the Court made that statement, however, the facts have changed. First, Plaintiffs have now refused to agree to the same schedule in New Jersey that they agreed to in Delaware, and have opposed Defendants' request

to the New Jersey court that as far as possible the same schedule should be used there. These actions confirm that Plaintiffs' motivation for bringing an action in New Jersey was delay. Second, this case has moved forward apace whereas the New Jersey case has not. Finally, contrary to Plaintiffs' representations before this Court, none of the Plaintiffs are New Jersey corporations. Two Plaintiffs are Delaware corporations and the third Plaintiff is a Swiss legal entity.

## SUMMARY OF ARGUMENT

The Court's discretion in deciding this motion must be informed by the important public health and welfare considerations involved in this Paragraph IV action. A trial date in the New Jersey action substantially beyond September 2, 2008 would significantly delay the market entry of Defendants' generic version of Ritalin LA® and unnecessarily deny Americans suffering from ADHD access to a low-cost generic alternative. A dismissal of the Delaware action would therefore be highly prejudicial.

Although there are two pending actions involving the same claims, this Court's decision should not be based on application of the first-filed doctrine. First, the significant delay in getting to a decision on the merits that a dismissal of Delaware action may entail may have serious public health and welfare implications. Second, Plaintiffs are engaging in forum shopping, a recognized reason to depart from the first-filed doctrine. Finally, the Delaware action has progressed considerably further than the New Jersey action and, as this Court has said, it is fundamentally unfair to stay litigation that has proceeded further than another previously filed action. In any event, Rule 41(a) requires that Defendants counterclaim remain pending for independent adjudication by the Court.

## STATEMENT OF FACTS

Attention Deficit Hyperactivity Disorder ("ADHD") is one of the most common mental disorders in children and adolescents.  National Institutes of Health, Attention Deficit Hyperactivity Disorder, *available* at http://www.nimh.nih.gov/healthinformation/adhdmenu.cfm. It also affects an estimated 4.1 percent of adults in any given year.  Kessler R. C., et. al., Prevalence, severity, and comorbidity of twelve-month DSM-IV disorders in the National Comorbidity Survey Replication (NCS-R), Archives of General Psychiatry, 62(6):617-27 (June, 2005) (Seaman Decl., Ex. F.)  In 2001, defendant Novartis Pharmaceuticals Corporation received approval from the Food and Drug Administration ("FDA") to sell Ritalin LA® as a treatment for ADHD.  Novartis alleges that it has licensed from defendant Celgene Corporation U.S. Patent Nos. 5,837,284 and 6,635,284, embodying the intellectual property rights related to the formulation of Ritalin LA®.

The Hatch-Waxman Act is designed to encourage the entry of generic drugs onto the pharmaceutical market, largely by allowing generic firms to enter the market by filing an ANDA. 21 U.S.C. § 355.  An ANDA is "abbreviated" because it may rely upon, rather than duplicate, the safety and efficacy data contained in the previously approved brand firm's NDA.  Under the Hatch-Waxman Act, a generic firm seeking to enter a drug market, where the brand company claims its product is covered by a patent, must make a certification as to each patent identified as covering the brand drug.  21 U.S.C. § 355(j)(2)(A)(vii).  One way a generic firm can satisfy this obligation is by filing what is commonly referred to as a Paragraph IV certification pursuant to which the generic firm certifies that the relevant patent is either invalid or will not be infringed by the generic product.  21 U.S.C. § 355(j)(2)(A)(vii)(IV).

An ANDA applicant that submits a Paragraph IV certification must notify the patent

owner and the NDA holder.  21 U.S.C. §355(j)(2)(B); 21 C.F.R. § 314.95.  If the patent holder

files suit within 45 days of receiving the notice letter, as Plaintiffs did here, FDA is prohibited

from approving the ANDA until 30 months after the ANDA applicant's notice or until a court

decision in the matter, whichever is sooner.  21 U.S.C. § 355(j)(5)(B)(iii).  Thus, simply by filing

these lawsuits, Plaintiffs have ensured that the FDA cannot approve  Defendants' generic product

for 30 months or until a District Court decides the patent claims in Defendants' favor, whichever

is first.  But in exchange for this 30-month stay, Hatch Waxman requires the patent claims be

resolved with expedition.  21 U.S.C. §355(j)(5)(B)(iii).

The introduction of a generic drug as an alternative to a brand-name drug typically results

in a dramatic reduction in the brand-name drug's market share.  Brand drug company plaintiffs,

therefore, have a strong incentive to drag Paragraph IV litigation out for at least 30 months to

postpone FDA approval and generic drug company defendants' market entry. Thus, for brand

drug company plaintiffs in Paragraph IV cases, success on the merits is often a secondary

concern.  They "win" if the patent dispute at issue cannot be resolved within 30 months.

Among the most common delay tactics employed by brand name companies is to choose

a forum for the infringement action based on how long it typically takes for a patent case to reach

trial.  This is the reason Plaintiffs chose to file in New Jersey despite the serious questions about

personal jurisdiction.  In recent testimony before the House Energy and Commerce

Subcommittee, Bruce L. Downey, Chairman of the Generic Pharmaceutical Association,

described the current situation as follows:

> Right now, the brand company has the ability to bring suit against an ANDA
> applicant in virtually any district court in the country.  Brand companies
> increasingly have brought suit in districts with the longest time to trial.  In some
> courts, its takes from three to five years just to get to trial.  Where certainty is
> essential, this means more delayed market entry.

Bruce L. Downey, <u>Assessing the Impact of a Safe and Equitable Biosimilar Policy in the United States</u>, Testimony before the House Energy and Commerce Subcommittee on Health (May 2, 2007) (Seaman Decl., Ex. G.)

Congressman Waxman himself has recognized this brand company tactic as adverse to Hatch-Waxman's goal of spurring the introduction of generic drugs.  In part to avoid this problem in the field of generic biopharmaceuticals, in February 2007 he introduced H.R 1032, the "Access to Life-Saving Medicine Act," a  bill modeled on Hatch-Waxman that seeks to create a regulatory pathway for approval of generic biotechnology products. In that bill there are specific provisions which require that: (1) the generic company identify a judicial district in which it consents to being sued, and (2) the brand company brings suit in that district.  H.R. 1032, Section 3, adding subsection (k)(17)(B)(iii) & (C) to 42 U.S.C. §262.   (Seaman Decl., Ex. H, at 29.)  Identical legislation was also introduced in the Senate by Senator Schumer in February 2007.  S. 623, Section 3, adding subsection (k)(17(B)(iii) & (C)(ii) to 42 U.S.C. §262. (Seaman Decl., Ex. I, at 29.)

Novartis, is unique among "Big Pharma" in that it produces both brand and generic drugs.  As a result, on March 8, 2007, Novartis testified before the Senate in favor of S.623. Nowhere in that testimony did Novartis carve out any opposition to the venue aspects of the bill. (Seaman Decl., Ex. C.)  Perhaps this was because as a matter of public policy both brand and generic drug companies should agree that patent disputes implicating access to affordable drugs should be resolved as soon as possible.  In this case, however, Novartis has embraced a litigation strategy to delay the resolution of the patent dispute standing in the way of access to an affordable generic version of Ritalin LA® for as long as possible.  This Court is in a position to defeat this tactic which runs squarely counter to the public interest by ensuring that the litigation

proceeds to resolution no later than the September 2, 2008 – whether the resolution ultimately occurs in Delaware or New Jersey.

## ARGUMENT

Defendants would suffer substantial legal prejudice if this case were dismissed unless it is established that the underlying dispute can be resolved in New Jersey at least as expeditiously as it can be here.  As a result, this action cannot now be dismissed pursuant to Rule 41(a).  Moreover, the first-filed doctrine does not counsel for dismissal in the circumstances of this case.  In any event, Rule 41(a) compels that Defendants counterclaim here must remain pending for independent adjudication.

I.    Because of the Nature of Paragraph IV Actions, the Significant Delay That May Result From a Dismissal Constitutes Legal Prejudice that Precludes Dismissal Under Rule 41(a).

District courts have broad discretion over whether to grant a voluntary dismissal under Rule 41(a)(2).  See, e.g. Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974).  "When exercising its discretion in considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for the protection of defendants." Fisher v. Puerto Rico Marine Management Inc., 940 F.2d 1502, 1502 (11th Cir. 1991).  See also Shaw Group, Inc. v. Picerne Inv. Corp., 235 F.R.D. 68, 70 (W.D. Pa. 2005) (noting that the Third Circuit are among the "more restrictive circuits" with respect to granting Rule 41(a)(2) motions).  Furthermore, "[t]he dismissal should not result in . . . unfair manipulation of the federal forum." In re Air Crash Disaster at Sioux City, No. 89-6471, 1990 U.S. Dist. LEXIS 9485 (N.D. Ill. July 12, 1990).  Courts therefore consider "the adequacy of plaintiff's explanation for the need to dismiss." Ibeto Petrochemical Indus. v. M/T Beffen, 475 F.3d 56, 61 (2d Cir. 2007).  Thus, although courts typically consider whether a voluntary dismissal will be prejudicial to the non-

moving party, the Court can in its discretion consider all circumstances relevant to the case, including Plaintiffs' forum shopping.

Plaintiffs are seeking a dismissal of the Delaware action where a firm trial date is set, in favor of an action that (1) is procedurally behind this action, (2) in which no schedule at all has been set, and (3) in which Plaintiffs object to proceeding at the same pace that they agreed to in Delaware.  All of this will substantially delay a decision on the merits of the case thereby delaying FDA approval and the consequent market entry of Defendants' generic version of Ritalin LA®.  According to data from IMS Health, Ritalin LA® generated over $115 million in 2006 for Novartis.  On average, in the first year after market entry, the generic drug will capture roughly half the market.  Congressional Budget Office, How Increased Competition from Generic Drugs Has Affected Prices and Returns in the Pharmaceutical Industry (July 1998) (Seaman Decl., Ex. J, at 28.)  A year's delay therefore would subject Defendants to the prejudice of a very substantial financial loss.  See Watson v Clark, 716 F. Supp. 1354, 1356 (D. Nev. 1989), aff'd, 909 F.2d 1490 (9th Cir 1990) ("Plain legal prejudice may be shown where actual legal rights are threatened or where monetary or other burdens appear to be extreme or unreasonable.").

More importantly, a delay in the resolution of a Paragraph IV action has ramifications well beyond the financials interests of the parties.  Generic drugs are on average half as expensive as brand-name drugs.  (Seaman Decl., Ex. J.)  The Congressional Budget Office estimates that consumers saved between $8 billion and $10 billion by substituting a generic drug for a brand-name drug in 1994 alone.  (Id. at 31.)  Consequently, for many Americans the availability of a low-cost generic drug has a direct impact on their health and well-being.  As one court, for whom litigation involving the public interest is common, put it:

> [F]or poorer people - the users for whom access to generic drugs is most important - a pecuniary saving on drugs may have important health benefits. The difference between sinking, say, 3% and 20% of one's income into pharmaceuticals spells a large difference in the range of economically accessible food and shelter.

In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991).

Thus, "there is [a] public interest in receiving generic competition to brand-name drugs as soon as is possible." Boehringer Ingelheim Corp. v. Shalala, 993 F. Supp. 1, 3 (D.D.C. 1997). See also Collagenex Pharms., Inc. v. IVAX Corp., 375 F. Supp. 2d 120, 141 (S.D.N.Y. 2005) ("[T]he public has a strong interest in obtaining generic drugs at the reduced rates that they are offered."). To accomplish this important public interest, Congress enacted the Hatch-Waxman Amendments to the Food Drug and Cosmetics Act which decreased the time to market entry for lower-cost generic alternatives to brand-name drugs. Serono Lab. v. Shalala, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The purpose of the Hatch-Waxman Amendments was . . . 'to increase competition in the drug industry by facilitating the approval of generic copies of drugs.'"); In re Barr Laboratories, 930 F.2d at 76 ("Congress sought to get generic drugs into the hands of patients at reasonable prices - fast."); Mead Johnson Pharmaceutical Group v. Bowen, 655 F. Supp. 53, 56 (D.D.C. 1986) ("Any delay in the approval and marketing of generic copies of [the brand name drug] appears to run counter to the public interest.").

Among the provisions in the Hatch-Waxman Act that encourage faster entry of generic drugs is the explicit command that "each of the parties shall reasonably cooperate in expediting the action." 21 U.S.C. § 355(j)(5)(B)(iii). Plaintiffs' actions stand in direct contradiction to this statutory directive and the important public interest that underlies it. Given the firm trial date and further progress in this action, Plaintiffs' attempt to dismiss the Delaware action, coupled with their unreasonable refusal to stipulate to the same schedule in New Jersey, may

substantially delay introduction of a generic version of Ritalin LA®. Preventing access to a low-cost generic alternative is contrary to the public interest and the provisions of Hatch-Waxman, and is highly prejudicial to patients requiring more affordable medication for ADHD.[7]

Because of the unique and extraordinary circumstances presented by this Paragraph IV case, Defendants would suffer serious prejudice if the motion is granted. Instead, the Court should deny Plaintiffs' motion but permit them to file it again after the New Jersey court issues a scheduling order. Only then will the Court be able to determine the extent of the delay which would be engendered by a dismissal of this action. Until then, the action should proceed expeditiously according to the Scheduling Order already issued by this Court.

II.    The First-Filed Doctrine Does Not Counsel Dismissal of This Action

Application of the first-filed doctrine lies within the sound discretion of the district court. See E.E.O.C. v. University of Pennsylvania, 850 F.2d 969 (3d Cir. 1988). Thus, "courts have

---

[7]    Patients suffering from ADHD may have a liberty interest, under the Fifth Amendment to the United States Constitution, in gaining access to federally approved, safe, legal, and efficacious medications. Cf. Raich v. Gonzales, No. 03-15481, 2007 U.S. App. LEXIS 5834 (9th Cir. March 14, 2007). "'[N]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'" Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 269 (1990).

Defendants do not suggest that patients have Constitutional rights to medications that have not been approved by the FDA. Patients do, however, have a right to FDA approval of less expensive generic medications without the burden of procedural delays created by brand drug manufacturers. Any delay caused by Plaintiffs' litigation tactics bars pro tanto the FDA's regulatory authority to approve a generic alternative to Ritalin LA®. As a consequence, patients who cannot afford the brand name medication and who lack medical insurance will necessarily have limited, if any, access to potentially life-altering medication.

Defendants do not argue for any Constitutional right to a particular trial date in the abstract. But now that a firm trial date has been set in Delaware at September 2, 2008, dismissing this case without a firm trial date established in New Jersey at least as early as September 2, 2008 could impermissibly impair ADHD patients' Constitutional liberty interests. U.S. Const. amend. V.

consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied," id. at 976, and "have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." Id. at 972. See also Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) ("Exceptions [to the first-filed doctrine] are not rare, and are made when justice or expediency requires, as in any issue of choice of forum."). This comports with the Third Circuit's statement that "[t]he letter and spirit of the first-filed rule . . . are grounded on equitable principles." E.E.O.C., 850 F.2d at 977. See also Aventis Pharma S.A. v. Sandoz Inc., No. 06-3671, 2007 U.S. Dist. LEXIS 26304, at *12 (D.N.J. April 10, 2007) ("The first-filed action is preferred . . . unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise. Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.") (quoting Serco Servs. Co. v. Kelley Co., 51 F.3d 1037, 1039 (Fed. Cir. 1995)).

The first-filed doctrine should not be applied here because of Plaintiffs' forum shopping and because the Delaware action has progressed further than the New Jersey action. Particularly in light of the compelling public interest in expeditious resolution of Paragraph IV actions, these factors independently present "appropriate circumstances justifying departure from the first-filed rule." E.E.O.C., 850 F.2d at 972.

A.    A Departure From the First-Filed Doctrine is
Warranted Because Plaintiffs Have Engaged in Forum Shopping

"Bad faith and forum-shopping have always been regarded as proper bases for departing from the rule." E.E.O.C., 850 F.2d at 976 (internal quotations and citations omitted). A plaintiff engages in forum shopping when it files the same action in two fora and then chooses which action to proceed with at a later stage because of some perceived advantage to that forum. Here,

Plaintiffs filed identical suits in New Jersey and Delaware and now want to discard the Delaware action and proceed with the New Jersey action because it is proceeding *less expeditiously*. This is forum shopping of a particularly pernicious variety and warrants departure from the first-filed doctrine. See, e.g., FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 749 (E.D. Pa. 2005) (declining to apply the first-filed doctrine in part because of forum shopping).

Plaintiffs half-heartedly attempt to justify their double-filing by saying that "at times plaintiffs must do so to protect themselves and assure that their claims are heard." (Plaintiffs' Opening Brief, at 4.) But this is not one of those times, as Plaintiffs could have filed only in Delaware as this Court has undisputed jurisdiction over the subject matter and parties to this action.

In Aventis Pharma Deutschland GMBH v. Lupin Ltd., 403 F. Supp. 2d 484 (E.D. Va. 2005), the court was confronted with a nearly identical situation to the one this Court now faces. Denying the plaintiff's motion to stay its "protective" second-filed suit, the court emphasized that "its primary concern is to 'expedite the action." Id. at 490-91. It relied upon the provision of Hatch-Waxman that commands the parties to expedite the action, stating it "is not about to frustrate the statute's purposes for reasons of comity under these circumstances." Id. In Aventis, the plaintiff first sued the defendant in Maryland. A few days later, "as a protective measure," the plaintiff filed an identical suit in the Eastern District of Virginia. The defendant challenged jurisdiction in Maryland but not in Virginia. The plaintiff then asked the Virginia court to stay its action because the Maryland action had been filed two business days earlier. The Aventis court rejected the "protective measure" argument because there was "no case or regulation indicating that 'protective actions' are necessary or encouraged in ANDA cases" or

"that 'protective actions' 'expedite the action' as the statute commands." Id. at 490.[8]

In fact, courts have routinely expressed a lack of sympathy for a plaintiff who complains about having to litigate in a forum of its own choosing.  Recently, courts in the Eastern District of Pennsylvania and the District of New Jersey were confronted with another case almost identical to the present action.  In that case, plaintiff first filed suit in New Jersey, where jurisdiction was in dispute.  Two days later, in order to ensure that it did not lose the benefit of the Hatch-Waxman Act's automatic 30-month stay, plaintiff filed suit in the Eastern District of Pennsylvania, where it knew jurisdiction could not be challenged.  The plaintiff then asked the Pennsylvania court to issue a stay until the New Jersey court had an opportunity to resolve the jurisdictional dispute.  The Pennsylvania court denied plaintiff's motion, explaining:

> I believe granting a stay here would encourage judge-shopping. I do not believe the "first-filed" rule – on which Plaintiff almost exclusively relies – applies in the unique circumstances presented here. . . .  I believe it would be inappropriate to allow a plaintiff to file identical actions in different courts and then pick the court in which it wishes to proceed while the other action is

---

[8]     Similarly, in Smithkline Beecham Corp. v. Excel Pharmaceuticals, Inc., No. 02-51 (transcript of proceedings, E.D. Va. April 12, 2002) the plaintiff sought an extension of time pursuant to Rule 56(f) because, in part, it believed that New Jersey, where an identical action had been filed, was the more appropriate venue for the case.  In denying the motion the court explained:

> Clearly you can't just be out there choosing your forums and say, all right, let's see where we think we are going to get the better result. . . .  There is no question that jurisdiction is appropriate here for this case in the Eastern District of Virginia, and I see no persuasive argument at this point, given particularly the current status of the New Jersey case and its lack of movement and so forth, that New Jersey is any more appropriate than the Eastern District of Virginia, and you all chose the forum to begin with.

(Seaman Decl. Ex. K., at 34-35.)

stayed pending the result in the first-filed action. Plaintiff has chosen to sue here; it can not credibly complain that proceeding with this suit is prejudicial.

<u>Adams Respiratory Therapeutics, Inc. v. Pharmaceutical Holdings Corp., et al.</u>, No. 06-4418 (E.D. Pa. Nov. 2, 2006) (order denying motion to stay) (Seaman Decl. Ex. L.)

Dissatisfied with the Pennsylvania court's ruling, the plaintiff asked the New Jersey court to enjoin the Eastern District of Pennsylvania action.  The New Jersey court denied this request for similar reasons:  "The 'first-filed rule' is intended to prevent duplicative litigation, but I do not believe the rule was intended to provide a single plaintiff the opportunity to institute identical suits in various jurisdictions and then put all but the first one on the back burner until such time as the plaintiff deems convenient."  <u>Adams Respiratory Therapeutics, Inc. v. Pharmaceutical Holdings Co., et al</u>, No. 06-4700 (D.N.J. Nov. 16, 2006) (order denying motion to enjoin) (Seaman Decl. Ex. M.)

In a final attempt to avoid Pennsylvania, the plaintiff asked the New Jersey court to reconsider its decision.  In a terse response, the court denied plaintiff's request, reiterating the point that "the first-filed rule is not intended to benefit a party, such as Adams, who files in multiple jurisdictions but then complains of the speed of litigation in one forum versus another. Again, Adams created the circumstances in which if finds itself and, unfortunately, I can find no basis for undoing that which is Adams's own making."  <u>Adams Respiratory Therapeutics, Inc</u>, No. 06-4700 (D.N.J. Nov. 17, 2006) (order denying request for reconsideration) (Seaman Decl. Ex. N.)[9]

---

[9]    Although the motions the courts considered in these cases where not for voluntary dismissal, the contexts are the same as is presented here.  In each case, the court found that the double-filing plaintiff was forum shopping and refused to reward it by applying the first-filed doctrine.  The Court should similarly refuse to reward Plaintiffs for its forum shopping.

Finally, in <u>Schering Corp. v. Caraco Pharmaceutical Labs</u>, No. 06-14386, 2007 U.S. Dist LEXIS 41020 (E.D. Mich. June 6, 2007), the court declined to apply the first-filed doctrine when deciding whether to stay the second-filed suit because it was unclear how its applies in a Paragraph IV action when the plaintiff has filed a "protective" suit. Instead, the court examined "the prejudice, if any, that would be caused to either side from proceeding in this forum or from granting a stay order." <u>Id.</u> at *7.  In so doing, the court explicitly recognized the fact that the longer it takes to resolve an ANDA dispute, the longer defendants would be prevented from producing and profiting from a generic version of the drug.  <u>Id.</u>[10]

Forum shopping is a recognized reason to depart from the first-filed doctrine.  Here, Plaintiffs' filed the same action in two fora and, because they are only interested in delaying a decision on the merits, are now seeking to discard the action that is proceeding most expeditiously.  Allowing plaintiff to discard this further developed action would effectively endorse Plaintiffs' forum shopping scheme.  This the Court should not do.[11]

---

[10]     The court ultimately granted a stay of the Michigan action only because the "danger of unfair prejudice" to the plaintiff would be "substantial" as the first-filed action in New Jersey involved twenty-one defendants, whereas the Michigan action involved but two defendants.  <u>Id.</u> at *9.  The court was persuaded that "the probable inefficiency and potential for misuse of the limited resources of the judiciary that would occur if this litigation moved forward in Michigan while the case in New Jersey was stayed would be significant.  <u>Id.</u> In stark contrast to <u>Schering</u>, the present suit involves no such substantial prejudice to Plaintiffs. Instead, the prejudice that the Defendants would incur by the likely substantial delay in the resolution of this case which would be caused by granting Plaintiffs' motion is determinative.

[11]     Whatever legitimacy the New Jersey court found in Plaintiffs' double-filing is negated by Plaintiffs' subsequent refusal to agree to the same trial date in the New Jersey action as it agreed to in this action and their opposition in the New Jersey court to the issuance of a schedule as close as possible to that established in Delaware.  These actions demonstrate that Plaintiffs' motive for filing in New Jersey was delay and not whatever ties they have to that forum.

B.    A Departure From the First-Filed Doctrine is Warranted Because
This Action Has Progressed Substantially Further Than the New Jersey Action

As this Court has acknowledged, "[a] recognized reason to depart from [the first-filed doctrine] exists when the second filed case has developed more rapidly than the first." Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership, 882 F. Supp. 359, 364-365 (D. Del. 1994) (Robinson, J.) (refusing to stay second-filed action in part because "it is fundamentally unfair to stay litigation that has proceeded further than another previously filed action. . . ."). Thus a critical consideration in deciding whether to proceed with a second-filed action is whether the second-filed action can be more expeditiously resolved. Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 189 F.2d 31, 34-35 (3rd cir. 1951); aff'd 342 U.S. 180 (1952) ("the real question is not whether another suit has been previously or subsequently begun between the parties, but whether the relief sought can be more expeditiously and effectively afforded in the other suit than in the declaratory proceeding.") (internal quotations omitted, citation omitted).

This action has already proceeded more quickly than the parallel proceeding in New Jersey. Given the relative progress of the two cases, rigid application of the first-filed doctrine is not appropriate. See Schiller-Pfeiffer, Inc., No. 04-1444, 2004 U.S. Dist. LEXIS 24180 at *35 (E.D. Pa. Dec. 1, 2004) (declining to apply first-filed doctrine because, in part, "the action in the District of Vermont has already progressed further than the current case."); Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985) (declining to apply the first-filed doctrine because the case was further developed in the second-filed case). The Court should therefore allow this action to go forward.

III.    <u>Defendants' Counterclaims Serve A Useful Purpose.</u>

Plaintiffs appear to argue that, under Rule 41(a)(2), Defendants' counterclaims should be dismissed along with Plaintiffs' claims in the Delaware complaint. Of course, this argument is in direct conflict with the Rule:

> If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection ***unless the counterclaim can remain pending for independent adjudication***.

Fed. R. Civ. P. 41(a)(2) (emphasis added). Because Defendants pleaded their counterclaims before being served with the instant motion, Rule 41 requires that the counterclaims must remain pending upon dismissal of Plaintiffs' claims.[12]

Plaintiffs also suggest that the Court should decline to hear the counterclaims because they are claims for declaratory judgment. "Although a court has discretion to decline to adjudicate a declaratory judgment action over which it has jurisdiction, a court should only exercise such discretion if it determines that issuing a declaratory judgment would serve no useful purpose." <u>Alcoa v. Beazer E.</u>, 124 F.3d 551, 560 (3d Cir. 1997). <u>See also</u> <u>Minnesota Mining & Mfg. Co. v. Norton Co.</u>, 929 F.2d 670, 672-673 (Fed. Cir. 1991); <u>Capo, Inc. v. Dioptics Med. Prods.</u>, 387 F.3d 1352, 1355 (Fed. Cir. 2004) ("There must be well-founded reasons for declining to entertain a declaratory judgment action."). The proper focus of a court's

---

[12]    Defendants' counterclaim in New Jersey is identical to their amended counterclaim in Delaware. Plaintiffs have opposed the amendment in Delaware to the counterclaim (which amendment involves inequitable conduct) stating that it does not meet the pleading requirements of Rule 9. Plaintiffs have not yet answered Defendants' counterclaim in New Jersey but are expected to raise the same Rule 9 objections. Thus Plaintiffs are incorrect when they state that Defendants' "counterclaim pleading is more advanced in New Jersey than it is here." (Plaintiffs' Opening Brief, at 5 n.2.)

discretion is "'on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution.'"  <u>MedImmune, Inc. v. Genentech</u>, 127 S.Ct. 764, 776 (2007).

Far from being a "waste of judicial resources" (Plaintiffs' Opening Brief, at 6 n.3), the declaratory judgment counterclaim serves a vital interest.  The "equitable, prudential and policy arguments" here all support moving forward on the declaratory judgment counterclaim. <u>MedImmune,</u> <u>supra,</u> 127 S.Ct. at 777.  If the Court decides to grant Plaintiffs' motion, Defendants' counterclaims would serve the very useful purpose of ensuring that this Paragraph IV case  can proceed to resolution as expeditiously as possible, in conformity with the public interest, Congress' express intent as set out in the Hatch-Waxman Act, and the Fifth Amendment to the United States Constitution.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Voluntary

Dismissal without prejudice to Defendants again filing their motion after the New Jersey court

has issued a scheduling order with a set trial date, and, in the meantime, should move this case

forward expeditiously as contemplated by 21 U.S.C. §355(j)(5)(B)(iii).


                                                    Respectfully submitted,

Dated:  June 20, 2007                               _/s/ John M. Seaman_____
                                                    Andre G. Bouchard (Bar No. 2054)
                                                    John M. Seaman (Bar No. 3868)
                                                    BOUCHARD MARGULES & FRIEDLANDER, P.A.
                                                    222 Delaware Avenue, Suite 1400
                                                    Wilmington, DE  19801
                                                    Phone: (302) 573-3508

                                                    *Attorneys for Defendants*

OF COUNSEL:

John Will Ongman (*pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Phone: (202) 912-4700

Jonathan A. Harris (*pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

## CERTIFICATE OF SERVICE

I, John M. Seaman, hereby certify that on June 20, 2007, I caused to be electronically

filed a true and correct copy of the notice of the foregoing *Memorandum of Law in Opposition*

*to Plaintiffs' Motion for A Voluntary Dismissal Without Prejudice* with the Clerk of Court by

CM/ECF which will send notification of such filing to the following counsel of record:

> Philip A. Rovner, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801
> *provner@potteranderson.com*

I further certify that on June 20, 2007, I caused copies of the foregoing document to be

served by e-mail and by hand on the above-listed counsel and by e-mail and by U.S. Mail on the

following non-registered participants.

Anthony M. Insogna, Esquire
Lester J. Savit, Esquire
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130
858.314.1200
*aminsogna@jonesday.com*
*ljsavit@jonesday.com*
*nnkallas@jonesday.com*

Robert L. Baechtold, Esquire
Henry J. Renk, Esquire
Nicholas N. Kallas, Esquire
FITZPATRICK, CELLA HARPER &
SCINTO
30 Rockefeller Plaza
New York, NY 10112
*rbaechtold@fchs.com*
*hrenk@fchs.com*
*nkallas@fchs.com*

F. Dominic Cerrito, Esquire
JONES DAY
222 East 41st Street
New York, New York 10017-6702
*fdcerrito@jonesday.com*

> /s/ John M. Seaman
> John M. Seaman (#3868) [jseaman@bmf-law.com]
> BOUCHARD MARGULES & FRIEDLANDER, P.A.
> 222 Delaware Avenue, Suite 1400
> Wilmington, DE 19801
> 302.573.3500
> *Attorneys for Defendants Abrika Pharmaceuticals, Inc.*
> *and Abrika Pharmaceutical, LLLP*